## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONTE SILVER** and <br> **MONTE SILVER, LTD**., <br> an Israel corporation <br><br> *Plaintiffs* <br><br> *v.* <br><br> **INTERNAL REVENUE SERVICE;** <br> **UNITED STATES DEPARTMENT OF THE** <br> **TREASURY; CHARLES RETTIG**, in his official <br> capacity as Commissioner of the Internal Revenue; <br> and **STEVEN MNUCHIN**, in his official capacity <br> as United States Secretary of the Treasury <br><br> *Defendants* | Civil Action No. <br> _____ |

## <u>INTRODUCTION</u>

1.    This action arises under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*,

the Regulatory Flexibility Act (RFA), 5 U.S.C. §601 *et seq.*, the Paperwork Reduction Act

(PRA), 44 U.S.C. §3501 *et seq.*, and the Declaratory Judgment Act, 28 U.S. Code §2201.

At issue is an extensive set of regulations issued by the United States Department of

Treasury ("Treasury") and the Internal Revenue Service ("IRS") that interpret the complex

international tax provisions of Code section 951A ("GILTI"), which was added to the Code

as part of the Tax Cut and Jobs Act, Pub. L. 115–97, title I, §14201(a) December 22, 2017,

131 Stat. 2208 (the "TCJA").[1]

---

[1]    The following acronyms and short titles are employed in this complaint:
    APA                 Administrative Procedure Act, 5 U.S.C. §551 *et seq.*

2.      Rather than attempt to find potential solutions for small businesses in the GILTI regulations as required by law, Defendants issued impenetrable proposed GILTI regulations ("Proposed Regulations") in the Federal Register on October 10, 2018, and even longer and more complicated final GILTI regulations ("Final Regulations") on June 21, 2019.  In issuing both the Proposed and Final Regulations, Defendants violated the RFA, PRA and APA provisions designed to protect small businesses.

3.      The Final Regulations imposed and continue to impose unreasonably complicated and costly burdens upon a vast number of small businesses and small business owners like Plaintiffs.  Accordingly, this Court should render a judgment remanding the regulations to the Treasury and the IRS, and deferring enforcement of the Final Regulations against the Plaintiffs and other small businesses until Treasury and the IRS fully comply with their statutory obligations.

## PARTIES

4.      Plaintiff Monte Silver ("Silver") is a United States citizen residing in Israel.  He received a bachelor's degree from the University of California at Los Angeles and earned a law

---

| | |
|---|---|
| Code | Internal Revenue Code, 26 U.S.C. |
| CFC | Controlled Foreign Corporation, as described in Code, Section 957. |
| Final Regulations | Final Regulations implementing Section 951A of the Code, issued on June 21, 2019, 84 Fed.  Reg. 120. |
| Proposed Regulations | Proposed regulations implementing section 951A of the Code, issued on October 10, 2018, 83 Fed. Reg. 196. |
| PRA | Paperwork Reduction Act, 44 U.S.C. §3501 *et seq.* |
| RFA | Regulatory Flexibility Act, 5 U.S.C. §601 *et seq.* |
| Section 212 | Title II, Section 212 (Small Business Regulatory Enforcement Fairness Act of 1996) of Public L. 104-121 (Contract with America Advancement Act of 1996), codified as a Note to 5 U.S.C.A. §601. |

degree at Boston University School of Law.  He became a member of the California Bar in 1994.  In 1997, he moved to Israel.

5.     Plaintiff Monte Silver, LTD ("Limited") is organized as an Israeli corporation.  It is treated as a corporation for United States tax purposes.  Silver is the sole shareholder in Limited. The one-person business operated through Limited is organized for profit and is primarily focused on providing U.S. legal services to clients worldwide on matters involving United States law.  Since 2012, Limited has maintained a place of business location in both Israel and California. Separately, Silver has personally engaged in investments in U.S. commercial real estate since 2009.

6.     Silver and Limited have engaged in activities which contribute significantly to the U.S. economy in many regards, including but not limited to (i) payment of taxes, (ii) use of American-based goods, services and labor and (iii) ownership interests in several large U.S. commercial real estate projects which by itself contribute significantly to the American economy.

7.     Limited and Silver each have annual receipts of less than $1,000,000. Accordingly, they are treated as small businesses for purposes of the Small Business Act. 15 U.S.C. §601 *et seq.* (the "SBA Act"), and other statutes which employ the SBA Act definition of "small business." Therefore, Plaintiffs are also "small entities" for purposes of RFA, §601.

8.     As a United States citizen, Silver annually files IRS Form 1040 individual income tax returns, attaching an IRS Form 5471 "Information Return of U.S. Persons with Respect to Certain Foreign Corporations" with respect to Limited.

9.     Defendant IRS is an executive agency of the United States within the meaning of the APA. Its headquarters are located in Washington, D.C.

10. The Treasury is an executive agency of the United States within the meaning of the APA. Its headquarters are located in Washington, D.C.

11. Defendant Charles Rettig is the Commissioner of Internal Revenue.  He is being sued in his official capacity.

12. Defendant Steven Mnuchin is the Secretary of the Treasury.  He is being sued in his official capacity.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction under 28 U.S.C. §1331 because this case involves violations of the APA, the PRA[2], and the RFA.

14. The Defendants have waived their immunity with respect to the allegations raised in this lawsuit, pursuant to 5 U.S.C. §706 and 5 U.S.C. §611.

15. Venue is proper in this Court under 28 U.S.C. §1391(e)(1) because the defendants are agencies of the United States and officers of those agencies based in the District of Columbia.

## LEGAL BACKGROUND

### A.  The Regulatory Flexibility Act

16. The RFA, 5 U.S.C. §601 *et seq.*, is the principal statute providing protection for small business during development of regulations.  In enacting the RFA in 1980, Congress codified its purpose of protecting small business from unduly burdensome regulations, stating that:

> (i)     regulations designed for large entities get applied uniformly to small

---

[2]  This lawsuit does not state a cause of action for violation of the PRA.

businesses even if the problems that gave rise to government action are not caused by smaller entities;

(ii)    uniform regulatory and reporting requirements impose unnecessary and disproportionately burdens on small businesses;

(iii)   the practice of treating all businesses as equivalent may lead to inefficient use of regulatory resources; and

(iv)    alternative approaches may be available which minimize the significant economic impact on small businesses.

5   U.S.C. §601.

17.    To accomplish these goals, the RFA requires an agency to prepare both an initial and final regulatory flexibility analysis when it issues proposed and final regulations ("RFA Analysis").  5 U.S.C. §§603-604.

18.    5 U.S.C. §603 requires agencies like the Defendants to prepare and make available for public comment an initial regulatory flexibility analysis. Such analysis shall describe the impact of the proposed rule on small entities. The initial regulatory flexibility analysis ("IRFA") must be published in the Federal Register at the time of the publication of general notice of proposed rulemaking for the rule. *Id*.

19.    5 U.S.C. §604 requires agencies to accompany each final rule with a "final regulatory flexibility analysis" ("FRFA") which must address certain subject matter areas prescribed by 5 U.S.C. §604, including:

 (a) a statement of the significant issues raised by the public comments in response to the initial regulatory flexibility analysis, [and] a statement of the assessment of the agency of such issues [...].  5 U.S.C. §604(a)(2);

(b) a description of and an estimate of the number of small entities to which the rule will apply or an explanation of why no such estimate is available. 5 U.S.C. §604(a)(4);

(c) a description of the projected reporting, recordkeeping and other compliance requirements of the rule, including an estimate of the classes of small entities which would be subject to the requirement and the type of professional skills necessary for preparation of the report or record; [...]. 5 U.S.C. §604(a)(5);

(d) a description of the steps the agency has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected. 5 U.S.C. §604(a)(6).

20.     The RFA creates one exception to the requirement of preparing an IRFA or FRFA.  An analysis is not required if the "head of the agency […] certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. §605(b). If the agency head so certifies, it must publish the certification, "along with a statement providing the factual basis for such certification." *Id.*

21.     Notably, the RFA "requires agencies to publish their factual, policy and legal reasons when making a certification under Section 605."  Small Business Regulatory Enforcement Fairness Act--Joint Managers Statement of Legislative History and Congressional Intent, 142 CONG. REC. S3245 (daily ed. Mar. 29, 1996).  One of the primary purposes of the RFA is to reduce the compliance burdens on small entities whenever possible under the statute.

22.     The 1996 amendments significantly bolstered the policies of the 1980 legislation by also authorizing judicial review of agency compliance with these requirements.  Any "small entity that is adversely affected or aggrieved by final agency action is entitled to judicial

review of agency compliance with the requirements […]". 5 U.S.C. §611(a).  An agency's

factual certification under 5 U.S.C. §605(b) is specifically identified as an issue subject to

judicial review under 5 U.S.C. §611.  Review of a Section 605(b) certification is to be

conducted "in accordance with" the APA.  5 U.S.C. §611(a)(2).

23.     Section 212 (as defined above in fn. 1) requires Defendants to publish guides to assist small

        entities in complying with their promulgated rules.

24.     Finally, where a reviewing court concludes that an agency has violated the RFA, "the court

        shall order the agency to take corrective action […], including, but not limited to: (a)

        remanding the rule to the agency, and (b) deferring the enforcement of the rule against

        small entities […]"  5 U.S.C. §611(a)(4)(A) and (B).

## B.  **The Paper Reduction Act**

25.     The PRA, 44 U.S.C. §3501 *et seq.*, imposes additional requirements upon agencies issuing

        regulations to protect the concerns of small business.  The purpose of the PRA is to

        "minimize the paperwork burden for individuals, small businesses, educational and

        nonprofit institutions, Federal contractors, State, local and tribal governments, and other

        persons resulting from the collection of information by or for the Federal Government."  44

        U.S.C. §3501(1).

26.     The PRA requires agencies to –

                […] certify (and provide a record supporting such certification, including public
                comments received by the agency) that each collection of information […]

                (C) reduces to the extent practicable and appropriate the burden on persons who
                shall provide information to or for the agency, including with respect to small
                entities, as defined under section 601(6) of title 5, the use of such techniques as—

(i)     establishing differing compliance or reporting requirements or
timetables that take into account the resources available to those who
are to respond;

(ii)    the clarification, consolidation, or simplification of compliance and
reporting requirements; or

(iii)   an exemption from coverage of the collection of information, or any part
thereof;

(D) is written using plain, coherent, and unambiguous terminology and is
understandable to those who are to respond;

(E)   is to be implemented in ways consistent and compatible, to the maximum
extent practicable, with the existing reporting and recordkeeping practices of those
who are to respond;

(F)  indicates for each recordkeeping requirement the length of time persons are
required to maintain the records specified;

44 U.S.C. §3506(c)(3)(C)-(F).

27.     44 U.S.C. §3506(c)(4) provides as follows:

In addition to the requirements of this chapter regarding the reduction of information
collection burdens for small business concerns (as defined in section 3 of the Small
Business Act (15 U.S.C. 632)), make efforts to further reduce the information
collection burden for small business concerns with fewer than 25 employees.

28.     Also, the OMB may not approve a collection of information for a period in excess of 3

years. 44 U.S.C. §3507(g).

**C.  Administrative Procedure Act**

29.     The APA empowers a court to "hold unlawful and set aside agency action, findings, and

conclusions found to be [...] arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law." 5 U.S.C. §706(2)(A).

30.     In addition, a reviewing court shall hold an agency action unlawful if it was "without

observance of procedure required by law." 5 U.S.C. §706(2)(D).

**D.  The GILTI Regime**

31.  Historically, Sections 951 *et seq.* of the Code established a special tax regime for "controlled foreign corporations ("CFCs")" owned by "United States Shareholders", such as Google and Apple.[3]  Until the TCJA, these corporations were generally not subject to United States taxation on the earnings of their CFCs until the earnings were repatriated to the United States shareholder via a dividend.  This created an incentive for these large multinational corporations to shift income from the United States to their CFCs incorporated in low-tax foreign jurisdictions. GILTI created a new and overly complex tax regime to avoid this abuse.

32.  At a high-level, GILTI requires United States shareholders (such as U.S. parent companies – Google, Inc. and Apple, Inc.) who own an interest in a CFC (*i.e.* their foreign subsidiaries) to treat as income on their U.S. tax return, their pro rata shares of the annual taxable income of these CFC subsidiaries for each and every year starting in 2018.  Through a variety of deductions and foreign tax credits available in Code 951A, GILTI was structured so that these U.S. multinationals would not pay any GILTI taxes in the United States so long as the CFC was subject to corporate income tax of at least 13.125% in the foreign country.

33.  GILTI introduced a wide variety of complex, abstract terms that were left for future regulations to interpret.  For example, among the terms first employed in Code 951A are "GILTI income", "net CFC tested income", "tested income", "tested loss", "net deemed tangible income return", "qualified business asset investment" and "specified tangible property", to name just a few.

---

[3] The terms "controlled foreign corporation" and "United States person" are further defined in Code Section 957.

34.     Unfortunately, GILTI did not distinguish between large multinational companies and the smallest of businesses run though foreign companies owned by individuals.  For example, under GILTI, Limited is a CFC and Silver is an individual United States shareholder, subjecting them to the GILTI regime.

35.     Yet, deductions and tax credits available to the U.S. corporate parents of the CFCs, like Google and Apple, are not available to individual U.S. shareholders, such as Silver.  The end result is that Silver and owners of small businesses operated through foreign corporations are always subject to GILTI tax, while Google U.S. and Apple U.S. are not.[4] Thus, by definition, these small business owners are subject to direct double taxation on the same company profit:  once in the form of corporate tax in the country of residence, and second, personal GILTI tax in the US.  What is worse, tax credits are disallowed to such individual U.S. shareholders in both countries.

36.     Not only are individual U.S. shareholders subject to tax where Google and Apple are not, they are subject to GILTI tax rates of up to 37%, as opposed to Google and Apple, who, in the worst case (if their CFC was in a low tax jurisdiction), are subject to GILTI tax only up to 21%.

37.     Beyond the sheer insanity of the above results, the vast majority of U.S. tax professionals advising these small businesses (often one-person entities themselves), had and still have, no idea how to comply with GILTI or the Final Regulations.  Plaintiffs and similarly placed people and entities have the following options: (i) non-compliance, (ii) have their tax

---

[4] As a matter of law, neither Limited nor the foreign subsidiary of Google can be subject to GILTI. The GILTI tax is only paid by the U.S. shareholder of the CFC.  However, a CFC, like Limited, will incur significant yearly compliance costs related to preparing and submitting its annual tax returns.

professionals operate on a "best-guess" basis, or (iii) engage large tax firms at exorbitant compliance costs. Notably, GILTI compliance is annual, for each year starting in 2018.

## DEFENDANTS FAIL TO COMPLY WITH THE RFA/PRA: THE ISSUANCE OF THE PROPOSED REGULATIONS

38.  Upon learning that individual U.S. shareholders who directly owned interests in CFCs through which they operated small businesses were subject to the GILTI Tax, beginning in March 2018, Silver and hundreds of impacted small businesses contacted senior IRS and Treasury officials to request relief.

39.  However, notwithstanding these efforts, Defendants failed to consider the concerns of small businesses and issued the Proposed Regulations in a manner that runs afoul of the RFA, the PRA and the APA.

40.  On October 10, 2018, Treasury issued Proposed Regulations that interpreted Code Section 951A. The Proposed Regulations were massive and included 157 pages long of dense corporate tax jargon.

41.  As discussed above, the RFA required Defendants to include an IRFA (as defined above). The Proposed Regulations did not contain an IRFA as described in the statute. Instead, Defendants avoided the IRFA requirement by having Secretary Mnuchin certify that the Proposed Regulations would not have "a significant economic impact on a substantial number of small entities."

42.  As mentioned before, the PRA imposes specific obligations on federal agencies seeking to propose regulations which impose "collection of information" or "recordkeeping requirements" obligations on the target audience. Under the PRA, before issuing proposed regulations, federal agencies must certify, and provide a record supporting such

certification, that they have engaged in various activities to reduce compliance burdens on small entities.

43.    The PRA terms in the Proposed Regulations were extremely complicated and lengthy.  Yet, the PRA provisions did not contain a certification or any record supporting the certification.

44.    Limited and Silver both have been adversely affected or aggrieved by Defendants' failure to company with the RFA, PRA and APA as it relates to the Proposed Regulations.

## DEFENDANTS FAIL TO COMPLY WITH THE RFA/PRA: THE ISSUANCE OF THE FINAL REGULATIONS

45.    One June 21, 2019, Treasury issued a Final Regulations.  The Final Regulations were even more lengthy and detailed than the Proposed Regulations: 318 pages. The Final Regulations, as published in 84 Fed. Reg. 120, contains approximately 100,700 words.

46.    The RFA required Treasury to issue a FRFA (as defined above) in conjunction with issuance of the Final Regulations.

47.    The Final Regulations did not contain a FRFA.  Instead, the Final Regulations included a certification that they will not have a significant economic impact on a substantial number of small entities.

48.    Also, Defendants have failed to publish any guide to assist small entities in complying with the Final Regulations, as required under Section 212 (as defined is fn. 1 above).

49.    Once again, the PRA terms in the Proposed Regulations were extremely complicated and lengthy.  Yet, the PRA provisions did not contain a certification or any record supporting the certification.

50.    Limited and Silver both have been adversely affected or aggrieved by Defendants' failure to company with the RFA, PRA and APA.  Specifically, they have expended and will

perpetually have to continue expending significant funds, time and effort to comply with GILTI and the Final Regulations.

51.   Had Defendants took their administrative duties seriously and actually researched and analyzed the empirical data, they could not have issued the certifications that they, in fact, did.  Moreover, had Defendants done their homework as required under the RFA and PRA, they would have considered the needs and concerns of small business like Plaintiffs, and would have crafted realistic regulations, comprehensible to the average small business owner or manager.

52.   Instead, Defendants wrote off hundreds of thousands of small businesses by promulgating impenetrable and esoteric fiscal regulations that have a catastrophic effect on Plaintiffs and similarly situated persons.

## COUNT I—VIOLATION OF THE REGULATORY FLEXABILITY ACT

53.   Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

54.   Defendants violated the RFA by failing to publish and make available for public comment an IRFA and a FRFA.  Instead, Defendants issued a certification that failed to meet the statutory requirements of RFA §605(b) and is thus invalid.

55.   The failure of the IRS and Treasury to comply with the RFA is part of a consistent pattern of non-compliance.  A recent General Accountability Office Report found that the agencies complied with the Regulatory Flexibility Act with respect to only two of the over 200 tax regulations issued between 2013 and 2015.

56.   As discussed above, the RFA authorizes this court to order the agency to take corrective action including, but not limited to—

   a.   remanding the rule to the agency, and

b. deferring the enforcement of the rule against Plaintiffs unless the court finds that continued enforcement of the rule is in the public interest.

57. In addition, RFA states that "[n]othing in this subsection shall be construed to limit the authority of any court to stay the effective date of any rule or provision thereof under any other provision of law or to grant any other relief in addition to the requirements of this section." 5 U.S.C. §611(a)(5).

## COUNT II—VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

58. Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

59. In promulgating the Proposed and Final Regulations, Defendants violated the APA by (i) failing to observe the procedures required by law in promulgating regulations, (ii) engaging in actions which are arbitrary, capricious and an abuse of discretion, and (iii) acting in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

60. Under 5 U.S.C. §706, this court has authority to (i) remand the Proposed and Final Regulations back to Defendants, and (ii) defer the enforcement of the Final Regulation until Defendants comply with the RFA, PRA, APA and Section 212 as defined above in footnote 1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court will:

(1) Remand the proposed rule and final rule to the Defendants for full compliance with the RPA, PRA and Section 212.

(2) Defer enforcement of the final rule against Plaintiffs and all other small entities until such time as the Court finds that Defendants have fully complied with the procedural requirements of the RFA, PRA, APA and Section 212.

(3) Declare that the Defendants have violated their administrative duties under the RFA, PRA and APA, pursuant to the Declaratory Relief Act, 28 U.S.C. §2201.

(4) Direct Defendants to pay Plaintiffs attorney fees and costs under 5 U.S.C. §611 and/or 28 U.S.C. §2412(d); and

(5) Grant such other relief as the Court finds fair and equitable.

<u>Date</u>: June 12, 2020.

Respectfully submitted,

/s/ *Lawrence Marc Zell*

_____

Lawrence Marc Zell
(DC Bar # 959437)
Noam Schreiber, *of counsel*
**ZELL & ASSOCIATES**
**INTERNATIONAL ADVOCATES LLC**
14 Penn Plaza
225 West 34th Street, 9th Floor
New York, New York 10122
E-mail: mzell@fandz.com

*Counsel for Plaintiffs*