**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SILVER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-1544-CKK |
| | ) | |
| INTERNAL REVENUE SERVICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION

BACKGROUND

I.      Statutory framework of section 951A. ............................................................................. 3

II.     Regulations under section 951A. ..................................................................................... 5

ARGUMENT

I.      The Court lacks jurisdiction to entertain Plaintiffs' claims under the Regulatory
        Flexibility Act and the Paperwork Reduction Act. ........................................................ 7

        A.      Congress has not authorized Plaintiffs to bring actions for judicial review under the
                RFA.................................................................................................................... 8

        B.      Congress has barred claims for judicial review under the
                Paperwork Reduction Act........................................................................................ 12

II.     The Court lacks jurisdiction because Plaintiffs lack standing. ....................................... 13

        A.      Plaintiffs do not allege an injury "fairly traceable" to the regulations they
                challenge.. ........................................................................................................... 14

        B.      Plaintiffs' claim that Treasury committed a procedural violation still does not excuse
                the failure to allege an injury likely to be remedied by the relief they seek. ............. 16

        C.      The District Court's ruling on standing in "Silver I" does not help establish
                Plaintiffs' standing in this suit.. ............................................................................. 18

III.    This Court also lacks jurisdiction because the Anti-Injunction Act and the tax exception
        to the Declaratory Judgment Act bar this suit................................................................. 22

CONCLUSION

# TABLE OF AUTHORITIES

## Cases

*Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n,*
  49 F. Supp. 3d 1 (D.D.C. 2015) .................................................................................. 10

*Abraham v. United States,*
  No. CIV.A. 97-1873 CKK, 1998 WL 422915 (D.D.C. Mar. 31, 1998) ................................. 24

*Abulhawa v. United States Department of the Treasury,*
  239 F. Supp. 3d 24 (D.D.C. 2017) .............................................................................. 13

*Alabama v. North Carolina,*
  560 U.S. 330 (2010) .............................................................................................. 26

*Alegent Health-Immanuel Med. Ctr. v. Sebelius,*
  34 F. Supp. 3d 160 (D.D.C. 2014) .......................................................................... 12-13

*Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue,*
  926 F.3d 1061 (9th Cir. 2019) .................................................................................. 27

*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) .................................................................................... 14

*Association of Private Sector Colleges & Universities v. Duncan,*
  681 F.3d 427 (D.C. Cir. 2012) .............................................................................. 20, 21

*Blech v. United States,*
  595 F.2d 462 (9th Cir. 1979) .................................................................................... 24

*Bob Jones Univ. v. Simon,*
  416 U.S. 725 (1974) ........................................................................................ 23, 26, 27

*Chamber of Commerce v. IRS,*
  No. 1:16-CV-944-LY, 2017 WL 4682050 (W.D. Tex. Oct. 6, 2017) ................................. 24

*CIC Servs., LLC v. IRS,*
  925 F.3d 247, 256 (6th Cir. 2019), *cert. granted,* 206 L. Ed. 2d 916 (May 4, 2020) .............. 26

*Coalition for Mercury-Free Drugs v. Sibelius,*
  671 F.3d 1275 (D.C. Cir. 2012) ............................................................................ 14, 16

*Cohen v. United States,*
  650 F.3d 717 (D.C. Cir. 2011) ............................................................................ 23, 26

*Ctr. for Law & Educ. v. Dep't of Educ.,*
  396 F.3d 1152 (D.C. Cir. 2005) ............................................................................ 17, 18

*Dickens v. United States,*
  671 F.2d 969 (6th Cir.1982) .................................................................................... 25

*Direct Marketing Ass'n v. Brohl,*
  135 S. Ct. 1124 (2015) ........................................................................................ 25-26

*Ellis v. Commissioner,*
  67 F. Supp. 3d 325 (D.D.C. 2014) ........................................................................ 24, 25

*Enochs v. Williams Packing & Navigation Co.,*
  370 U.S. 1 (1962) ............................................................................................ 23, 28

*Florida Audubon Society v. Bentsen,*
  94 F.3d 658 (D.C. Cir. 1996) ................................................................ 13, 17, 18, 21, 22

*Florida Bankers Ass'n v. U.S. Dep't of Treasury,*
  799 F.3d 1065 (D.C. Cir. 2015) .................................................................... 23, 25, 27, 28

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015)............................................................. 14, 16, 17, 18, 21
*Haase v. Sessions*,
    835 F.2d 902 (D.C. Cir. 1987)................................................................................... 13
*Judicial Watch, Inc. v. Rossotti*,
    317 F.3d 401 (4th Cir. 2003)..................................................................................... 25
*Lehman v. Nakshian*,
    453 U.S. 156 (1981)..................................................................................................... 7
*Linn v. Chivatero*,
    714 F.2d 1278 (5th Cir. 1983).................................................................................. 24
*Lowrie v. United States*,
    824 F.2d 827 (10th Cir.1987).................................................................................... 25
*Mackinac Tribe v. Jewell*,
    87 F. Supp. 3d 127 (D.D.C. 2015)............................................................................ 12
*Maze v. IRS*,
    862 F.3d 1087 (D.C. Cir. 2017).............................................................................25-26
*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519, (2012).................................................................................................. 25
*Nat'l Taxpayers Union, Inc. v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995).................................................................................. 23
*Renal Physicians Ass'n v. U.S. Dept. of Health and Human Services*,
    489 F.3d 1267 (D.C. Cir. 2007)........................................................................... 15, 17
*Settles v. U.S. Parole Comm'n*,
    429 F.3d 1098 (D.C. Cir. 2005)................................................................................ 10
*Seven-Sky v. Holder*,
    661 F.3d 1 (D.C. Cir. 2011)...................................................................................... 24
*SIH Partners LLLP v. Comm'r of Internal Revenue*,
    923 F.3d 296 (3d Cir. 2019)...................................................................................... 27
*Silver v. IRS, et al.*, case no. 19-cv-247 (APM),
    2019 WL 71685 (D.D.C. Dec. 24, 2019) ("*Silver I*")..................... 18, 19, 20, 21, 22
*South Carolina v. Regan*,
    365 U.S.  (1984)........................................................................................................ 28
*State Nat. Bank of Big Spring v. Lew*,
    795 F.3d 48 (D.C. Cir. 2015)............................................................................... 19, 20
*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)....................................................................................................... 2
*Terry v. First Merit Nat'l Bank*,
    75 F. Supp. 3d 499 (D.D.C. 2014)............................................................................ 10
*Tollerson v. C.I.R.*,
    No. CIV. A. H-91-2762, 1993 WL 174884 (S.D. Tex. Mar. 4, 1993) ................... 24
*Tozzi v. E.P.A.*,
    148 F. Supp. 2d 35 (D.D.C. 2001)............................................................................ 13
*United States v. Sherwood*,
    312 U.S. 584 (1941)..................................................................................................... 7
*United States v. Testan*,
    424 U.S. 392 (1976)..................................................................................................... 7

*West v. Lynch*,
   845 F.3d 1228 (D.C. Cir. 2017) ............................................................................ 15, 16
*WildEarth Guardians v. Jewell*,
   738 F.3d 298 (D.C. Cir. 2013) ..................................................................................... 17

**Statutes**

5 U.S.C. § 601 ......................................................................................................................... 8, 9
5 U.S.C. § 603 ............................................................................................................................... 8
5 U.S.C. § 604 ............................................................................................................................... 8
5 U.S.C. § 605(b) ...................................................................................................................... 7, 8
5 U.S.C. § 611(a)(1) ...................................................................................................................... 8
5 U.S.C. § 701(a)(1) .................................................................................................................... 13
15 U.S.C. § 632(a)(1) ........................................................................................................ 9, 10, 11
15 U.S.C. § 632(a)(2) .................................................................................................................... 9
20 U.S.C. §1221e-3 ..................................................................................................................... 20
26 U.S.C. § 245A .......................................................................................................................... 3
26 U.S.C. § 951 ............................................................................................................................. 5
26 U.S.C. § 951(b) ........................................................................................................................ 3
26 U.S.C. § 951A .................................................................................................................. *passim*
26 U.S.C. § 951A(d)(4) ......................................................................................................... 20, 26
26 U.S.C. § 957(a) ........................................................................................................................ 3
26 U.S.C. § 1502 ........................................................................................................................... 5
26 U.S.C. § 6038 ........................................................................................................................... 5
26 U.S.C. § 6212 ......................................................................................................................... 27
26 U.S.C. § 6213 ......................................................................................................................... 27
26 U.S.C. § 7421(a) .................................................................................................................... 23
26 U.S.C. § 7422 ......................................................................................................................... 27
26 U.S.C. § 7428 ......................................................................................................................... 23
28 U.S.C. § 2201(a) .................................................................................................................... 23
44 U.S.C. § 3507 ......................................................................................................................... 12
Section 212 of the Contract with America Advancement Act Of 1996, Pub. L. 104–121,
   March 29, 1996, 110 Stat 847 ................................................................................................... 8
Tax Cuts and Jobs Act. Pub. L. No. 115-97, 131 Stat. 2054 (2017) ................................... 1, 3, 5

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................................. 13

**Regulations**

13 C.F.R. § 121.105 .............................................................................................................. 10, 11
REG-104390-18, Guidance Related to Section 951A (Global Intangible Low-Taxed Income),
   83 FR 51072 .............................................................................................................................. 5
Treasury Decision 9866, Guidance Related to Section 951A (Global Intangible Low-Taxed
   Income) and Certain Guidance Related to Foreign Tax Credits, 84 FR 29288 .......... 2, 5, 6, 7, 8
Treas. Reg. § 1.951A-3(h)(1) ................................................................................................. 7, 26

**Other Authorities**

Senate Committee on the Budget, 115th Cong., Reconciliation Recommendations
    Pursuant to H. Con. Res. 71, at 365 (Comm. Print 2017).......................................................3, 4

## INTRODUCTION

This Court lacks jurisdiction to consider the claims of Plaintiffs, Monte Silver and his business, Monte Silver Ltd., in which Plaintiffs challenge alleged procedural errors in Defendants' issuance of the regulations under the global intangible low-taxed income ("GILTI") provisions in Internal Revenue Code section 951A, enacted in section 14201(a) of Public Law No. 115-97, 131 Stat. 2054 (2017), commonly referred to as the Tax Cuts and Jobs Act ("TCJA").  The regulations at issue appear in Treasury Decision 9866, Guidance Related to Section 951A (Global Intangible Low-Taxed Income) and Certain Guidance Related to Foreign Tax Credits.  *See* 84 FR 29288.  The section 951A regulations generally provide guidance for taxpayers subject to section 951A to determine the amount of GILTI that they are required to include in gross income.  Plaintiffs allege that Defendants committed procedural errors under the Regulatory Flexibility Act (RFA) and Paperwork Reduction Act (PRA) when the Department of Treasury ("Treasury") and the Internal Revenue Service ("IRS") issued those regulations.  Specifically, Plaintiffs allege that Defendants did not adequately consider the impact on small businesses.  While Defendants assert they followed the appropriate procedures in implementing the regulations, the Court need not delve into the matter further because Plaintiffs face insuperable jurisdictional barriers to their claims.

First, the Court lacks jurisdiction to entertain Plaintiffs' claims under the RFA and the PRA.  While Congress has authorized suits for judicial review under the RFA, the extent of its consent is limited to actions brought by "small entities."  Neither Monte Silver – an individual – nor Silver Limited – a foreign entity – qualifies as a "small entity" within the scope of Congress's allowance of suits for judicial review under the RFA.  As for the PRA, Congress has

authorized no private right of action at all.  Indeed, Congress has expressly barred suits claiming alleged violations of the PRA.

Second, Plaintiffs lack standing.  The harms Plaintiffs allege come from Code section 951A, the underlying GILTI *statute*, rather than the section 951A regulations.  That renders irrelevant any alleged procedural violations in the administrative process.  Because the injury Plaintiffs allege is not traceable to the procedural violations they allege, and Plaintiffs give no reason to suppose that enjoining the regulations and remanding them to the agency to be reconsidered would likely provide relief from the Plaintiffs' alleged injury, they lack standing to maintain this action.

Finally, and in addition to the above jurisdictional barriers, the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act bar this suit.  Those statutes operate to bar this pre-enforcement challenge to a tax regulation.  Instead, Plaintiffs must wait to raise their challenge once the regulation has been applied to them and has resulted in a tax liability that Plaintiffs dispute.  Then Plaintiffs may challenge the regulation in the context of a Tax Court deficiency proceeding or a refund suit in federal district court or the Court of Federal Claims.

On the basis of any of these numerous jurisdictional problems with Plaintiffs' claims, the Court should dismiss them.[1]

---

[1] Courts are not constrained to decide multiple jurisdictional issues in any particular order.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 117 (1998) (Stevens, J., concurring) ("Thus, our precedents clearly support the proposition that, given a choice between two jurisdictional questions—one statutory and the other constitutional—the Court has the power to answer the statutory question first.").  As a result, this Court may conclude that Plaintiffs' action is barred by any one of the jurisdictional barriers presented here, without reaching the others.

## BACKGROUND

**I.    Statutory framework of section 951A.**

The TCJA established a participation exemption system under which certain earnings of a foreign corporation can be repatriated to a corporate U.S. shareholder without U.S. tax.  *See* TCJA § 14101(a); 26 U.S.C. § 245A.  Congress recognized that, without any base protection measures, the participation exemption system could incentivize taxpayers to allocate income – in particular, mobile income from intangible property – that would otherwise be subject to the full U.S. corporate tax rate to a controlled foreign corporation ("CFC") operating in low- or zero-tax jurisdictions.  *See* Senate Committee on the Budget, 115th Cong., Reconciliation Recommendations Pursuant to H. Con. Res. 71, at 365 (Comm. Print 2017) (''Senate Explanation'').  Relatedly, Congress also recognized the administrative difficulty in identifying income attributable to intangible assets.  Congress addressed those concerns in a series of interrelated steps.

First, for companies "shopping" for a tax jurisdiction, the TCJA places a floor on the average foreign tax rate: between 10.5 percent and 13.125 percent.  Companies subject to the statute would compare a 21 percent domestic rate with a 10.5 to 13.125 percent rate rather than a zero rate.

Second, section 951A(a) requires a U.S. shareholder[2] of any CFC[3] to include in gross income the CFC's GILTI for a given tax year.  And third, given the administrative difficulty of

---

[2] A U.S. shareholder is a U.S. person who owns, directly, indirectly, or constructively, at least 10 percent of the total combined voting power or total value of the foreign corporation.  26 U.S.C. § 951(b).

[3] A CFC is a foreign corporation in which more than 50 percent of the total combined voting power or total value of the stock is owned, directly, indirectly, or constructively (under section 958), by U.S. shareholders.  26 U.S.C. § 957(a).

determining income from intangible assets, GILTI is determined in a formulaic manner, under which a 10-percent return is attributed to certain tangible assets (''qualified business asset investment'' or ''QBAI'') and then each dollar of certain income above such ''normal return'' is effectively treated as intangible income.  Senate Explanation at 366.  In other words, GILTI generally is a U.S. shareholder's pro-rata share of the aggregate profit of its CFCs in excess of a 10 percent return on the U.S. shareholder's pro-rata share of the CFCs' tangible assets.

Section 951A describes the formulaic steps for computing GILTI.  In doing so, the statute defines key terms, including components that are necessary to compute GILTI.  Section 951A delineates the steps for computing GILTI through a finely-reticulated set of nested definitions and rules.  For instance, section 951A(b)(1) defines GILTI, with respect to any U.S. shareholder, as the excess (if any) of such shareholder's "net CFC tested income" for such taxable year, over such shareholder's "net deemed tangible income return" ("net DTIR") for such taxable year. Then section 951A(b)(2) provides that net DTIR means, with respect to any U.S. shareholder for any taxable year, the excess of 10 percent of the aggregate of such shareholder's "pro rata share" of the "qualified business asset investment" (QBAI) of each CFC with respect to which such shareholder is a U.S. shareholder for such taxable year, over the amount of interest expense taken into account in determining the shareholder's "net CFC tested income" for the taxable year to the extent the interest income attributable to such expense is not taken into account in determining such shareholder's net CFC tested income.

In turn, the other provisions of section 951A provide definitions for "tested income", "tested loss", "net CFC tested income", and QBAI; set rules for determining a U.S. shareholder's pro-rata share of each of these amounts; and set rules for determining a domestic corporation's

basis in a CFC, and for excluding from income those distributions of a foreign subsidiary's earnings on which U.S. shareholders have already paid tax.

Section 951A applies to taxable years of foreign corporations beginning after December 31, 2017, and to taxable years of U.S. shareholders in which or with which such taxable years of foreign corporations end.  TCJA § 14201(d).  Of importance to the pending motion, these definitions and their computations are statutory, not regulatory.

## II.    Regulations under section 951A.

On October 10, 2018, the Treasury Department and the IRS published a notice of proposed rulemaking that contained proposed regulations implementing section 951A.  REG-104390-18, Guidance Related to Section 951A (Global Intangible Low-Taxed Income), 83 FR 51072.  The notice of proposed rulemaking also contained proposed regulations under sections 951, 1502, and 6038.[4]  Treasury and the IRS received written comments with respect to the proposed regulations, including comments from Plaintiff Monte Silver, and held a public hearing on February 13, 2019.

On June 21, 2019, Treasury and the IRS published the final section 951A regulations in Treasury Decision 9866.  The Treasury Decision contains final regulations that provide guidance to determine the amount of GILTI included in the gross income of certain U.S. shareholders of foreign corporations, including U.S. shareholders that are members of a consolidated group.  It

---

[4] Section 6038 addresses information reporting with respect to certain foreign corporations and partnerships.  The proposed regulations under sections 951 provide guidance regarding the modification to section 951(a) by the TCJA, the pro-rata share rules, and a rule for partnerships that own CFCs.  The proposed regulations under section 1502 provide guidance regarding the calculation of GILTI by members of a consolidated group.  Neither the regulations under section 951 nor the regulations under section 1502 are relevant to this litigation.  Note that the pro-rata share rules are referenced by the final 951A regulations, but in the case of a U.S. shareholder that wholly owns a CFC with one class of stock, as is the case here, the amendments to the pro-rata share rules do not have an impact on the amount of GILTI.

also contains final regulations relating to the determination of a U.S. shareholder's pro-rata share of a CFC's subpart F income included in the shareholder's gross income, as well as certain reporting requirements relating to inclusions of subpart F income and GILTI. Finally, the Treasury Decision contains final regulations relating to certain foreign tax credit provisions applicable to persons that directly or indirectly own stock in foreign corporations. The final regulations retain the approach and structure of the proposed regulations, but reflect certain changes made by Treasury and the IRS in response to comments.[5]

The final section 951A regulations interpret the provisions in section 951A that set forth the elements of the GILTI calculation in section 951A that a U.S. shareholder needs to figure to determine its GILTI. The section 951A regulations clarify how a U.S. shareholder calculates elements that are part of computing GILTI, like "net CFC tested income" and "net deemed tangible income return," discussed above in Background part I. The section 951A regulations also explain how a U.S. shareholder determines the tested income or tested loss (as applicable) and the qualified business asset investment of a CFC. While the section 951A regulations include additional defined terms, the defined terms in the section 951A regulations are either from the statute or are used as shorthand for items described in subparagraphs of the statute. The section 951A regulations also include certain anti-abuse regulations that Treasury and the IRS issued under the authority granted by Congress.

_____

[5] In the final regulations, several important changes were made in response to comments related to: the treatment of domestic partnerships for purposes of determining GILTI income of a partner; modifications to the anti-abuse provisions, including changes to the scope; basis adjustments for "tested losses" and clarifications that were made with respect to coordination between existing subpart F rules and the GILTI computation.

The section 951A regulations impose a "collection of information" requirement on a U.S. shareholder that elects to continue to use their existing depreciation method for property placed in service before December 22, 2017, a U.S. shareholder that rebuts the presumption of temporary transfer subject to the anti-abuse rule in Treas. Reg. § 1.951A-3(h)(1), and a U.S. shareholder elects to disregard disqualified basis.[6]

Pursuant to the RFA, 5 U.S.C. § 605(b), Treasury and the IRS certified that the section 951A regulations will not have a significant economic impact on a substantial number of small entities.  84 FR 29333.

## ARGUMENT

**I.     The Court lacks jurisdiction to entertain Plaintiffs' claims under the Regulatory Flexibility Act and the Paperwork Reduction Act.**

"It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *see also Lehman v. Nakshian*, 453 U.S. 156, 160 (1981).  While Congress has authorized suits for judicial review under the RFA, the extent of its consent is limited to actions brought by "small entities."  Neither Monte Silver – an individual – nor Silver Limited – a foreign entity – qualifies as a "small entity" within the scope of Congress's allowance of suits for judicial review under the RFA. And as for the PRA, Congress has authorized no private right of action at all.  Indeed, Congress has expressly barred suits claiming alleged violations of the PRA.

---

[6] Disqualified basis generally refers to a CFCs basis in property that was transferred in a transaction that is subject to an anti-abuse rule in the section 951A regulations.

### A.     Congress has not authorized Plaintiffs to bring actions for judicial review under the RFA.

The RFA generally requires an agency to analyze how its proposed rules would affect small businesses.  But if it determines and certifies that those rules will not have a "significant economic impact on a substantial number of small entities," no further analysis is needed. 5 U.S.C. §§ 603-604, 605(b).  Here, Treasury estimated the number of small entities that would fall directly within its regulation, estimated the likely economic impact on them, and made the 605(b) certification, obviating further analysis.[7]

Congress limited judicial review under the RFA to claims brought by "small entities." 5 U.S.C. § 611(a)(1).  The RFA defines "small entities" as having the same meaning as "small business," "small organization," and "small governmental jurisdiction."  *Id*. § 601(6).  Each of those phrases is defined in the RFA, and neither Silver, who is an individual, nor his law firm, which is a foreign entity, qualifies as small entity within the meaning of the RFA.[8]

---

[7] Plaintiffs ask the Court, dkt. no. 1 at 14, to order the IRS to comply with section 212 of the Contract with America Advancement Act Of 1996, Pub. L. 104–121, March 29, 1996, 110 Stat 847, which requires an "agency [to] publish one or more guides to assist small entities in complying with[a] rule" the agency publishes, but only when the "agency is required to prepare a final regulatory flexibility analysis under section 604 of title 5, United States Code."  As noted, Defendants contend that the certification under section 605(b) was proper and, thus, that no final regulatory flexibility analysis under section 604 was required.  As a result, Plaintiffs are not entitled to this additional relief they seek.  Regardless, and as discussed below, this Court lacks jurisdiction to consider Plaintiffs' claim under the RFA.  If the Court lacks jurisdiction to consider whether a final regulatory flexibility analysis was required, it also cannot consider whether a guide under section 212 was required.

[8] Treasury and the IRS specifically responded in the final regulations to a comment submitted by Plaintiff Silver asserting that a substantial number of small entities would be affected by the proposed regulations.  The comment was principally concerned with U.S. citizens living abroad that own foreign corporations directly or indirectly through other foreign entities.  Treasury and the IRS explained that U.S. citizens living abroad do not qualify as small business entities, so the regulations would not affect a small entity in the scenario described in the comment.  84 FR 29333.

By no stretch of the imagination does Silver or Silver Limited qualify as a "small governmental jurisdiction," which "means governments of cities, counties, towns, townships, villages, school districts, or special districts, with a population of less than fifty thousand," *id.* § 601(5).  Likewise, neither plaintiff is a "small organization," because neither is a "not-for-profit enterprise which is independently owned and operated and is not dominant in its field," *id.* § 601(4).  Certainly Silver, an individual, is not a "not-for-profit enterprise."  Neither is his business, which, as Plaintiffs acknowledge, is "an Israeli corporation" and "is organized for profit."  Dkt. no. 1 ¶ 5 (emphasis added).  Indeed, Plaintiffs do not assert that either of them qualifies as a small entity under those terms.

Instead, they assert that each of them qualifies as a "small business" within the meaning of the RFA.  Dkt. no. 1 ¶ 7.  But they are wrong.  With an exception not relevant here, "small business," as used in the RFA, "has the same meaning as the term 'small business concern' under section 3 of the Small Business Act."  5 U.S.C. § 601(3).  Section 3 of the Small Business Act clarifies that such a concern is "one which is independently owned and operated and which is not dominant in its field of operation."  15 U.S.C. § 632(a)(1).  That statute further provides that the Small Business Administration "may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of this chapter or any other Act."  15 U.S.C. § 632(a)(2).

Plaintiffs assert that they meet size qualifications that the SBA has established.  Dkt. no. 1 ¶ 7.  But that does not end the inquiry, as the SBA has implemented regulations providing additional standards that define the parameters of a "small business concern."

In a regulation titled, "How does the SBA define 'business concerns or concern,'" the SBA explains that a

small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.

13 C.F.R. § 121.105.  Silver, as an individual, is not "a business entity organized for profit," 13 C.F.R. § 121.105, nor is he a small business concern that "is independently owned and operated," *see* 15 U.S.C. § 632(a)(1).  And while Defendants do not contest that Silver's law firm is organized for profit, the firm does not meet the other criteria described immediately above.

Silver Limited does not have a place of business in the United States.  Although Plaintiffs allege that Silver "Limited has maintained a place of business location in both Israel and California" since 2012, dkt. no. 1 at ¶ 5, the facts do no support that claim.[9]  The records of the California Secretary of State show no California business registration for Silver Limited.  *See* Decl. of Joseph Sergi at ¶ 4.  Also, the Form 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations, that Silver prepares regarding his law firm asks for the "[n]ame, address, and identifying number of branch office or agent [of the foreign corporation] (*if any*) in the United States."  *See* Ex. 1 at 1 (emphasis added).)  Silver left that space on his Form 5471 for 2017 conspicuously blank.  *Id.*

---

[9] "A court may consider materials outside the pleadings to determine its jurisdiction."  *Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 6 (D.D.C. 2015) (quoting *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005)); *see also Terry v. First Merit Nat'l Bank*, 75 F. Supp. 3d 499, 506 (D.D.C. 2014).

Lacking a place of business in the United States is enough to disqualify Silver Limited as a small business concern.[10]  Besides that, Silver Limited does not meet either prong of the final requirement.  There is no evidence that it operates primarily within the United States, or that it makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.  As a business incorporated and located in Israel and with no U.S. place of business, it does not appear that Silver Limited operates in the United States at all, much less primarily.  As for contributing significantly to the economy, Silver Limited can hardly contribute significantly through use of American products, materials or labor, as the firm is located in Israel and has Silver, who lives in Israel, as its sole shareholder and employee.[11]  Silver Limited also does not contribute significantly to the U.S. economy through payment of taxes.  *See* Ex. 1 at 3 (Schedule E line 1, reporting no U.S. taxes paid).[12]

"A plaintiff who files an action against the United States must demonstrate that there has been a waiver of sovereign immunity that is applicable to the claims plaintiff has brought in

---

[10] As noted above, to qualify as a "small business concern" under the applicable SBA regulation, the business entity must (1) be organized for profit; (2) have a place of business located in the United States; **and** (3) operate primarily within the United States **or** make a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.  *See* 13 C.F.R. § 121.105.

[11] As Plaintiffs admit, Silver is the sole shareholder of Silver Limited, which they describe as a "one-person business."  Dkt. no. 1 at ¶ 5.

[12] Plaintiffs also allege that Silver himself contributes significantly to the U.S. economy, pointing to his personal real estate investments and filing of Form 1040 income tax returns.  *See* Dkt. no. 1 at ¶¶ 5, 6, 8.  Even assuming those allegations are true, they are irrelevant as Silver, an individual, does not meet the fundamental qualification of being a small business concern that "is independently owned and operated," *see* 15 U.S.C. § 632(a)(1), nor is he "a business entity organized for profit," 13 C.F.R. § 121.105.  Silver's alleged investment in U.S. commercial real estate also is irrelevant to whether his law firm makes a significant contribution to the U.S. economy because Silver acknowledges that he "has personally engaged" in U.S. commercial real estate investments.  Dkt. no. 1 at ¶ 5.

order to satisfy the plaintiff's burden of establishing that the court has jurisdiction over the complaint." *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 136 (D.D.C. 2015), *aff'd*, 829 F.3d 754 (D.C. Cir. 2016).  Instead of meeting this burden, the facts show that Plaintiffs cannot meet the requirements for a waiver of sovereign immunity to bring suit under the RFA.  As neither Plaintiff qualifies as a "small business concern" under SBA regulations, and thus cannot qualify as a "small entity" under the RFA, the Court thus lacks jurisdiction to hear their RFA claim.

> **B.** **Congress has barred claims for judicial review under the Paperwork Reduction Act.**

It is unclear whether Plaintiffs intend to raise a claim under the PRA.  Plaintiffs clearly state, "[t]his lawsuit does not state a cause of action for violation of the PRA."  Dkt. no. 1 at 4 n.2.  Still, they seek relief for alleged violations of the PRA, and so we explain why a PRA claim, if they present one, is not justiciable.

This Court does not have jurisdiction to review any alleged violations of the PRA.  The PRA addresses various procedures that an agency must meet when it proposes to "conduct or sponsor the collection of information."  *See* 44 U.S.C. § 3507(a).  When an agency proposes a rule that contains a collection of information requirement, the agency must submit its proposed rule to the Director of the Office of Management and Budget ("OMB"), who decides whether the agency's submission meets the requirements of the PRA and whether the information collection will be approved.  *See id.* § 3507(d).  That is the process that occurred with the regulations at issue here.

Regardless, "[t]he decision by the Director to approve or not act upon a collection of information contained in an agency rule shall not be subject to judicial review."  *Id.* § 3507(d)(6).  As a result, courts do not have jurisdiction to hear standalone challenges to agency action based on the PRA.  *See Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 34 F. Supp. 3d

160, 170 (D.D.C. 2014) (noting that the PRA "does not create a private cause of action"); *Tozzi v. E.P.A.*, 148 F. Supp. 2d 35, 48 (D.D.C. 2001) (finding that "§ 3507(d)(6) is nothing less than an explicit statement of clear Congressional intent that, under the PRA, OMB [information collection request] approval decisions are unequivocally not subject to judicial review").

Plaintiffs appear to agree that the PRA does not give them an avenue to seek judicial review of the regulations here, acknowledging that "[t]his lawsuit does not state a cause of action for violation of the PRA."  Dkt. no. 1 at 4 n. 2.  Yet Plaintiffs still ask the Court to order Defendants to correct alleged violations of the PRA.  Plaintiffs are wrong when they suggest that the APA provides a vehicle for review of PRA procedures.  *See* Dkt. no. 1 at ¶¶ 58-60.  Judicial review under the APA is not available when another statute, such as the PRA, precludes judicial review.  *See* 5 U.S.C. § 701(a)(1).  As previously observed, "no amount of statutory parsing or backdoor foray invoking the private suit provision of the APA can overcome such statutory clarity and command" as found in the PRA's bar to judicial review.  *Tozzi*, 148 F. Supp. 2d at 48. Plaintiffs' claims asking the Court to order correction of alleged violations of the PRA — whether they seek relief directly under the PRA, or under the APA— must be dismissed.  *See id.* (dismissing claim for alleged violations of the PRA pursuant to Federal Rule of Civil Procedure 12(b)(1)).

## II.      The Court lacks jurisdiction because Plaintiffs lack standing.

A showing of standing "is an essential and unchanging" predicate to any exercise of a federal court's Article III jurisdiction.  *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (internal citations omitted).  Defects of standing are defects in subject matter jurisdiction.  *Abulhawa v. United States Department of the Treasury*, 239 F. Supp. 3d 24, 31 (D.D.C. 2017) (citing *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)).

The "irreducible constitutional minimum of standing contains three elements": injury in fact, causation, and redressability. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal citation omitted). The plaintiff bears the burden of establishing these elements of standing in the same manner as otherwise required at a given stage of a litigation. *Id.* Thus, to establish standing at the motion to dismiss stage, Plaintiffs here must make plausible allegations that they have (a) suffered an injury in fact that is (b) "fairly traceable" to the actions of the Defendants and (c) likely to be redressed by a favorable decision by the Court. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *see also Coalition for Mercury-Free Drugs v. Sibelius*, 671 F.3d 1275, 1279 (D.C. Cir. 2012) (the three elements of standing are: (1) the plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent," not abstract, generalized, remote, or speculative; (2) there must be a "causal connection" between the injury and the challenged action of the defendant; and (3) it must be "likely," not merely "speculative," that the relief sought will redress the injury). Though well-pleaded factual allegations are to be accepted as true at this stage, "threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice." *Arpaio*, 797 F.3d at 19 (internal quotation marks and citation omitted).

## A.   Plaintiffs do not allege an injury "fairly traceable" to the regulations they challenge.

Plaintiffs complain of several (alleged) burdens: that the GILTI statute "created a new and overly complex tax regime"; that the statute employs a variety of "complex, abstract terms"; that the statute makes certain deductions and credits available to large multinationals but not individual U.S. shareholders; that the statute potentially imposes a higher tax rate on individuals than on multinationals; and that complying with this complex statute and the regulations force

Plaintiffs into expending "significant funds, time and effort."  Dkt. no. 1 at ¶¶ 31-37, 50.  Indeed, Plaintiffs describe the GILTI statute's results as "sheer insanity."  *Id.* at ¶ 37.

Taking all of Plaintiffs' allegations as true at this stage, it is clear that the burdens of which they complain are statutory.  Most of their allegations *exclusively* mention the GILTI statute.  *See id.* at ¶¶ 31-36.  In contrast, not once do Plaintiffs allege a burden they face as a result of the regulations alone.

Yet, after all this, Plaintiffs seek to enjoin enforcement of the *regulations*.  They do not challenge the statute at all.  If the Court is puzzled by the disconnect, it is not alone.  The Plaintiffs' requested relief is mismatched from any injury they allege.  This is a foundational problem with their action.

To establish standing, Plaintiffs must show "causation" and "redressability."  Causation and redressability are, like heads and tails, related but distinct concepts: causation focuses on the "connection between the assertedly unlawful conduct and the alleged injury" whereas redressability focuses on the "connection between the alleged injury and the judicial relief requested."  *West v. Lynch*, 845 F.3d 1228, 1235-1236 (D.C. Cir. 2017).  To establish redressability at the pleading stage, courts require that the facts alleged be sufficient to demonstrate a *substantial likelihood* that the relief sought will redress the injury to the plaintiff.  *Renal Physicians Ass'n v. U.S. Dept. of Health and Human Services*, 489 F.3d 1267, 1275 (D.C. Cir. 2007).

Here, Plaintiffs' own description of their injury centers on the GILTI statute, which they describe as creating an "overly complex", unfair and insane tax regime.  Dkt. no. 1 at ¶¶ 31-37.  But Plaintiffs do not challenge the statute, they challenge the regulations (likely because an RFA challenge would not lie against a statute).  A successful challenge to the regulations, however,

will not alleviate the claimed burden from the statute.  Accordingly, it is, to say the least, *doubtful* that the relief Plaintiffs request would *likely* redress the injury they allege.  *Cf. West v. Lynch*, 845 F.3d at 1235 ("Redressability examines whether the relief sought . . . will likely alleviate the particularized injury alleged by the plaintiff" [and] "The key word is 'likely'.") (internal citation omitted).

Put another way, Plaintiffs do not allege an injury that is "fairly traceable" to the regulations they challenge, *see Food & Water Watch, Inc.*, 808 F.3d at 913, as opposed to the GILTI statute that they do not challenge.  Because Plaintiffs give no reason to suppose the regulatory process caused or aggravated the injury they assert, they do not state a claim — and *cannot* state a "plausible" claim — that the injury they have suffered is "likely" to be redressed by the relief they seek, *i.e.*, enjoining the regulations and remanding the matter to the agency to reconsider whether a full RFA analysis is needed.  *Id.*  Rather, given that the bulk of their alleged injury stems from the GILTI statute itself, it is *at best* "speculative" that such injury would be redressed, even *if* the Court were to go as far as ordering Treasury to conduct a full RFA analysis. This is not enough for standing.  *Coalition for Mercury-Free Drugs v. Sibelius*, 671 F.3d 1275, 1279 (D.C. Cir. 2012) (as part of the "irreducible constitutional minimum of standing," it must be "likely," not merely "speculative," that the relief sought will redress the injury).

B.   **Plaintiffs' claim that Treasury committed a procedural violation still does not excuse the failure to allege an injury likely to be remedied by the relief they seek.**

Plaintiffs allege that Treasury violated the Regulatory Flexibility Act, and possibly the Paperwork Reduction Act, in the course of issuing the regulations, because Treasury failed to adequately account for "the needs and concerns of small business[es]" impacted by those regulations.  *See* Dkt. no. 1 at ¶¶ 2, 51.  This is, therefore, a "procedural rights" or "procedural

injury" case.  The D.C. Circuit, in *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005), has explained what a plaintiff needs, and does not need, to establish standing in this sort of case:

> To show causation and redressability in their procedural-rights case, [plaintiffs] need not demonstrate that, but for the procedural defect, the final outcome of the rulemaking process would have been different, and that this Court's ordering the action to remedy the procedural defect will alter the final effect on [plaintiffs'] interests. . . . In short, this Court assumes the causal relationship between the procedural defect and the final agency action. Nonetheless, [plaintiffs] must still demonstrate a causal relationship between the final agency action and the alleged injuries.

Although Plaintiffs need not "show that proper procedures would have caused the agency to take a different substantive action," s*ee Renal Physicians Ass'n*, 489 F.3d at 1279, they must still show a link between final agency action and injury.  In that way, and only that way, are the "normal standards for redressability and immediacy" "relaxed" for a procedural injury claim. *See Ctr. for Law & Educ.*, 396 F.3d at 1160; *Fla. Audubon Soc.*, 94 F.3d at 664 ("Although the Supreme Court has expressly declined to examine whether proper execution of the omitted procedure will likely prompt a modification of the government's action . . . the Court has never freed a plaintiff alleging a procedural violation from showing a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest.") (internal citation omitted).

Despite this "relaxed" standard, Plaintiffs presenting a procedural injury claim *still* must make plausible allegations that the harm they allege is "fairly traceable" to the agency's action and thus *likely* to be redressed by a favorable decision by the Court.  *Food & Water Watch, Inc.*, 808 F.3d at 913; *WildEarth Guardians v. Jewell*, 738 F.3d 298, 306 (D.C. Cir. 2013) (causation requirement "not relaxed" for a procedural injury claim and plaintiff must still demonstrate a

causal connection between the agency's alleged procedural violation and the alleged injury suffered by plaintiff); *Ctr. for Law & Educ.*, 396 F.3d at 1160.

Put another way, where a complaint alleges that a procedural violation has occurred and a concrete injury has occurred, but the pleading also suggests that the procedural violation is not the *cause* of that injury, then plaintiffs do not have standing.  *See Food & Water Watch*, 808 F.3d at 921 ("the omission of a procedural requirement does not, by itself, give a party standing to sue . . .  Deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.") (internal citations and punctuation marks omitted); *Fla. Audubon Soc.*, 94 F.3d at 668–69 ("[E]ven in procedural-rights cases, [courts] must examine the causal connection between the substantive government action and the asserted injury to the plaintiff's particularized interest.").

Here, even if one assumes for the sake of argument that Treasury committed the procedural violations Plaintiffs allege, there is still no basis to believe that complying with the proper procedure would have avoided or mitigated Plaintiffs' alleged injury.  This is so because the injury inheres in the GILTI statute and thus stems from the "independent action" of the third party — namely, Congress — that passed the statute.  *See Ctr. for Law & Educ.*, 396 F.3d at 1160 (causal chain too attenuated where injury results from "independent action" of a third party and is thus not "fairly traceable" to the agency's alleged procedural violation).

**C.    The District Court's ruling on standing in "*Silver I*" does not help establish Plaintiffs' standing in this suit.**

In an earlier case involving these Plaintiffs' similar challenge to Treasury regulations issued under a different tax statute, this District Court denied the Government's motion to dismiss the suit for lack of standing and lack of jurisdiction.  *See Silver v. IRS, et al.*, case no. 19-cv-247 (APM), 2019 WL 71685 (D.D.C. Dec. 24, 2019) ("*Silver I*").  Defendants anticipate that

this earlier ruling will be a centerpiece of Plaintiffs' response to the present motion to dismiss, and explain why that ruling should not govern the Court's conclusion in this case.

The Court denied the motion to dismiss in *Silver I*, reasoning that the Plaintiffs established standing at the pleading stage because they alleged that the "agencies neglected to undertake procedural measures designed to protect small business from the burden of unwieldy and cost-intensive regulations" and that plaintiffs' "alleged injuries [were] therefore traceable to Defendants' alleged violation of these separate [procedural] requirements, not the [tax statute]." *Id.* at *2.

Without conceding that the Court's ruling in *Silver I* was correct, in any event, there is not a sufficient causal connection in *this* case between the agency's alleged procedural violations and the burden of which Plaintiffs complain.  The cases cited by the *Silver I* opinion serve to demonstrate this disconnect and support Defendants' position here.

*Silver I* cited *State Nat. Bank of Big Spring* for the proposition that plaintiff bank had standing when a "monitoring program" devised to comply with regulations "cause[d] it to incur costs."  *Silver I*, 2019 WL 71685 at *2 (*citing State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015)).  But the law being challenged in that case established the Consumer Financial Protection Bureau, and the plaintiff bank argued that the Bureau was unconstitutional. For one, the plaintiff bank challenged a *statute*, rather than a regulation, leaving no question (as there is here) as to whether the burden alleged by the plaintiff inhered in the statute, or instead resulted from agency action in administering that statute.  Furthermore, the bank was challenging the Bureau's very existence.  *State Nat. Bank of Big Spring*, 795 F.3d at 54 ("The Bank is not challenging an agency rule that regulates its conduct . . . but rather is challenging the legality of the regulating agency itself.").  Had the plaintiff bank succeeded in its challenge, and the court

invalidated the Bureau or stripped it of "its broad regulatory authority to impose new obligations on banks," *see id.*, the court-ordered relief would have, as a matter of logic, dramatically lightened the compliance burden alleged by the bank. In contrast, here, the Plaintiffs allege a host of burdens brought about by the GILTI statute, but do not challenge the statute. Consequently, there is no reason to believe that relief from the regulations alone will lighten the burdens of the statute.

Silver I also cited *Association of Private Sector Colleges & Universities v. Duncan* for the proposition that regulated entities have standing where they allege they would face greater compliance costs due to agency regulations. *Silver I*, 2019 WL 71685 at *2 (citing *Association of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 458 (D.C. Cir. 2012)). The agency in question, the Department of Education, revised a set of regulations it issued under the Higher Education Act ("HEA") to make them more stringent, after concluding that its earlier regulations were "too lax." *See Ass'n of Private Sector Colleges & Universities*, 681 F.3d at 434. The plaintiff, an association of schools, claimed, among other things, that the Department's new and stricter regulations exceeded its authority under the HEA. *See id.*

In that case, the Department was acting under its broad authority to "make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing [Title IV] programs." *Id.* at 436 (citing 20 U.S.C. §1221e-3). In contrast, here, Plaintiffs decry an unfair and nonsensical *statutory* regime in which Treasury's administrative authority is largely limited to clarifying how to calculate and substantiate certain amounts defined by the statute and formulating "anti-avoidance" rules. *See* 26 U.S.C. § 951A(d)(4).

Furthermore, in *Association of Private Sector Colleges & Universities*, because the agency had ratcheted up the standards in its regulations, while the HEA remained unchanged, it

was apparent that any compliance burden alleged by the plaintiffs came from the tightening of the regulations, rather than the unaltered statute. *Ass'n of Private Sector Colleges & Universities*, 681 F.3d at 436.  This is all the more clear given that plaintiffs challenged some of the new, tougher regulations for *exceeding the limits of the statute.  See id.* at 442, 449.  To sum up, it was easy in that case to unpeel the alleged burden of the *regulations* from any burden inhering in the *statute*, and easy to see, therefore, how relief from the regulations alone might help those plaintiffs.  Here the opposite is true and, once again, Plaintiffs give *no* reason to suppose that any of the alleged burden thrust upon Plaintiffs stem from agency action or inaction (procedurally improper or not), rather than the GILTI statute, and thus no reason to suppose that ordering Treasury to revisit the regulations would lighten those burdens.

Finally, *Silver I* cited *Fla. Audubon Soc.* for the proposition that a "plaintiff alleging a procedural violation [must show] a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest."  *Silver I*, 2019 WL 71685 at *2 (citing *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658 at 664) (D.C. Cir. 1996)).

Exactly so.  And the  D.C. Circuit in *Fla. Audubon Soc.* went on to affirm the lower court's decision that plaintiffs had no standing because, for one, the agency's alleged procedural omission bore little connection to the alleged injury.  *Id.* at 662.  The D.C. Circuit cautioned courts against the mistake of finding standing where plaintiffs alleged a procedural error, coupled with the allegation that the error made it more likely that "serious . . . harms were overlooked." *Id.* at 668.  The Court reasoned that this sort of "truncated" analysis would, in essence, allow plaintiffs to sue for mere violation of a "procedural right" in clear circumvention of standing jurisprudence.  *See id.*; *see also Food & Water Watch, Inc.*, 808 F.3d at 913.

The D.C. Circuit's careful instruction in *Fla. Audubon Soc.* applies here:  even *if*, as alleged, Treasury violated procedural requirements of the RFA and PRA, the violation was far downstream of any harm to Plaintiffs flowing from the alleged "sheer insanity" of the GILTI statute, and thus not the cause of that harm, nor a likely source of relief for it.

At bottom, Plaintiffs' procedural injury claim fails to connect the harm they allege to the relief they request.  As the *Silver I* court observed, "[a] procedural injury claim . . . must be tethered to some concrete interest adversely affected by the procedural deprivation[.]"  *Silver I*, 2019 WL 7168625 at *1 (citation omitted).  Here, Plaintiffs allege they are harmed (by the burdens imposed by the GILTI statute) and allege a procedural violation (Treasury's failure to comply with the RFA and PRA) but one is not "tethered" to the other.  And so, these two mismatched halves do not make a whole.  Because the Plaintiffs complain of burdens from the statute, there is no reason to believe that relief as to the regulations would likely redress those burdens.  Accordingly, Plaintiffs lack standing.

III.    **This Court also lacks jurisdiction because the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act bar this suit.**

The Anti-Injunction Act and the tax exception to the Declaratory Judgment Act preclude the injunctive and declaratory relief that the Plaintiffs seek.  Plaintiffs ask the Court to remand the challenged regulations so that Defendants may correct alleged errors in their promulgation and, in the meantime, to defer the enforcement of the challenged regulations against Plaintiffs and other small entities.  Dkt. no. 1 at 14-15 (Prayer for Relief).

"In a case of actual controversy within its jurisdiction,"[13] the Declaratory Judgment Act permits a court to issue a declaratory judgment "except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code."[14]  28 U.S.C. § 2201(a).  With exceptions not relevant here, the Anti-Injunction Act similarly prohibits lawsuits filed "for the purpose of restraining the assessment or collection of any tax."  26 U.S.C. § 7421(a).  Those Acts are similar in operation, and if the Anti-Injunction Act bars relief, declaratory relief under the Declaratory Judgment Act also is unavailable.  *See Florida Bankers Ass'n v. U.S. Dep't of Treasury,* 799 F.3d 1065, 1067 (D.C. Cir. 2015); *Cohen v. United States*, 650 F.3d 717, 727-31 (D.C. Cir. 2011) (en banc);[15] *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C. Cir. 1995).

The principal purpose of the Anti-Injunction Act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'"  *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736-37 (1974) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)).  Courts have made clear that the

---

[13] As described above in Argument part II, Plaintiffs' claim for injunctive and declaratory relief presents no "actual controversy" for this Court to decide.

[14] Internal Revenue Code section 7428 does not apply here.  That section permits certain organizations that have applied for tax-exempt status to obtain a declaratory judgment as to their status when their applications have been denied or have been pending for more than 270 days.  It also permits a suit when the IRS proposes to revoke tax-exempt status.  *See* 26 U.S.C. § 7428(a), (b)(2).

[15] In *Cohen*, unlike the case at bar, the taxes had already been paid and the challenged notice concerned the procedure for obtaining a refund.  *Cohen*, 650 F.3d. at 725.  Thus, the suit was not a restraint on assessment or collection, and therefore the Anti-Injunction Act did not bar a suit seeking post-collection review of the refund procedure.

Anti-Injunction Act precludes them from enjoining activities that are related to, or may culminate in, assessment or collection: "'To hold otherwise would enable ingenious counsel to so frame complaints as to frustrate the policy or purpose behind the Anti-Injunction Statute.'" *Tollerson v. C.I.R.*, No. CIV. A. H-91-2762, 1993 WL 174884, at *5 (S.D. Tex. Mar. 4, 1993) (quoting *Blech v. United States*, 595 F.2d 462, 466 (9th Cir. 1979)); *Ellis v. Commissioner*, 67 F. Supp. 3d 325, 332 (D.D.C. 2014), *aff'd*, 622 Fed. App'x 2 (2015) (noting that "circuit courts have adopted a broad interpretation of … [the prohibition in the AIA], finding that 'it is applicable to not only the assessment and collection of taxes, but to activities which are intended to or may culminate in the assessment or collection of taxes as well'"); *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983) (same); *Abraham v. United States*, No. CIV.A. 97-1873 CKK, 1998 WL 422915, at *3 (D.D.C. Mar. 31, 1998) (collecting cases).[16]

The regulations challenged here assist taxpayers in determining the self-reporting of amounts subject to GILTI, which are included in the taxpayer's gross income and thus impact the taxpayer's tax liability. Self-reporting *per se* culminates in assessment of tax. Indeed, it is the foundation of our system of taxation. *Seven-Sky v. Holder*, 661 F.3d 1, 32–33 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("keep in mind that the individual tax return is absolutely central to the IRS's assessment and collection of taxes. Tax returns are the means by which most taxpayers self-assess and pay their taxes, and the means by which much of the

---

[16] One district court in Texas a few years ago gave a narrower interpretation of the scope of the Anti-Injunction Act. In that case, the court found that the Anti-Injunction Act did not preclude a pre-enforcement challenge to a Treasury regulation that limited the tax benefits of corporate inversions because the challenge "does not involve assessment or collection of a tax." *Chamber of Commerce v. IRS*, No. 1:16-CV-944-LY, 2017 WL 4682050, at *3 (W.D. Tex. Oct. 6, 2017), *appeal voluntarily dismissed*, No. 17-51063, 2018 WL 3946143 (5th Cir. July 26, 2018). But that decision is against the weight of long-standing authority that has applied the Anti-Injunction Act to bar suits enjoining activities that are related to, or may culminate in, assessment or collection, as opposed to just assessment or collection themselves.

Government's tax revenue is collected.  The tax return thus forms the foundation of the IRS's assessment and collection process.") (footnote omitted); *abrogated by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, (2012).

Thus, in seeking to enjoin enforcement of these regulations, Plaintiffs' requested relief, as a matter of logic, will impede or restrain assessment.  And so this suit is barred.  *See Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 405 (4th Cir. 2003) ("it is clear that the Anti–Injunction Act extends beyond the mere assessment and collection of taxes to embrace other activities, such as an audit to determine tax liability, that may culminate in the assessment or collection of taxes); *Lowrie v. United States,* 824 F.2d 827, 830 (10th Cir.1987) ("The statute applies not only to the actual assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection."); *Dickens v. United States,* 671 F.2d 969, 971 (6th Cir.1982) (the Act "is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes"); *Ellis*, 67 F. Supp. 3d at 332 (noting that "… circuit courts have adopted a broad interpretation of… [the prohibition in the AIA], finding that 'it is applicable to not only the assessment and collection of taxes, but to activities which are intended to or may culminate in the assessment or collection of taxes as well'").

As the D.C. Circuit explained in *Florida Bankers*, when a complaint, such as the one here, seeks to invalidate a tax-related regulation, "the Anti–Injunction Act ordinarily applies because the suit, if successful, would invalidate the regulation and thereby directly prevent collection of the tax." *Id.* at 1067.[17]  Similarly in *Maze*, the D.C. Circuit explained, "we have

---

[17] Writing for the majority in *Florida Bankers*, now-Justice Kavanaugh explained that the decision in *Direct Marketing Ass'n v. Brohl*, 135 S. Ct. 1124 (2015), which held that a challenge to a Colorado reporting requirement was not barred by the Tax Injunction Act (a prohibition on

recognized our need to engage in 'a careful inquiry into *the remedy sought* . . . and *any implication* the remedy may have on assessment and collection.'"  *Maze v. IRS*, 862 F.3d 1087, 1092 (D.C. Cir. 2017) (quoting *Cohen*, 650 F.3d at 724) (emphasis added in *Maze*).

In this case, the remedy sought – deferred enforcement of the regulations pending remand to the agency to correct alleged procedural errors – would result in interference with the assessment and the collection of tax.  The section 951A regulations clarify how to calculate the various amounts used to determine GILTI, and, in the case of the anti-avoidance rules found in Treas. Reg. § 1.951A-3(h) that were written pursuant to section 951A(d)(4) (not specifically challenged or applicable to Plaintiffs), they increase GILTI beyond what would be plainly indicated by the statute.  If the anti-avoidance rules were not enforced, then the interference with

---

suits to restrain the state taxes), was inapposite because the Colorado provisions at issue did not impose a tax or a penalty which was treated as a tax.  In *Direct Marketing*, the Court considered the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, which restricts federal courts' ability to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law . . . ."  It held that the TIA did not bar federal court consideration of a suit seeking to ban enforcement of Colorado's "penalty" on noncollecting out-of-state retailers who did not follow notice-and-reporting requirements for sales to Colorado residents – requirements designed to help Colorado collect use taxes from its residents.  The Colorado scheme imposed a $5 penalty (not treated as a tax by statute) for failure to comply.

Moreover, the Supreme Court in *Direct Marketing* did not cite, let alone repudiate or overrule, *Bob Jones* or any of the many other cases holding that the Anti-Injunction Act bars suits inhibiting assessment and collection.  *Direct Marketing*, 135 S. Ct. at 1136 (Ginsburg, J., concurring) (finding that "[t]his suit does not implicate th[e] congressional objective" of "stop[ping] litigants from using federal courts to circumvent States' 'pay without delay, then sue for a refund' regimes"); *see also CIC Servs., LLC v. IRS*, 925 F.3d 247, 256 (6th Cir. 2019), *cert. granted*, 206 L. Ed. 2d 916 (May 4, 2020) (adopting *Florida Bankers*' distinction of *Direct Marketing*); *Alabama v. North Carolina*, 560 U.S. 330, 335-36 (2010) (declining to find a case was implicitly overruled by subsequent decisions that did not mention that case and did not directly address the issue it presented).  Accordingly, *Bob Jones* and the other cited cases remain valid authority here.

the IRS assessing and collecting tax would be particularly direct.[18]  Plaintiffs ask the Court to enjoin operation of the regulation in its entirety, thereby interfering with the ability of the IRS to determine the correct tax liability of taxpayers who are within the regulations' scope.  Interfering with the ability to determine correct liability directly interferes with the assessment and the collection of tax.  Plaintiffs' request that the Court remand the regulation and stay its enforcement is a request for pre-enforcement judicial interference with the assessment and collection of taxes.  This is precisely the type of relief that the AIA and DJA forbid.

As *Florida Bankers* additionally notes, this result does not forever bar Plaintiffs' regulatory challenge.  *See id.*  If the IRS determines that Plaintiffs have taxable income based on an application of the regulation and issues a notice of deficiency asserting a tax liability, Plaintiffs may challenge the IRS determination in the Tax Court before paying the deficiency. *See* 26 U.S.C. §§ 6212, 6213; *Bob Jones*, 416 U.S. at 730.  Or Plaintiffs may pay the tax calculated under the regulations, if there is any, and sue for a refund in district court or the Court of Federal Claims.  *See* 26 U.S.C. § 7422.  These legal remedies are the appropriate vehicles for Plaintiffs to raise their challenges to the Treasury regulation at issue.  *See SIH Partners LLLP v. Comm'r of Internal Revenue*, 923 F.3d 296, 301 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 854 (2020) (reviewing Tax Court case in which the plaintiffs challenged long-standing regulations promulgated under Internal Revenue Code section 956); *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1074 (9th Cir. 2019), *cert. denied sub nom. Altera Corp. & Subsidiaries v. CIR*, No. 19-1009, 2020 WL 3405861 (U.S. June 22, 2020) (reviewing Tax Court

---

[18] Again, the Plaintiffs have alleged no specific harm arising from the regulations, including from the anti-avoidance rules.  But if the relief sought would be granted, the IRS would be harmed in its ability to assess and collect tax.

case in which the plaintiffs challenged amendments to the cost-sharing regulations promulgated under Internal Revenue Code section 482).[19]

Finally, the fact that Plaintiffs' suit involves a procedural challenge under the RFA (and perhaps also under the PRA) does not change that result. Indeed, the D.C. Circuit previously has invoked the AIA in dismissing a pre-enforcement regulatory challenge that included a procedural claim under the RFA. *See Florida Bankers*, 799 F.3d at 1065.

## <u>CONCLUSION</u>

The Court lacks jurisdiction to entertain Plaintiffs' claims under the RFA and the PRA, Plaintiffs lack standing, and the Anti-Injunction Act bars Plaintiffs' regulatory challenge. As a result, the United States asks the Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

\#

\#

\#

\#

\#

\#

\#

---

[19] Because Plaintiffs have these alternative legal remedies available, limited judicial exceptions to the Anti-Injunction Act do not apply to them. Under one exception, a court may grant a pre-enforcement injunction only if there are no circumstances whatsoever under which the government might ultimately prevail *and* if equity jurisdiction otherwise exists. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). Under another, the plaintiff may proceed where there is no other means of litigating its claims. *South Carolina v. Regan*, 365 U.S. 367 (1984). Neither of these exceptions apply, given the legal remedies available to Plaintiffs.

\#

DATED:  August 24, 2020

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Joseph A. Sergi*
JOSEPH A. SERGI (D.C. Bar No. 480837)
Senior Litigation Counsel
LAURA M. CONNER (VA Bar No. 40388)
NISHANT KUMAR (D.C. Bar No. 1019053)
Trial Attorneys
Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Tel: (202) 514-2986
Fax: (202) 514-6866
Nishant.kumar@usdoj.gov
Joseph.a.sergi@usdoj.gov
Laura.m.conner@usdoj.gov