# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**MONTE SILVER** and
**MONTE SILVER, LTD.**,
an Israel corporation

*Plaintiffs*

*v.*

**INTERNAL REVENUE SERVICE;
UNITED STATES DEPARTMENT
OF THE TREASURY; CHARLES RETTIG**,
in his official capacity as Commissioner of the
Internal Revenue; and **STEVEN MNUCHIN**, in
his official capacity as United States Secretary
of the Treasury

*Defendants*

Civil Action No. 20-cv-1544-CKK

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS FOR LACK OF JURISDICTION

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure,  the Local Rules of this Court, and the Order Establishing Procedures for Cases Assigned to Judge Colleen Kollar-Kotelly, ECF 6, Plaintiffs Monte Silver and Monte Silver, Ltd., by their undersigned counsel, submit this Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss"), ECF 9, together with the Declaration of Monte Silver and the accompanying Exhibits to which the Court is respectfully referred.  For the reasons stated below, the Motion to Dismiss must be denied.

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iii

INTRODUCTION .......................................................................................................... 1

BACKGROUND............................................................................................................. 3

    A.   The statutes protecting small business during the rulemaking process. ................... 3

      The Regulatory Flexibility Act............................................................................... 3

      The Paperwork Reduction Act ................................................................................ 5

      The Administrative Procedure Act........................................................................... 6

    B.   The disputed tax statutes and regulations................................................................ 6

FACTS ........................................................................................................................... 8

STANDARD OF REVIEW ............................................................................................. 9

ARGUMENT .................................................................................................................. 9

    I.   The Court has jurisdiction under the RFA and may provide relief under the PRA............. 9

      A. Regulation 13 C.F.R. 121.105(a) ("SBA Regulation") does not apply to RFA cases. ....... 9

      B. Even if the SBA regulation does apply, Plaintiffs are small businesses under the SBA regulations ................................................................................................................. 13

      C. Only limited claims are barred under the Paperwork Reduction Act. And in any case, this action does not state a cause of action under the RFA..................................................... 15

    II.   Article III Standing ..................................................................................................... 15

      A. Plaintiffs Have Procedural Standing, as conclusively determined in Silver I................... 15

      B. Traceability................................................................................................................ 17

      C. Plaintiffs have standing even under the case law cited by Defendants. ............................ 19

    III.   The Anti-Injunction Act (AIA) does not bar this action............................................... 21

      A. The inapplicability of the AIA to this action was determined conclusively in *Silver I*. This is not a case involving tax collection or tax revenues. ..................................................... 21

      B. The AIA does not apply where, as here, its application would leave an aggrieved taxpayer without an alternative forum in which to pursue its claims. ............................................. 22

      C. Congress has made clear that in RFA cases, the AIA is only to be addressed at the remedy stage................................................................................................................................ 24

CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Am. Farm Bureau Fed'n v. EPA,*
792 F.3d 281 (3d Cir. 2015) ............................................................................................ 23

*Carpenters Indus. Council v. Zinke,*
854 F.3d 1 (D.C. Cir. 2017) ............................................................................................ 24

*Cohen v. United States,*
650 F. 3d. 717 (D.C. Cir. 2011) ...................................................................................... 26

*Cohen v. United States,*
650 F.3d 717 (D.C. Cir. 2011) ........................................................................................ 25

*Cohen v. United States,*
650 F.3d 717 (D.C. Cir. 2011) (*en banc*) ...................................................................... 24

*Florida Bankers Ass'n v. U.S. Dep't of Treasury,*
799 F.3d 1065 (D.C. Cir. 2015) ...................................................................................... 27

*Grocery Mfrs. Ass'n v. Envtl. Prot. Agency,*
693 F.3d 169 (D.C. Cir. 2012) ........................................................................................ 23

*Hibbs v. Winn,*
542 U.S. 88 (2004) .......................................................................................................... 25

*Huddy v. FCC,*
236 F.3d 720 (D.C. Cir. 2001) ........................................................................................ 23

*Hyatt v. Office of Management and Budget,*
908 F.3d 1165 (9th Cir. 2018) ........................................................................................ 19

*Kerr v. United States Dep't of State,*
305 F. Supp. 3d 1 (D.D.C. 2018),
*aff'd per curiam,*
2018 WL 7082139 (D.C. Cir., Dec. 28, 2018) .............................................................. 13

*Lujan vs. Defenders of Wildlife,*
504 U.S. 555 (1992) ........................................................................................................ 20

*New Hampshire v. Maine,*
532 U.S. 742 (2001) ........................................................................................................ 19

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
566 U.S. 639 (2012) ........................................................................................................ 28

*Settles v. U.S. Parole Comm'n,*
429 F.3d 1098 (D.C. Cir. 2005) ................................................................. 13

*Sierra Club vs. EPA,*
292 F.3d 895 (D.C. Cir. 2002) .................................................................. 20

*Silver vs. IRS.,*
case no. 19-cv-247 (APM) (D.D.C. 2019) ........................................... passim

*Smith v. United States,*
475 F. Supp. 2d 1, (D.D.C. 2006) ............................................................ 13

*South Carolina vs. Regan,*
465 U.S. 367 (1994) ................................................................................. 26

*Swanson Grp. Mfg. LLC v. Jewell,*
195 F. Supp. 3d 66 (D.D.C. 2016) ........................................................... 19

*Tozzi v. U.S. Dep't of Health & Human Servs.,*
271 F.3d 301 (D.C. Cir. 2001) ................................................................. 23

*U.S. v. Estate of Romani,*
523 U.S. 517 (1998) ................................................................................. 28

*West v. Lynch,*
845 F.3d 1228 (D.C. Cir. 2017) ............................................................... 24

*Z Street v. Koskinen,*
791 F.3d 24  (D.C. Cir. 2015) .................................................................. 26

**<u>Statutes</u>**

15 U.S.C. §632(a)(1) .................................................................................. 13
15 U.S.C. §632(a)(2) .................................................................................. 13
15 U.S.C. 632(a)(2) .................................................................................... 14
26 U.S.C. §7421(a) ..................................................................................... 25
44 U.S.C. § 3506 ........................................................................................ 10
44 U.S.C. §3507(d)(6) ............................................................................... 19
5 U.S.C. § 605(b) ......................................................................................... 8
5 U.S.C. § 611(a) .......................................................................................... 9
5 U.S.C. § 611(a)(4) ..................................................................................... 9
5 U.S.C. § 611(a)(5) ..................................................................................... 9
5 U.S.C. §601(3) ........................................................................................ 13
5 U.S.C. §603(a) ........................................................................................... 8
5 U.S.C. §604 ............................................................................................... 8
5 U.S.C. §611 ............................................................................................. 24
5 U.S.C. §706(2) ........................................................................................ 10
5. U.S.C. §601 ............................................................................................. 8

iv

## **Regulations**

13 C.F.R. § 121.201 ........................................................................................................... 13
13 C.F.R. 121.105(a) ......................................................................................................... 13

## **Legislative History**

Regulatory Flexibility Act Amendments, Committee on Small Business, H.R. REPT. NO. 104-49,
   Part 1, at 7 (Feb. 23, 1995) .......................................................................................... 9

Small Business Regulatory Enforcement Fairness Act, 142 CONG. REC. SENATE, No. 46 (daily ed.,
   Mar. 29, 1996) ....................................................................................................... 22, 28

## **SBA Cases**

*Mexican Intermodal Equipment,*
SBA No. 4182 (1996) ........................................................................................................ 16

*Size Appeal of B&A and Yutan Construction,*
SBA No. 105 (1964), *aff'd,* 44 COMP. GEN. 253, B-154756 (November 2, 1964) .......................... 16

*Size Appeal of Com-Tech Services,* Inc., SBA No. 4119 (1995) ........................................................ 17

*Size Appeal of Torgreen, Inc.,* SBA No. SIZ-4213 (1996) ........................................................ 15, 17

## **INTRODUCTION**

This case centers around Defendants' violation of three federal statutes—the Administrative Procedure Act (APA), the Regulatory Flexibility Act (RFA), and the Paperwork Reduction Act (PRA)—which establish procedural safeguards to protect small businesses from burdensome statutes and regulations aimed at large corporations.  Federal agencies must comply with these safeguards when they promulgate regulations.  The Tax Cuts and Jobs Act (TCJA), enacted in December 2017, created the GILTI tax (Global Intangible Low-Taxed Income), codified in Section 951A of the Internal Revenue Code ("Code").[1]  Defendants violated the above statutes when they issued proposed and final regulations that interpreted the GILTI tax provisions.

The Regulatory Flexibility Act ("RFA") is the primary statutory safeguard designed to protect small businesses from the overwhelming burdens imposed upon them by statutes and regulations

---

[1]    The following acronyms and short titles are employed throughout this brief:

| | |
|---|---|
| APA | Administrative Procedure Act, 5 U.S.C. §551 *et seq.* |
| AIA | Anti-injunction Act, 26 U.S. C. §7421 |
| Code | Internal Revenue Code, 26 U.S.C. |
| CFC | Controlled Foreign Corporation, as described in Code, Section 957 |
| Final Regulations | As issued on June 21, 2019, Treasury Decision 9866. |
| GILTI | Global Intangible Low-Taxed Income, as described in Code, Section 951A. |
| Proposed Regulations | Notice of Proposed Rulemaking for regulations for the Proposed Regulations for Guidance Related to Section 951A (Global Intangible Low-Taxed Income), 83 Fed. Reg. 51072 (Oct. 10, 2018) |
| PRA | Paperwork Reduction Act, 44 U.S.C. §3501 *et seq.* |
| RFA | Regulatory Flexibility Act, 5 U.S.C. §601 *et seq.* |
| Section 212 | Title II, Section 212 (Small Business Regulatory Enforcement Fairness Act of 1996) of Public L. 104-121 (Contract with America Advancement Act of 1996), codified as a Note to 5 U.S.C.A. §601 |
| TCJA | Tax Cut and Jobs Act, Pub. L. 115-97 (2017) |

1

designed for large corporations.[2]  Amongst other provisions, the RFA required Defendants to publish a regulatory flexibility analysis containing an in-depth analysis and description of any possible alternatives and exemptions that the regulations could employ to reduce the statutory and regulatory burdens imposed on small businesses.  Where an agency issues proposed or final regulation without complying with the RFA, the reviewing court is required by law to remand the regulation to the agency and provide other relief as it deems appropriate.

Defendants have moved to dismiss Plaintiffs' complaint, contending that the Court lacks subject matter jurisdiction over this action because (A) Plaintiffs are not "small entities" under the RFA, and (B) the PRA does not provide for a private cause of action, (C) Plaintiffs lack Article III standing; and (D) the Anti-Injunction Act ("AIA") prohibits the Court from hearing this case.

These arguments are without merit.  Defendants' "small business" argument fails for three reasons: (i) the Small Business Administration ("SBA") regulation relied on by Defendants has no relevance to this action;  (ii) their argument is based on a factual analysis that is not properly raised on motion to dismiss; and (iii)  both Plaintiffs are "small businesses" as they have firmly established in their summary judgement filings in *Silver vs. IRS.*, case no. 19-cv-247 (APM) (D.D.C. 2019).  ("*Silver I*"), ECF 61 at 6-8, 9-14.[3] With regard to the PRA Plaintiffs do not allege a cause of action under the PRA as such.  Rather Plaintiffs' complaint cites the failure to comply with the requirements of the PRA as grounds for relief.

Regarding Defendants' Article III standing contentions, these exact arguments were raised by Defendants and were broadly rejected by the *Silver I* court in denying Defendants' motion to dismiss

---

[2] The PRA also protects the interests of small business during the rulemaking process.  This action <u>does not</u> state a cause of action under the PRA but only seeks to have the PRA protections enforced as part of the remedy sought.

[3] All citations to the *Silver I* docket shall bear the format of "Silver I, ECF ___ ".

filed in that suit.  *Silver I*, ECF 29.  Specifically, the *Silver I* court found that Plaintiffs have "procedural standing" because they sought to enforce a procedural requirement the disregard of which impaired a concrete interest of the Plaintiffs.

Finally, regarding Defendants' AIA argument, the court in *Silver I*, rejected this exact argument and ruled that the AIA did not apply as *Silver I* was an administrative law case, not a tax case.  *Silver I*, ECF 29. Second, a unanimous Supreme Court and the D.C. Circuit Court of Appeals sitting *en banc* have ruled that the AIA does not apply where Plaintiffs have no alternative forum to pursue their claims.  Finally, RFA legislative history clearly states that the AIA applies to RFA cases only at the remedy stage.

For all the above reasons, the Court should deny the motion to dismiss.

## **BACKGROUND**

### **A.  <u>The statutes protecting small business during the rulemaking process.</u>**

Congress has enacted three different statutes governing the procedures agencies must follow in promulgating regulations, which focus upon protecting the interests of small business in those regulations—the RFA, the PRA, and the APA.  Defendants have violated all three statutes in promulgating the challenged regulations.

### <u>**Regulatory Flexibility Act (RFA)**</u>

The principal legislation dealing with the protection of small business during regulation development is the RFA.  In enacting the RFA in 1980, Congress codified its goal of protecting small business from unduly burdensome regulations, stating that:

(i)    regulations designed for large entities get applied uniformly to small businesses even if the problems that gave rise to government action are not caused by smaller entities,

(ii)   uniform regulatory and reporting requirements impose unnecessary and disproportionately burdens on small businesses,

3

(iii)    the practice of treating all businesses as equivalent may lead to inefficient use of regulatory resources, and

(iv)    alternative approaches may be available which minimize the significant economic impact on small businesses.

5. U.S.C. §601.

Defendants are required to prepare and make available for public comment an initial regulatory flexibility analysis at the time they publish a notice of proposed rulemaking for an interpretative rule involving the internal revenue laws of the United States. 5 U.S.C. §603(a). Among the issues the analysis must discuss with regard to small businesses are:

(1)    the establishment of differing compliance or reporting requirements that take into account the resources available to small businesses,

(2)    the simplification of compliance and reporting requirements for small businesses, and

(3)    an exemption for small businesses.

In addition, when issuing a final interpretive rule involving the internal revenue laws of the United States, Defendants are required to prepare a final regulatory flexibility analysis. That analysis must include a description of the steps that the agency

has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected.

5 U.S.C. §604. Defendants may avoid these requirements only if the head of the agency "certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. § 605(b). If the agency head so certifies, the agency must publish the certification, "along with a statement providing the factual basis for such certification." *Id.*

"Simple boilerplate statements that the rule will not have such an effect are patently inadequate under the RFA. Rather, sufficient analysis must be performed to apprise the regulated community of the reasons for the certification. Moreover, any doubt as to whether a regulatory flexibility analysis

4

should be performed must be resolved in favor of performing the analysis." Regulatory Flexibility Act Amendments, Committee on Small Business, H.R. REPT. NO. 104-49, Part 1, at 7 (Feb. 23, 1995) ("House Report").[4]

Section 212 (as defined above) requires the Defendants to publish guides to assist small entities in complying with the promulgated rule.

The RFA includes a procedure for judicial review of agency compliance with Section 605(b) certifications. Any "small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency compliance with the requirements of sections 601, 604, 605(b), . . . and 610 in accordance with [the APA]." 5 U.S.C. § 611(a). In granting relief under the RFA, a court **shall** order the agency to take corrective action including, but not limited to, remanding the rule to the agency and deferring the enforcement of the rule against small entities. 5 U.S.C. § 611(a)(4) (emphasis added). "Nothing in this subsection shall be construed to limit the authority of any court to stay the effective date of any rule or provision thereof **under any other provision of law or to grant any other relief in addition to the requirements of this section**." 5 U.S.C. § 611(a)(5) (emphasis added).

**The Paperwork Reduction Act ("PRA")**

The PRA imposes its own requirements upon agencies issuing regulations to protect the concerns of small business and requires that agencies certify (and provide a supporting factual record) that a regulation's requirements reduce the compliance burdens on small business by:

> (C)     reducing to the extent practical and appropriate the burden on persons who need comply by using such techniques as—
> (i)      establishing differing compliance or reporting requirements or timetables that take into account the resources available to those who are to respond,

---

[4] The SBA has provided Defendants the detailed processes they should engage in prior to certification. *How to Comply with the Regulatory Flexibility Act*, https://cdn.advocacy.sba.gov/wp-content/uploads/2019/06/21110349/How-to-Comply-with-the-RFA., pp. 11-30.

(ii)     the clarification, consolidation, or simplification of compliance and reporting requirements, or

(iii)    an exemption from coverage of the collection of information, or any part thereof,

(D)    [and ensuring that the regulation] is written using plain, coherent, and unambiguous terminology and is understandable to those who are to respond.

44 U.S.C. § 3506.   The agency's analysis must be publicly disclosed.

### The Administrative Procedure Act (APA)

The APA provides for judicial review of new regulations and authorizes reviewing courts to—

(2)   hold unlawful and set aside agency action, findings, and conclusions found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (D) without observance of procedure required by law; … .

5 U.S.C. §706(2).

## B.  The disputed tax statutes and regulations.

Prior to the TCJA, large U.S. corporations such as Google and Apple were not subject to United States taxation on the earnings of their foreign subsidiaries (Controlled Foreign Corporations, or "CFCs") until the earnings were repatriated to the United States parent company.  Using sophisticated tax-planning techniques, U.S. multinational corporations shifted huge amounts of income to their CFCs located in low tax jurisdictions, thereby indefinitely deferring U.S. taxation of the income.

The GILTI tax, codified at Code Section 951A, changed this.  From 2018 forward, each year, shareholders of these CFCs - i.e. the U.S. parent corporations – are required to include as their income all profits of their CFCs.   Unfortunately, the GILTI tax did not distinguish between corporate shareholders like Google, Inc. and Apple Inc, on the one hand, and individual shareholders who own even the smallest businesses which operate via foreign companies.  To make matters worse, individual shareholders were not entitled to a wide variety of deductions and foreign tax credits that Google and Apple receive automatically.  As a result, absent very complex and expensive tax planning, individual shareholders of these CFCs (such as Silver) were by definition subject to business-threatening double

taxation on the same income, while Google and Apple were not.  In addition, small business owners were and remain subject to significant annual GILTI compliance costs, which they and their tax professionals (often one-person firms themselves) cannot even begin to comprehend.

Shortly after the TCJA became law, Silver realized that GILTI imposed a devastating blow to his small business and the business of many others.  Starting in March 2018, Silver requested small business owners around the world to contact Defendants' senior officials and advise them of the problem.  Hundreds of small businesses responded and emailed Defendants.  See *Silver I* administrative record, attached here as **Exhibit A**.

On October 10, 2018, Defendants issued a notice of proposed rulemaking implementing Code Section 951A (the "Proposed Regulation").  The Proposed Regulation was deemed a significant regulatory action.  The Proposed Regulation contained 157 pages of highly complex corporate tax matters that Silver, a U.S. tax attorney, could not and cannot understand until this day.  The Proposed Regulation did not contain an Initial Regulatory Flexibility Analysis.  Instead, the Proposed Regulation avoided that statutory requirement by having Defendant Secretary Mnuchin issue an unsubstantiated RFA 605(b) certification that the Proposed Regulations would not have "a significant economic impact on a substantial number of small entities."[5]

On June 21, 2019, the Defendants issued the Final Regulation - 318 pages of highly complex corporate tax matters.  Silver, a U.S. tax attorney, did not and cannot understand the document until this day. The Final Regulation was deemed a significant regulatory action. The Final Regulation did not contain a final regulatory flexibility analysis.  Rather, once again Defendants issued an unsubstantiated RFA 605(b) certification.

---

[5] When Silver first brought up the RFA with Defendants, the senior Treasury official responsible for both the Transition and GILTI regulations admitted that his experts concluded that the RFA did not apply for a variety of reasons. *See* **Exhibit B** attached hereto.

The fact that Defendants circumvented the RFA is not surprising.  A recent report by the General Accountability Office found that Defendants complied with the RFA with respect to only two of the over 200 tax regulations issued between 2013 and 2015.[6]

## FACTS

Silver is a United States citizen residing in Israel.  He studied, lived and practiced law in the United States until moving to Israel in 1997.  (Complaint ¶4).   Monte Silver LTD ("Limited") is an Israeli corporation and is treated as a corporation for U.S. tax purposes.  Silver is and has always been the sole shareholder of Limited. (Complaint ¶5).   Under U.S. tax law, Limited is a CFC and Silver is a U.S. Shareholder, subjecting them to the GILTI and the Proposed and Final Regulations.  Silver and Limited are small businesses for purposes of the RFA.  (Complaint ¶5-7).

Plaintiffs filed their 2018 tax returns to the best of their ability, given the complexity of the GILTI statute and the utter impenetrability of the Proposed and Final Regulations.  Plaintiffs have recently filed an amended 2019 tax return to primarily address GILTI-related matters, as well as address a minor "address" issue raised by Defendants.  As a matter of law, Silver Ltd. cannot owe any GILTI taxes as the tax only applies to the U.S. shareholder.  In addition, due to highly complex tax planning, Silver did not owe any GILTI tax in 2018, nor will he owe any GILTI tax in 2019.  However, Plaintiffs have incurred and will continue to incur on-going compliance costs relating to GILTI into the future even though they owe no GILTI tax. (Silver Decl. ¶12).  Plaintiffs are not the subject of any audit, enforcement, or collection effort by the Defendants with regard to the tax or any other matter relating to the 2018 tax year. (Silver Decl. ¶13).

---

[6]  "Regulatory Guidance Processes:   Treasury and OMB Need to Reevaluate Long-standing Exemptions of Tax Regulations and Guidance" (GAO Report 16-720, September 2016) at 22 attached hereto as **Exhibit C**.

## STANDARD OF REVIEW

"At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005).  "At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts."  *Smith v. United States*, 475 F. Supp. 2d 1, 7 (D.D.C. 2006)(citations omitted).  *And see Kerr v. United States Dep't of State*, 305 F. Supp. 3d 1, 3 (D.D.C. 2018), *aff'd per curiam,*  2018 WL 7082139 (D.C. Cir., Dec. 28, 2018).

## ARGUMENT

I.      **The Court has jurisdiction under the RFA and may provide relief under the PRA.**

  A.  **Regulation 13 C.F.R. 121.105(a) ("SBA Regulation") does not apply to RFA cases.**

To restate the arguments set forth in Plaintiffs' summary judgement filings in *Silver I*, the SBA regulation, relied upon by Defendants, does not apply here.

The RFA clearly states that the term "small business" has the same meaning as the term "small business concern" under section 3 of the Small Business Act.  5 U.S.C. §601(3).  Section 3 of the Small Business Act defines "small business concern" as a business that (A) is independently owned and not dominant in its field (15 U.S.C. §632(a)(1)), and (B) meets certain "detailed definitions or standards" related to size requirements (15 U.S.C. §632(a)(2)).  Indeed, the Small Business Administration has established highly detailed size standards based on the North American Industry Classification System (NAICS).[7]

---

[7] The SBA's "size standards" are set forth in 13 C.F.R. § 121.201. See Electronic Code of Federal Regulations, Part 121-Small Business Size Regulations, (August 19, 2019). https://www.sba.gov/document/support--table-size-standards

Under Section 3 of the SBA, the Small Business Administration has very limited authority to further limit what constitutes a small business. 15 U.S.C. 632(a)(2) specifically limits this authority to issues of business size:

> **(2) Establishment of size standards**
> (A) In general: The Administrator may specify **detailed definitions or standards** by which a business concern may be determined to be a small business concern for the purposes of this chapter or any other Act.
> (B) Additional criteria: The standards described in paragraph (1) may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors.

(Emphasis Added).

First, regulation §121.105(a) which Defendants rely on is unrelated to size. Second, the entire paragraph is one sentence long, clearly not arising to the level of the requisite "detailed definition or standard." Thus, this regulation does not and cannot qualify under Section 3 of the SBA. Accordingly, it falls outside the definition of small business for purposes of the RFA.

The RFA cannot be read so narrowly such that a one-sentence SBA regulation unrelated to size has the impact of preventing a vast large number of American citizens, taxpayers and small business owners from seeking relief under the RFA.[8] Such narrow interpretation would allow the Small Business Administration (possibly under pressure from Defendants) to issue regulations which drastically narrow the term "small business," thus rendering the entire RFA ineffective and frustrating an important public policy established by Congress.

Second, by its clear terms, this regulation only deals with businesses who seek to enjoy certain SBA assistance, a fact which Defendants' Brief conveniently failed to state.

> (1) Except for small agricultural cooperatives, <u>a business concern eligible for assistance from SBA</u> as a small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.

---

[8] Data indicates that a majority of 200,000 small businesses would be denied RFA standing because of this one-sentence provision. See amicus brief filed by Republicans Overseas in *Silver I*. *Silver I*, ECF 56. *See* detailed survey conducted by Democrats Abroad attached hereto as **Exhibit D**.

(Emphasis added).

Very few cases have dealt with this regulation.  Those that do all arise in the context of eligibility of small businesses for set aside tenders.[9]

"It is clear the regulatory requirement is intended to prevent foreign-based firms, which do not contribute to the U.S. economy, from taking advantage of the U.S. government's small business programs." *Size Appeal of Torgreen, Inc.,* SBA No. SIZ-4213, at 3 (1996).

The congressional goal of the RFA and PRA is to protect small businesses from burdensome laws and regulations.  The limited goal of the SBA regulation is to prevent foreign businesses who do not contribute to the U.S. economy from enjoying SBA set-aside programs.   For the two reasons set forth above, the SBA regulation is not relevant to RFA analysis.

In their RFA certifications, Defendants propose a different interpretation to the one-sentence SBA regulation, and one which runs counter to the same SBA regulation they quote.  "Treasury and the IRS explained that U.S. citizens living abroad do not qualify as small business entities, so the regulations would not affect a small entity in the scenario described in the comment."  ECF 9-1 at 8, footnote 8.[10]  As we now demonstrate, Defendants' legal interpretation is wrong.

First, the same SBA regulation cited by Defendants expressly contradicts their statement that "neither Monte Silver – an individual – nor Silver Limited – a foreign entity- qualifies as a "small entity" under the RFA." 9-1 at 1.  Both individuals and foreign entities clearly qualify under the Regulation § 121.105 (b) which states that "a business concern may be in the legal form of an

---

[9] These cases were all heard by the United States Small Business Administration, Office of Hearings and Appeals (SBA).

[10] Defendants' certification in *Silver I* was even more extreme.  "Although the Treasury Department and the IRS received a number of comments asserting that a substantial number of small entities would be affected by the proposed regulations, those comments were principally concerned with U.S. citizens living abroad that owned foreign corporations directly or indirectly through other foreign entities. No small entity is affected in this scenario," attached hereto as **Exhibit E**.

individual proprietorship, partnership, limited liability company, corporation, joint venture, association, trust or cooperative, except that where the form is a joint venture there can be no more than 49 percent participation by foreign business entities in the joint venture."

Furthermore, the SBA has long recognized that § 121.105 does not bar foreign businesses from being a small business under the SBA. *Mexican Intermodal Equipment*, SBA No. 4182 (1996) (Mexican company); *Size Appeal of B&A and Yutan Construction* No. 105 (1964), *aff'd*, 44 COMP. GEN. 253, B-154756 (November 2, 1964) (Canadian company); *Torgreen, supra*.

Defendants' baseless interpretation of the SBA regulation has led it to callously ignore the pleas of a vast number of small businesses.[11]

Second, now Defendants' seek to use this interpretation to rob a vast number of such businesses of standing, thus utterly frustrating the RFA.  Third, it runs counter to express congressional history that "any doubt as to whether a regulatory flexibility analysis should be performed must be resolved in favor of performing the analysis." *See* House Report, *supra*.   Finally, it results in an unreasonable outcome whereby one medium size U.S.-based business would have standing, while a vast number of tiny businesses of American citizens and taxpayers living abroad who are harmed by Defendants' RFA violation would not.

Here, Plaintiffs seek no economic benefit or assistance from the SBA.  Silver is a U.S. citizen and taxpayer and Silver Ltd. is the small business he operates to support his family.  They simply seek to be protected under the RFA.  Thus, Plaintiffs request that the Court either specifically find that 13 CFR 121.05 is not relevant to this case, or postpone addressing this issue at this juncture, especially since the pending *Silver I* summary judgment motion addresses this exact matter.

---

[11] The harmful consequences to small businesses of Defendants ignoring the RFA are discussed in depth in the amicus brief written by the Harvard Law School Federal Tax Clinic for behalf of the Center for Taxpayer Rights in *Silver I*.  *Silver I*, ECF 49.

B. **Even if the SBA regulation does apply, Plaintiffs are small businesses under the SBA regulations**

For argument's sake, the following discussion assumes that the SBA regulation applies to this case.  As is clear from the Defendants' moving papers, addressing this issue involves factual analysis, something which cannot be done in a motion to dismiss.  However, in any case, the regulation is of no avail to Defendants.  As we now demonstrate, Plaintiffs Silver and Limited satisfy the SBA regulation.

**"Place of business" and "contribution" requirements.**

These issues have been addressed by the SBA very seldomly and always in the context of a challenge to a set-aside tender. Even then, the SBA has liberally interpreted the terms "Place of Business" and "Contribution," so that they impose virtually no requirements at all.

As to the place of business requirement, the few SBA cases addressing this issue have required only that the place of business be one be where "a firm either offers for sale or performs the services which it sells, and which the public knows as the firm's place of business." *Torgreen, supra* at 2, *citing Size Appeal of Com-Tech Services,* Inc., No. 4119 (1995).

Essentially, to fulfill this requirement all that is required is that a business offer to sell services at the location, and that the public know the location to be the firm's place of business.  The actual sale or performance of services is not even required.

The contribution element is discussed in *Torgreen* which involved a company that had been in existence for three years but had never entered into a contract and had no revenue.  "It also is clear that Congress intended small business set asides to benefit small businesses, including foreign owned small businesses with places in the U.S. which also <u>contribute</u> to the U.S. economy." *Torgreen* at 3. (Emphasis added).   As a result, the SBA ruled that "its intention to contribute to the U.S. economy" was sufficient to qualify under the regulation. *Id.*

13

**Plaintiffs' years of US-based business activities**

As stated in *Silver I*, ECF 61 at 9-14, and in Silver's detailed declarations attached both in support of this Opposition and *Silver I* ECF 61, it is clear that Plaintiffs both easily satisfy the above criteria and are small businesses under the RFA.

Defendants are aware of Plaintiffs' U.S.-based activity set forth above. Yet in their motion to dismiss they ignore reality. Instead, Defendants rely on the most tangential evidence to support their claim.

1. Defendants claim that the California Secretary of State has no registration for Silver Ltd. ECF 91-1 at 10. Plaintiffs are unaware of any obligation to register with the California Secretary of State. In fact, qualification to do business under California state law has no bearing on Plaintiffs' small business status for purposes of the RFA and APA. On the other hand, Silver Ltd. has registered with Defendants and received a federal tax ID number. In fact, Defendants mailed this document to Plaintiffs' to their US place of business. **Exhibit F** attached hereto.

2. Defendants claim that Plaintiffs did not correctly fill out a certain box (e.g., the address box of the office) in Form 5471 in their 2017 tax return. ECF 9-1 at 10. If this is so, it is solely due to the fact that this form is very complex, has many highly detailed schedules, and is wholly unsuitable for a small business owner. In addition, GILTI commenced in 2018. Thus, the fact that Plaintiffs left a box "conspicuously blank" in their 2017 tax return is irrelevant. In any case, Plaintiffs have amended their 2018 return at additional expense to address GILTI related matters and as well as the above issue. (Silver Decl. ¶12).

Accordingly, Defendants have failed to demonstrate that Plaintiffs are not small businesses even under the SBA regulation. Worse, Defendants have intentionally ignored the information regarding Plaintiffs that clearly established them as small businesses under the SBA regulation.

C. **Only limited claims are barred under the Paperwork Reduction Act. In any case, the Complaint does not state a cause of action under the PRA.**

As in *Silver I*, Plaintiffs' Complaint does not purport to state a cause of action under the PRA.[12] However, as the court has ruled in *Silver I*, there is nothing in the PRA that prevents the court from providing relief requiring Defendants' to comply with the provisions of the PRA designed to protect Plaintiffs and other small businesses.  This is especially so when Defendants so blatantly violated the law, and even failed to provide the certification required under the PRA.[13]

## II.   **Article III Standing**

### A. **Plaintiffs Have Procedural Standing, as conclusively determined in Silver I.[14]**

The court in *Silver I* addressed the exact same standing argument in Defendants' motion to dismiss in that case.  The court adopted Plaintiffs' arguments (*Silver I*, ECF 23 at 11-2) and broadly rejected Defendants' position.

> Here, Plaintiffs allege what is known as a "procedural injury," that is, an injury resulting from the violation of a procedural right created by statute. *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005). In such cases, the redressability and imminence requirements of standing are relaxed. *See*

---

[12] Defendants wrongly state that "Congress had barred this sort of action." The actions explicitly barred by Congress are limited to those brought against the OMB for the approval or disapproval of agency requests to conduct collection of information. 44 U.S.C. §3507(d)(6). *Hyatt v. Office of Management and Budget,* 908 F.3d 1165, 1171 (9th Cir. 2018).

[13] In this case, the certification of the administrative record provided by Defendants does not contain a single item related to the PRA (or RFA).  ECF 8-2.  Though required to do so under the PRA, neither the proposed regulations nor the final regulations even provide the basic PRA certification.  ECF 8-2. In *Silver I*, the complete administrative record eventually provided by Defendants failed to contain a <u>single record</u> that showed that Defendants even considered doing any analysis whatsoever under the PRA or RFA.  *Silver I*, ECF 47-1 at 14; Silver I, ECF 61 at 2.  The Court is requested to take judicial notice of other instances of process abuse. *See Silver I*, ECF 59 Attachment 1.

[14] This exact jurisdictional issue has been contested between the parties and decided upon in a valid court determination in *Silver I*.  Thus, Defendants are precluded from raising this issue in this case. *Swanson Grp. Mfg. LLC v. Jewell*, 195 F. Supp. 3d 66, 72 (D.D.C. 2016) *quoting New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001).

> *Wildearth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013). The plaintiff
> need not show that "but for the alleged procedural deficiency the agency would
> have reached a different substantive result." *Id.* at 306. Rather, she need only
> establish that the agency violated a procedural right designed to protect her
> interests, and that it is plausible "'that the procedural breach will cause the essential
> injury to the plaintiff's own interest.'" *Ctr. for Law & Educ.*, 396 F.3d at 1159
> (quoting *Fl. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664–65 (D.C. Cir. 1996) (en
> banc)). In other words, "the requirement of injury in fact is a hard floor of Article
> III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*,
> 555 U.S. 488, 497 (2009). "A procedural injury claim therefore must be tethered to
> some concrete interest adversely affected by the procedural deprivation…"
> *WildEarth Guardians*, 738 F.3d at 305.

*Silver I*, ECF 29 at 2-3.

Accordingly, in *Silver I*, the court rejected "Defendants' assertion that Plaintiffs lack standing

to advance their claims." *Id.*

> In many if not most cases the petitioner's standing to seek review of administrative
> action is self-evident; no evidence outside the administrative record is necessary for
> the court to be sure of it. In particular, if the complainant is an object of the action
> (or forgone action) at issue— as is the case usually in review of a rulemaking and
> nearly always in review of an adjudication — there should be "little question that
> the action or inaction has caused him injury, and that a judgment preventing or
> requiring the action will redress it." *Sierra Club vs. EPA*, 292 F.3d 895, 899 (D.C.
> Cir. 2002), citing *Lujan vs. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)
> (internal quotations omitted).

In this case it is undisputed that the violation of the RFA involved a substantive government

action, namely the publication of proposed and final regulations. In fact, these regulations were

designated as a significant regulatory action.

Also, concrete interests of Plaintiffs were adversely affected by the procedural deprivation.

Here, Defendants' compliance with the RFA could and should have resulted in the reduction of

burdens imposed upon Plaintiffs and small businesses.  For example, Defendants could have

exempted small businesses from GILTI, or at least published guides written in simple English that

small businesses owners and their tax professionals could have understood.[15]   This could have reduced or eliminated compliance costs for small businesses.   However, instead of doing so, Defendants issued regulations which neither small businesses nor their tax professionals could understand.   This directly injured Plaintiffs in the form of increased compliance costs.   In other words, there is a direct connection between (1) Defendants violations of the RFA and the PRA and (2) higher compliance costs and other burdens that Plaintiffs incurred and will continue to incur. (Silver Decl. ¶12).

**B.  Traceability**

Defendants seek to obscure their failure to comply with the RFA by stating that the injury was caused by the statute and not by the procedural violation: "Taking all of Plaintiffs' allegations as true at this stage, it is clear that the burdens of which they complain are statutory. Most of their allegations *exclusively* mention the GILTI statute." ECF 9-1 at 15.

This argument must fail for several reasons.

First, in *Silver I*, the court rejected this argument outright:

> Notwithstanding Plaintiffs' straightforward injury and the relaxed redressability standard, Defendants still dispute standing on the element of causation. They assert that Plaintiffs' quarrel is with the TCJA rather than the regulations, and thus any alleged injury stems from the TCJA itself and not the agencies' newly adopted regulations.   But this argument fundamentally misconstrues Plaintiffs' claims. Plaintiffs are not challenging any specific regulation that might or might not be traceable directly to the TCJA. Rather, Plaintiffs allege that the agencies neglected to undertake procedural measures designed to protect small business from the burden of unwieldy and cost-intensive regulations—namely, the publishing of an initial and a final regulatory flexibility analysis, 5 U.S.C. §§ 601, 603(a), and a certification that the regulation has reduced compliance burdens on small businesses, 44 U.S.C. § 3506. Plaintiffs' alleged injuries are therefore traceable to Defendants' alleged violation of these separate statutory requirements, not the TCJA. Causation is easily satisfied. [Emphasis added].

---

[15] Defendants strenuously object to the fact that they had any obligation to produce such guides.  ECF 9-1 at 8, footnote 7.

*Silver I*, ECF 29 at 3-4.

Second, Defendants' traceability argument would directly and forever insulate them from the RFA.  The Small Business Regulatory Enforcement Fairness Act of 1996 (SBREF) amended the RFA to accomplish two main goals: (i) added Defendants' **interpretive regulations** to the scope of the RFA, and (ii) provided for judicial review.  Thus, by its explicit terms, the RFA only applies to interpretive regulations issued by Defendants, as is the case here.  In other words, in any RFA case involving Defendants, there will <u>always be</u> an overriding statute by definition.  5 U.S.C. §§603- 604.  Therefore, Defendants' "traceability" argument would always rob small businesses of standing and thus defeat the carefully crafted act of Congress.

Third, the legislative history is likewise clear. The goal of the RFA is to provide Defendants with tools to minimize the compliance costs small businesses suffer as a result of burdensome statutes and regulations.  "Most IRS interpretive rules involve some aspect of defining or establishing requirements for compliance with the Code, or otherwise require small entities to maintain records to comply with the Code.  One of the primary purposes of the RFA is to reduce the compliance burdens on small entities whenever possible under the statute."  Small Business Regulatory Enforcement Fairness Act, 142 Cong. Rec. Senate, No. 46 at S3245 (daily ed., Mar. 29, 1996).

Next, Defendants try to distinguish the procedural violation that was held to constitute injury in *Silver I* from that alleged here.  This is ludicrous.  The Transition Tax and GILTI are twin taxes.  Both impose taxation on the shareholder for profits of the CFC.  The Transition Tax was a one-time tax that was imposed on a CFC's post-1986 accumulated profits that existed as of December 2017.  GILTI applied and applies on annual profits of the CFC starting January 1, 2018.  In fact, as Silver stated in his comment submitted to Defendants as part of the comment phase, GILTI is by far more harmful than the Transition Tax for several reasons.  *See* **<u>Exhibit G</u>** attached hereto. (i) GILTI

involves an ongoing annual obligation; (ii) GILTI applies from the first dollar of profit each year; and (iii) GILTI involves many different highly complex definitions, far more than did the Transition Tax.[16] Furthermore, given the fact that the only way to avoid double taxation is by making highly technical elections, Silver and small businesses will have high compliance costs long into the future even if they did not end up owing any GILTI tax. *Silver I*, ECF 61 at 4-6.

Additionally, had Defendants' failure to comply with Section 212 (as defined above) is directly linked to Plaintiffs' compliance costs, as described above.

Despite Defendants' spending two pages trying to muddy the waters, the sole issue is whether there is a connection between Defendants' violations and the harm caused Plaintiffs.  As explained above, the answer is unequivocally yes.

## C.   Plaintiffs have standing even under the case law cited by Defendants.

As was the case in *Silver I*, here too Defendants ignored the issue of procedural standing and relied solely on non-procedural standing precedents.  Generally, to establish Article III standing under the U.S. Constitution, a party generally must show "(1) that the party suffered an injury in fact (2) that the injury is fairly traceable to the challenged action of the defendant and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.". *Grocery Mfrs. Ass'n v. Envtl. Prot. Agency*, 693 F.3d 169, 174 (D.C. Cir. 2012).  Here, Plaintiffs easily satisfy all three requirements.

In evaluating the "injury-in-fact" requirement, courts ask simply whether the plaintiff has

---

[16] The following are the definitions that Defendants have listed in their motion to dismiss: qualified business asset investment or QBAI, pro-rata share of the aggregate profit, CFC tangible assets, net CFC tested income, net deemed tangible income return, tested income, tested loss.  Other unique GILTI terms required to understand in order to comply with GILTI include "interest expense taken into account under subsection (c)(2)(A)(ii) and specified tangible property.  Finally, to fully comply with GILTI, a taxpayer must understand highly complex foreign tax credit and accounting issues, baskets of income, Code 78 dividend gross up, and various elections available under Code sections 962 and 954, including the many subtle complexities involved in making such elections.

"asserted a present or expected injury that is legally cognizable and non-negligible." *Huddy v. FCC*, 236 F.3d 720, 722 (D.C. Cir. 2001). Economic harms sufficient to establish an injury-in-fact include compliance costs. *Tozzi v. U.S. Dep't of Health & Human Servs*., 271 F.3d 301, 308 (D.C. Cir. 2001); *Am. Farm Bureau Fed'n v. EPA*, 792 F.3d 281, 293 (3d Cir. 2015) (compliance costs are a "classic injury- in-fact" for standing purposes). Indeed, a single dollar of economic harm suffices to prove injury-in-fact for standing purposes. *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017). Here, Plaintiffs have alleged that they have suffered and will continue to suffer injury through concrete additional compliance costs due to the statute and regulations. (Silver Decl. ¶12).

Plaintiffs also satisfy the traceability requirement because their injury is a direct result of the choices made by Defendants in promulgating the Regulations. For example, had Defendants complied with their statutory obligations to consider alternatives to their encyclopedic set of rules, small businesses may not have faced the same burdens. Simple guides could and should have been written to assist small businesses comply with GILTI at nominal expense, without the need for guesswork and future amended returns.

Finally, Plaintiffs satisfy the redressability requirement. "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (citation omitted).

Here, the RFA specifically states that the court <u>shall</u> provide specific relief if it finds that Defendants failed to comply with the RFA. In addition, the RFA states that nothing "shall be construed to limit the authority of any court to stay the effective date of any rule or provision thereof under any other provision of law or to grant any other relief in addition to the requirements of this section." 5 U.S.C. §611. Requiring the Defendants to comply with the RFA and PRA will likely alleviate some or all of the injuries suffered by small businesses.

### III.    The Anti-Injunction Act (AIA) does not bar this action.

The AIA does not apply in this case for a variety of reasons.

### A.    The inapplicability of the AIA to this action was determined conclusively in *Silver I.*   This is not a case involving tax collection or tax revenues. [17]

"The Anti-Injunction Act bars judicial review of lawsuits filed "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a)." *Silver I*, 29 at 4. "But, as the D.C. Circuit has explained, the Act does not bar any and all lawsuits that might ultimately impact the amount of revenue in the U.S. treasury." *Id.*, citing *Cohen v. United States*, 650 F.3d 717, 726 (D.C. Cir. 2011), citing *Hibbs v. Winn*, 542 U.S. 88, 102 (2004)).   *Silver I*, ECF 29 at 5. "Rather, the Circuit has instructed that whether the Anti-Injunction Act prohibits a suit depends on  whether the action is fundamentally a "tax collection claim," …which the court must determine based upon "a careful inquiry into the remedy sought, the statutory basis for that remedy, and any implication the remedy may have on assessment and collection." *Id.,* at 6.

This case is identical to *Silver I*.   As in *Silver I*, "Plaintiffs do not seek a refund or to impede revenue collection.   Instead, they challenge the IRS's adopting of regulations without conducting statutorily mandated reviews designed to lessen the regulatory burden on small businesses. For relief, they ask the Court simply to compel the agencies to do what the law requires—Regulatory Flexibility Act and Paperwork Reduction Act analyses. Tax revenues and their collection are unaffected by such relief. The Anti-Injunction Act therefore presents no barrier to Plaintiffs' claims. *Id.* at 6.[18]

---

[17] Defendants are precluded from raising this issue in this case.  See footnote 14. The Anti-Injunction Act and the Declaratory Judgment Act are "coterminous." *Cohen v. United States*, 650 F.3d 717, 730–31 (D.C. Cir. 2011) (*en banc*).

[18] In Silver *I*, Defendants estimated that 100,000 US-based respondents would have to comply with

**B.  The AIA does not apply where, as here, its application would leave an aggrieved taxpayer without an alternative forum in which to pursue its claims.**

A unanimous Supreme Court and the D.C. Circuit sitting *en banc* have held that the AIA does not apply where the Plaintiff has no alternative forum in which to pursue its claims.  In the leading case of *South Carolina vs. Regan,* 465 U.S. 367 (1994), a federal tax statute limited the tax-free status of bonds issued by the state and made it practically impossible for South Carolina to sell its bonds to investors.[19]  South Carolina brought suit and sought an injunction against enforcement of the federal tax law.  Defendants sought dismissal based upon the AIA.

Rejecting Defendants' AIA argument, the Supreme Court concluded that "the Anti-Injunction Act's purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." *South Carolina,* at 378.

More recently, the D.C. Circuit, sitting *en banc* in *Cohen v. United States,* 650 F. 3d. 717 (D.C. Cir. 2011), followed the *South Carolina* decision.  The AIA "was intended to apply only when Congress has provided an alternative avenue for an aggrieved party to litigate its claims on its own behalf."  *Cohen* at 732, quoting *South Carolina* at 381.   This line of authority was further expanded in *Z Street v. Koskinen*, 791 F.3d 24, 26-27 (D.C. Cir. 2015).

In our case, application of the AIA would leave Plaintiffs with no alternative forum.  Defendants claim that "Plaintiffs must wait to raise their challenge once the regulation has been applied

_____

the Transition Tax regulations.  (This number excluded the approximately 200,000 non-US based small businesses).  According to its recent data, the IRS found that just over 3,000 companies paid any Transition Tax at all.  In fact, 528 companies, each with assets valued at over $2.5 billion, paid 95% of all Transition Tax generated. *See* **Exhibit H** attached hereto.  The other responders, approximately 247,000 of them, owed no tax but incurred compliance costs.  This case is not about taxes or tax revenue!

[19]     If questions existed regarding whether earnings on the bonds would be tax free, investors would avoid the bonds and the state would be unable to raise money by issuing bonds.

to them and has resulted in a tax liability that Plaintiffs dispute. Then Plaintiffs may challenge the regulation in the context of a Tax Court deficiency proceeding or a refund suit in federal district court or the Court of Federal Claims." ECF 9-1 at 2. However, Silver Ltd. owes no GILTI tax as a matter of law, because the tax is only imposed on the shareholder.  Furthermore, Silver does not owe any GILTI tax. (Silver Decl. ¶12). Thus, no such venue can exist by definition.  Defendants made the identical argument in *Silver I* but never identified any such venue, as they cannot.

Furthermore, the one-year statute of limitation available under the RFA expired one year after the publication of the final GILTI regulations – *i.e.* June 21, 2020.

Defendants look to *Florida Bankers, Bob Jones*, *Enochs* and *Maze* to support their AIA argument.  However, all four cases involved situations where the courts specifically found that Plaintiffs had an alternative forum.

> To be clear, our ruling does not prevent a bank from obtaining judicial review of the challenged regulation. A bank may decline to submit a required report, pay the penalty, and then sue for a refund. At that time, a court may consider the legality of the regulation. The issue here is when —not if —the bank may challenge the regulation.

*Florida Bankers Ass'n v. U.S. Dep't of Treasury,* 799 F.3d 1065, 1067 (D.C. Cir. 2015).

Second, as Defendants correctly note, *Florida Bankers* involved an attempt to invalidate a tax-related regulation. From the outset, the banking industry's complaint sought only one remedy:  to invalidate the regulation. Furthermore, in *Florida Bankers* there was no overriding statute establishing liability.  "If plaintiffs' challenge were successful, the IRS would be unable to assess or collect that tax for failure to comply with the reporting requirement. Invalidating the reporting requirement would necessarily "restrain" the assessment and collection of the tax. This we cannot do." *Id.*

In this case, by contrast, GILTI liability is established by statute and all taxpayers are liable for GILTI by statute in any case.  Also, Plaintiffs seek no invalidation of any regulation, only the remand for compliance with the RFA and PRA.

Finally, as in *Silver I*, Defendants claim that the regulations are required to "assist taxpayers in

determining the self-reporting of amounts subject to GILTI … Self-reporting per se culminates in assessment of tax. Indeed, it is the foundation of our system of taxation". ECF 9-1 at 24. This argument makes no sense. Plaintiffs brought this suit because the regulations might as well have been written in hieroglyphics for all that Silver is concerned. Furthermore, had Defendants' interest in assisting taxpayers to self-report been genuine, they would not have so strenuously objected to publishing guides for small businesses. ECF 9-1 at 8, footnote 7. *Silver I*, ECF 61 at 20.

## C. <u>Congress has made clear that in RFA cases, the AIA is only to be addressed at the remedy stage.</u>[20]

Congress expressly considered the relationship between the earlier-enacted general AIA and the latter-enacted specific RFA during its consideration of the 1996 amendments to the RFA.

> "The act provides for judicial review of the RFA and the courts generally are given broad discretion to formulate appropriate remedies under the facts and circumstances of each individual case. <u>The rights of judicial review and should be applied in a manner consistent with the purposes of the AIA which may limit remedies available in particular instances.</u> [Emphasis added]

142 Cong. Rec. Senate, *supra.*

Congress made clear that it intended for the Defendants to comply with the RFA in adopting tax regulations and the RFA explicitly allows for judicial review of Defendants' compliance. As the legislative history shows and as the court in *Silver I* found, the AIA is an issue at the remedy stage. *Silver I*, ECF 29 at 6, fn. 1.

---

[20] It is commonplace statutory construction that the specific governs the general. Thus, a comprehensive solution enacted by Congress that deliberately targets a specific problem overrides a general broad statute. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012). This is particularly so when a later-in-time federal statute provides a specific remedy. This is the case even where the general earlier-in-time statute involves Federal tax. *U.S. v. Estate of Romani,* 523 U.S. 517, 518 (1998).

## CONCLUSION

Defendants' deviation from the requirements of the RFA in this case is not an isolated oversight.  Rather, it reflects the Defendants' pattern of ignoring the requirements of the RFA and the interests of small business when it promulgates regulations.  As stated above, the General Accountability Office found that Defendants complied with the RFA in only two of the over 200 tax regulations issued between 2013 and 2015. Plaintiffs submit that allowing Defendants to avoid scrutiny of that record through invocation of procedural technicalities will serve to reward the agency for flagrantly disregarding its procedural obligations in developing regulations.

For the foregoing reasons, Plaintiffs urge the Court to deny Defendants' motion to dismiss.

Date: September 9, 2020.

Respectfully submitted,

/s/ *Lawrence Marc Zell*

_____
Lawrence Marc Zell (DC Bar # 959437)
Noam Schreiber, *Of counsel*
ZELL & ASSOCIATES INTERNATIONAL
ADVOCATES LLC
14 Penn Plaza
225 West 34th Street, 9th Floor
New York, New York 10122
E-mail: mzell@fandz.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2020, a copy of the foregoing document was served electronically through the Court's ECF system on all counsel of record.

/s/ *Lawrence Marc Zell*

_____
Lawrence Marc Zell (DC Bar # 959437)
**ZELL & ASSOCIATES INTERNATIONAL ADVOCATES LLC**
14 Penn Plaza
225 West 34th Street, 9th Floor
New York, New York 10122
E-mail: mzell@fandz.com

*Counsel for Plaintiffs*

26