# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SILVER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-1544-CKK |
| | ) | |
| INTERNAL REVENUE SERVICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT…………………………………………………………………………...2

I.      Plaintiffs do not meet their burden to show that the Court has jurisdiction to
        entertain their Regulatory Flexibility Act and Paperwork Reduction Act claims…………2

        Silver Limited……………………………………………………………….………4

        Silver individually……………………………………………………………...7

II.     The Court lacks jurisdiction because Plaintiffs lack standing……………………………9

        A.      Plaintiffs try a variety of distracting arguments to avoid squarely connecting
                the injury they allege to the procedural violations they allege in order to
                establish standing…………………………………………………………………9

        B.      When Plaintiffs attempt to connect the injury they allege to the procedural
                violations they allege, they rely on errors of law and logic……………………...13

III.    This Court also lacks jurisdiction because the Anti-Injunction Act and the tax
        exception to the Declaratory Judgment Act bar this suit………………………..…16

        A.      The Anti-Injunction Act determination in *Silver I* does not compel the same
                result here…………………………………………………………………..17

        B.      The Anti-Injunction Act applies without exception because Plaintiffs have
                alternative means to bring their regulatory challenges…………………………19

        C.      The Regulatory Flexibility Act in no way interferes with the application of
                the Anti-Injunction Act…………………………………………………………23

        CONCLUSION........................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*,
149 F. Supp. 3d 1 (D.D.C. 2015) ............................................................................5

*Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*,
926 F.3d 1061 (9th Cir. 2019), *cert. denied sub nom. Altera Corp. &*
*Subsidiaries v. CIR*, No. 19-1009, 2020 WL 3405861 (U.S. June 22, 2020) ........22

*Am. Farm Bureau Fed'n v. EPA*,
792 F.3d 281 (3d Cir. 2015) .................................................................................10

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) .................................................................................5

*Ass'n of Private Sector Colleges & Universities v. Duncan*,
681 F.3d 427 (D.C. Cir. 2012) ..............................................................................10

*Associated Builders & Contractors, Inc. v. Shiu*,
30 F. Supp. 3d 25 (D.D.C. 2014) .....................................................................11, 12

*Bennett v. Spear*,
520 U.S. 154 (1997) ...............................................................................................8

*Bob Jones Univ. v. Simon*,
416 U.S. 725 (1974) ..............................................................................................23

*California Cattlemen's Ass'n v. United States Fish & Wildlife Serv.*,
369 F. Supp. 3d 141 (D.D.C. 2019) ............................................................ 11, 12-13

*Carpenters Indus. Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017) ..................................................................................10

*Central Texas Telephone Co-op., Inc. v. F.C.C.*,
402 F.3d 205 (D.C. Cir. 2005) ..............................................................................12

*CIC Servs., LLC v. IRS*,
925 F.3d 247 (6th Cir. 2019), *cert. granted*, 206 L. Ed. 2d 916 (May 4, 2020) ....................19

*Cmty. for Creative Non-Violence v. Pierce*,
814 F.2d 663 (D.C. Cir. 1987) ..............................................................................15

*Cohen v. United States*,
650 F.3d 717 (D.C. Cir. 2011) (en banc) .....................................................17, 21, 24

*Ctr. for Law & Educ. v. Dep't of Educ.*,
396 F.3d 1152 (D.C. Cir. 2005) ....................................................................9, 12, 16

*Farm-To-Consumer Legal Def. Fund v. Vilsack*,
    636 F. Supp. 2d 116 (D.D.C. 2009) .................................................13

*Fla. Audubon Soc. v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) ....................................................10, 12

*Florida Bankers Ass'n v. U.S. Dep't of Treasury*,
    799 F.3d 1065 (D.C. Cir. 2015) ...............................17, 18, 19, 20, 24

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) .....................................................9, 12

*Grocery Mfrs. Ass'n v. EPA*,
    693 F.3d 169 (D.C. Cir. 2012) .........................................................10

*Gulf Coast Maritime Supply, Inc. v. United States*,
    867 F.3d 123 (D.C. Cir. 2017) .........................................................19

*Huddy v. FCC*,
    236 F.3d 720 (D.C. Cir. 2001) .........................................................10

*Int'l Lotto Fund v. Virginia State Lottery Dep't*,
    20 F.3d 589 (4th Cir. 1994) .............................................................19

*Koch v. Schapiro*,
    699 F. Supp. 2d 3 (D.D.C. 2010) ................................................11, 17

*Maze v. IRS*,
    862 F.3d 1087 (D.C. Cir. 2017) .......................................................17

*National Ass'n of Home Builders v. U.S. Army Corps of Engineers*,
    417 F.3d 1272 (D.C. Cir. 2005) .......................................................12

*New England Anti-Vivisection Society v. U.S. Fish & Wildlife Service*,
    208 F. Supp. 3d 142 (D.D.C. 2019) ............................................14, 15

*Newport Aeronautical Sales v. Dep't of Air Force*,
    2007 WL 2007966 (D.D.C. July 11, 2007) .....................................13

*North Carolina Fisheries Ass'n, Inc. v. Gutierrez*,
    518 F. Supp. 2d 62 (D.D.C. 2007) ...................................................11

*Northwest Min. Ass'n v. Babbitt*,
    5 F. Supp. 2d 9 (D.D.C. 1998) .........................................................12

*Nuclear Energy Inst., Inc. v. EPA*,
    373 F.3d 1251 (D.C. Cir. 2004) ..................................................11, 17

iv

*Parker v. District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007) ................................................................................14

*Rock Creek Pack Station, Inc. v. Blackwell*,
344 F. Supp. 2d 192 (D.D.C. 2004) ........................................................................13

*RYO Machine, LLC v. U.S. Dep't of Treasury*,
696 F.3d 467 (6th Cir. 2012) ............................................................................19, 21

*SIH Partners LLLP v. Comm'r of Internal Revenue*,
923 F.3d 296 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 854 (2020) ........................22

*Silver v. IRS, et al.*,
case no. 19-cv-247 (APM), 2019 WL 7168625 (D.D.C. Dec. 24, 2019) ...... 7-8, 18

*South Carolina v. Regan*,
465 U.S. 367 (1984) ...........................................................................................20, 21

*State Nat. Bank of Big Spring v. Lew*,
795 F.3d 48 (D.C. Cir. 2015) ..................................................................................10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..................................................................................................18

*Terry v. First Merit Nat'l Bank*,
75 F. Supp. 3d 499 (D.D.C. 2014) ............................................................................5

*Tozzi v. U.S. Dep't of Health & Human Servs.*,
271 F.3d 301 (D.C. Cir. 2001) ................................................................................10

*Ward v. Seldin*,
422 U.S. 490 (1975) ................................................................................................14

*We the People Found., Inc. v. United States*,
485 F.3d 140 (D.C. Cir. 2007) ................................................................................24

*Z Street v. Koskinen*,
791 F.3d 24 (D.C. Cir. 2015) ..................................................................................22

**Statutes**

5 U.S.C. § 601(3) ..............................................................................................................2

5 U.S.C. § 611(a)(1) ........................................................................................................23

5 U.S.C. §§ 701-706 ........................................................................................................23

5 U.S.C. §§ 702(1)-(2) .....................................................................................................23

5 U.S.C. § 704 ...................................................................................................................8

15 U.S.C. § 632(a)(1) ......................................................................................................2, 7

15 U.S.C. § 632(a)(2) ......................................................................................................2, 3

15 U.S.C. § 632(a)(2)(A) .....................................................................................................3

26 U.S.C. § 7421(a) ...........................................................................................................18

44 U.S.C. § 3507(d) .............................................................................................................8

Internal Revenue Code section 951A .......................................................................... *passim*

**Other Authorities**

13 C.F.R. § 121.105 .........................................................................................................2, 3

13 C.F.R. § 121.105(a) .........................................................................................................7

13 C.F.R. § 121.105(b) .........................................................................................................6

## <u>INTRODUCTION</u>

Plaintiffs' various arguments do not alter the conclusion that this Court lacks jurisdiction to consider their claims about alleged procedural errors in Defendants' issuance of the regulations under the global intangible low-taxed income ("GILTI") provisions in Internal Revenue Code section 951A. First, Plaintiffs fail to establish that either of them qualifies as a "small entity" within the meaning of the Regulatory Flexibility Act ("RFA"). And although they strain to avoid and recast the plain information contained within, Plaintiff Monte Silver's ("Silver") tax filings demonstrate that neither he nor his law firm, Plaintiff Monte Silver, Ltd. ("Limited"), qualifies as a "small entity" that can bring suit under the RFA. Those forms show no U.S. place of business and no significant contribution to the U.S. economy, and Plaintiffs fail to establish otherwise. And Plaintiffs concede they do not make a claim under the Paperwork Reduction Act ("PRA"), but provide no support for their extraordinary fallback position that they can obtain PRA-based relief, anyway.

Second, Plaintiffs lack standing. The harms Plaintiffs allege come from Code section 951A, the underlying GILTI *statute*, rather than the section 951A regulations. Plaintiffs' arguments notwithstanding, that renders irrelevant any alleged procedural violations in the administrative process downstream of the statute.

Finally, and in addition to the above jurisdictional barriers, the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act bar this pre-enforcement challenge to a tax regulation, and Plaintiffs fail to show that any limited exceptions apply here. On the basis of any of these numerous jurisdictional problems with Plaintiffs' claims, the Court should dismiss the suit.

## ARGUMENT

**I.     Plaintiffs do not meet their burden to show that the Court has jurisdiction to entertain their Regulatory Flexibility Act and Paperwork Reduction Act claims.**

Plaintiffs do not meet their burden to show that the Court has jurisdiction to entertain their RFA and PRA claims. First, 13 C.F.R. § 121.105, entitled "How does the SBA define 'business concerns or concern,'" applies to determine whether either Plaintiff qualifies as a "small business" allowed to bring a suit for judicial review under the RFA. Second, Plaintiffs have not established facts sufficient to demonstrate that they meet those qualifications and, as a result, to show that the Court has jurisdiction to hear their RFA claims. Regardless, Plaintiff Silver also does not qualify as a "small business" under the terms of the relevant *statute*. Finally, Plaintiffs give no explanation for their extraordinary position that they are entitled to relief under the PRA, when they admit they state no claim under it.

First, 13 C.F.R. § 121.105 applies here. The RFA provides that "the term 'small business' has the same meaning as the term 'small business concern' under section 3 of the Small Business Act." 5 U.S.C. § 601(3). In turn, section 3 of the Small Business Act clarifies that such a concern is "one which is independently owned and operated and which is not dominant in its field of operation." 15 U.S.C. § 632(a)(1). That statute further provides that the Small Business Administration "may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of this chapter or any other Act." 15 U.S.C. § 632(a)(2).

Section 121.105 of the SBA regulations, entitled "How does the SBA define 'business concerns or concern,'" gives relevant details and standards for determining whether an entity will qualify as a small business concern. Plaintiffs point to prefatory language, regarding eligibility for assistance from the SBA, to argue that these standards do not apply in the context of

2

determining jurisdiction under the RFA. But even though the regulation speaks in terms of a business concern eligible for assistance from the SBA, the *statute* that authorizes the SBA regulations provides that the SBA "may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for purposes of this chapter *or any other Act*." 15 U.S.C. § 632(a)(2)(A) (emphasis added). As described above, the RFA specifically adopts SBA standards for determining what qualifies as a "small business" and is an "other Act" as contemplated in 15 U.S.C. § 632(a)(2)(A).

Although Plaintiffs point to the subheading to section 632(a)(2), which refers to "size standards", the text of the statute authorizes the creation of "detailed definitions or standards" to determine whether a business qualifies as a "small business concern." 15 U.S.C. § 632(a)(2)(A). Plaintiffs complain that the regulation in question cannot be considered sufficiently "detailed" to meet the statute's requirements because the relevant portion "is one sentence long," dkt. no. 10 at 10, but length does not necessarily correlate to detail. The standards announced in the relevant regulation may be succinct, but they provide the necessary detail: to qualify as a "small business concern" under the applicable SBA regulation, the business entity must (1) be organized for profit; (2) have a place of business located in the United States; **and** (3) operate primarily within the United States **or** make a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor. *See* 13 C.F.R. § 121.105.

And if Plaintiffs believed those factors did not apply, it is puzzling why they include allegations in their complaint (ultimately not borne out by the facts) to try to establish they met those factors. *See* dkt. no. 1 at ¶¶ 5-6. Section 121.105 applies here. Plaintiffs have not established that either of them (Silver Limited or Silver individually) qualifies as a "small business concern" under that section.

**Silver Limited**

Plaintiffs have failed to establish that Limited has a place of business in the United States. On an official tax form – the Form 5471 – that specifically asked for Limited's place of business in the United States, if any, Silver listed no U.S. address. Dkt. no. 9-2 at 9 (Form 5471). Plaintiffs attempt to blame the supposedly "very complex" form. Dkt. no. 10 at 14. This defies belief. The form in plain, direct and unambiguous language makes a straightforward request for the "[n]ame, address, and identifying number of branch office or agent [of the foreign corporation] (*if any*) in the United States." Dkt. no. 9-2 at 9 (emphasis added).

Now that Limited needs to try to establish a place of business in the United States to be able to maintain a claim for judicial review under the RFA, Plaintiffs point to an alleged "cooperation agreement"[1] with the Los Angeles-based Wasserman Law Group, dkt. no. 10-9 at ¶ 15, and business cards that include a U.S. telephone number for Silver at the Wasserman Law Group, along with an attorney profile for Silver under a listing of Wasserman Law Group attorneys, dkt. no. 10-9 at ¶ 19. Plaintiffs do not show how Monte Silver's personal work with the Wasserman Law Group establishes a place of business in the United States for Limited, which is Silver's own independent law firm, or why Limited still reports no U.S. income despite the alleged relationship between the firms. And while Silver claims to visit the United States extensively to conduct business, he is not clear about whether he purports to be conducting business on behalf of his own law firm or the Wasserman Law Group. S*ee* dkt. no. 10-9 at ¶¶ 20-21. Regardless, Silver reported on Form 2555, Foreign Earned Income, which was filed with his 2017 income tax return, that he spent no time in the United States that year and earned

---

[1] But Plaintiffs do not include a copy of the alleged agreement nor explain exactly what it entails.

no income in the United States on business that year, either. Ex. 1, Form 2555 at line 14.[2]

Plaintiffs have not demonstrated a U.S. place of business for Limited under the above

circumstances.[3]

     Even assuming Plaintiffs could meet their burden to show a U.S. place of business for

Limited based on scant allegations that fly in the face of their contrary reports on official U.S.

tax forms, Limited still does not qualify as a small business because Plaintiffs have not shown

that Limited either operates primarily within the United States or makes a significant

contribution to the U.S. economy through payment of taxes or use of American products,

materials or labor. Indeed, the above facts from Silver's Form 2555 (no time in the U.S., no

income earned in the U.S.) preclude either finding. And even though Plaintiffs now point to an

EIN for Limited (although they listed only "FOREIGNUS" when asked to supply that

information on Silver's Form 5471 for 2017, *Silver I* dkt. no. 57-3 at 3), they do not show any

---

[2] In addition to the redactions required by Local Rule 5.4(f), this exhibit bears additional redactions as requested by Plaintiffs' counsel, except Defendants have not redacted responses in line 13 because they inform the content of line 14, on which Defendants rely. In light of concerns that Plaintiffs' counsel raised regarding the filing of other tax information in another case involving Plaintiffs (No. 19-cv-247 (APM)), Defendants' counsel reached out to Plaintiffs' counsel to give him the opportunity to suggest additional redactions. Plaintiffs' counsel proposed the additional redactions, but requested that the Form 2555 be filed under seal. Because the use of this return information is proper, and because of the policy in favor of open proceedings, Defendants have not agreed to file this exhibit under seal.

[3] Plaintiffs are wrong when they contend that it is inappropriate to determine facts such as these on a motion to dismiss. *See* dkt. no. 10 at 13. As Defendants noted in their motion to dismiss, "[a] court may consider materials outside the pleadings to determine its jurisdiction." *Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 6 (D.D.C. 2015) (quoting *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005)); *see also Terry v. First Merit Nat'l Bank*, 75 F. Supp. 3d 499, 506 (D.D.C. 2014). And Plaintiffs "bear[] the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

U.S. income tax returns reporting income filed by Limited or any U.S. income tax paid by Limited. Indeed, on the Form 5471 that Silver prepared and filed with his individual income tax return for 2017, Silver revealed that Limited paid no U.S. tax. Dkt. no. 9-2 at 11.[4]

The portion of 13 C.F.R. § 121.105 that Plaintiffs cite also does not support their claim that Limited, a completely foreign business, can qualify as a small business under the SBA regulations (and thus for the RFA). Indeed, the portion cited by Plaintiffs shows the opposite. It provides that a joint venture *cannot* qualify as a business concern under the SBA if there is "more than 49 percent participation by foreign business entities." 13 C.F.R. § 121.105(b). Limited is not a joint venture with minority foreign participation – it is a 100 percent Israeli-incorporated business.

---

[4] On the issue of the EIN, Plaintiffs allege that "Silver Ltd. has registered with Defendants and received a federal tax ID number" (dkt. no. 10 at 14), implying that the EIN relates to the business of Silver's law firm. But an examination of the document that Plaintiffs attach as Exhibit F (dkt. no. 10-6) shows that it also refers to "Yazam IP Com." It appears that this EIN is not for the law firm per se, but instead is for, at best, participation in a company called "Yazam IP Com." From 2013 to 2016, Plaintiff Silver operated a website along with several non-lawyers called YAZAMIP.Com, which described itself as a "closely-knit network of world-class entities specializing in patent monetization." *See* Sergi Decl. 2 at ¶ 3; Sergi Decl. Ex. D. It appears, however, that YAZAMIP.com was defunct long before the issuance of the proposed regulations in this case. Further indication that this EIN is for a different entity other than Silver's current law practice is that Silver lists the EIN for Monte Silver, LTD as "FOREIGNUS" on his Form 5471. *See Silver I*, No. 19-cv-247 (APM) dkt. no. 57-3 at 3. As a tax practitioner, Silver would understand that, if the EIN truly referred to his law practice, he should put the proper EIN on line 1.b(1) of Form 5471 instead of choosing to enter "FOREIGNUS", which is a common short hand for a foreign U.S. corporation without an EIN. *See, e.g.*, IRS Publication 4162, *Modernized e-File (MeF) Test Package* (Rev. 12-2012), https://www.irs.gov/pub/irs-pdf/p4162.pdf (https://perma.cc/W7SM-CJCW) at 140 (Test Form 5471). More importantly, even if Plaintiffs were correct and the EIN for Limited is XX-XXX6635, that would not advance their argument because the records of the IRS do not show any business tax return filing or the payment of any tax under that EIN. Sergi Decl. 2 at ¶ 4. And, as already noted, Silver reported on Form 5471 no U.S. income tax paid by Limited. Dkt. no. 9-2 at 11.

**Silver individually**

Silver, as an individual, does not qualify as a "small business concern" under the applicable SBA regulation because he is not "a business entity organized for profit," 13 C.F.R. § 121.105(a). But even if that regulation did not apply, Silver does not qualify as a "small business concern" under the governing *statute* because he is not a small business concern that "is independently owned and operated," *see* 15 U.S.C. § 632(a)(1). Silver, as an individual, is not a business. Although a sole proprietorship could be a business, Silver does not allege that he is a sole proprietorship. Indeed, he acknowledges that his law practice is a corporation organized under the laws of Israel. He attempts to sidestep that problem by pointing to his personal investments in U.S. real estate, to no avail. Even assuming Silver's personal real estate investments could qualify him as a small business, Silver would have no standing as a *U.S.* real estate business— small or otherwise — to challenge regulations that govern the inclusion of income from *foreign* businesses in a U.S. shareholder's overall income. Also, Silver *individually* is the sole shareholder in his foreign law practice. He never alleges that his "real estate business" is a shareholder in Limited. As Silver's alleged U.S. real estate "business" neither generates nor earns income that is subject to section 951A, the challenged regulation —whether or not properly promulgated  — can have no impact on it.

Finally, as for Plaintiffs' claims for relief under the PRA, Plaintiffs give no explanation for their extraordinary position that they are entitled to relief under that statute when they admit they state no claim under it, dkt. no. 10 at 20. Plaintiffs are wrong when they claim this issue was conclusively decided in their action challenging different Treasury regulations in *Silver v. IRS, et*

*al.*, case no. 19-cv-247 (APM), 2019 WL 7168625 (D.D.C. Dec. 24, 2019) ("*Silver I*"). *See* dkt. no. 10 at 15. In fact, it has yet to be decided in that case.[5]

Also, Plaintiffs cannot skirt the PRA's jurisdictional bar just because they have not named the Director of the Office of Management and Budget ("OMB") as a defendant in this action. An agency's compliance with the PRA culminates in the OMB approving the collection of information request by conferring an OMB number that is published with the information request. So it is no surprise that a statute barring judicial review speaks in terms of the culminating event under the PRA – the OMB's decision to approve (or disapprove) an agency's collection of information request. *See* 44 U.S.C. § 3507(d) ("The decision by the Director to approve or not act upon a collection of information contained in an agency rule shall not be subject to judicial review."). To the extent that Plaintiffs purport to challenge something short of the final determination approving the information collection request contained in the challenged regulation, the Administrative Procedure Act bars challenges to agency actions that are not final. *See* 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

---

[5] In *Silver I*, the District Court denied the United States' motion to dismiss for lack of standing and lack of jurisdiction under the Anti-Injunction Act. In discussing the Anti-Injunction Act argument, the District Court referred to RFA and PRA analyses as the relief Plaintiffs were seeking, *Silver I*, 2019 WL 7168625, at *3, but it so far has not addressed the argument that the PRA bars judicial review. After Plaintiffs raised arguments about the PRA in its opposition to the motion to dismiss in *Silver I*, the United States briefly addressed the lack of jurisdiction under the PRA in its reply in support of its motion to dismiss. But the United States had raised no jurisdictional argument under the PRA in its original motion because Plaintiffs had amended their complaint to *remove* a count that had been based on the PRA. The United States later raised lack of jurisdiction to hear an alleged violation of the PRA in its cross motion for summary judgment, but that motion remains pending in *Silver I*.

**II.     The Court lacks jurisdiction because Plaintiffs lack standing.**

**A.     Plaintiffs try a variety of distracting arguments to avoid squarely connecting the injury they allege to the procedural violations they allege in order to establish standing.**

Plaintiffs allege that Treasury committed a procedural violation (under the RFA and the PRA) and they allege an injury (the burdens created by the GILTI statute), but there is no connection between the two. Plaintiffs provide no good reason to suppose that "curing" the alleged procedural violation of the agency would ameliorate one bit the alleged "sheer insanity" of the statute. Thus, Plaintiffs lack standing.

Defendants explained this all in their opening brief. *See* dkt. no. 9-1 at 14-15 (citing dkt. no. 1 at ¶¶ 31-37); 16-18. Plaintiffs state that Defendants miss the mark because this is a "procedural injury" case and Defendants rely "solely on non-procedural standing precedents." Dkt. no. 10 at 19. Not so. Defendants specifically use "procedural injury" cases in the D.C. Circuit to show why Plaintiffs do not have standing here.

In *Food & Water Watch, Inc. v. Vilsack*, the D.C. Circuit noted that alleging violation of a "procedural right" without showing that "it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest" is insufficient for standing, because "the omission of a procedural requirement does not, by itself, give a party standing to sue." 808 F.3d 905, 917–18 (D.C. Cir. 2015) (internal citations omitted).

In *Ctr. for Law & Educ. v. Dep't of Educ.*, the D.C. Circuit stated: "assuming arguendo that a procedural right designed to protect a concrete interest of the [plaintiffs] has been violated here, [they] fail to demonstrate how they suffer actual injury to a concrete, particularized interest, caused by the challenged conduct. The chain of causation between the alleged procedural violation and the concrete interest is speculative at best." 396 F.3d 1152, 1159, 1160 (D.C. Cir. 2005).

In *Fla. Audubon Soc. v. Bentsen*, the D.C. Circuit stated: "To demonstrate standing, then, a procedural-rights plaintiff must show not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest." 94 F.3d 658, 664–65 (D.C. Cir. 1996).

In all those cases, the D.C. Circuit ruled that the procedural violation alleged was not plausibly connected to the injury that plaintiffs alleged they suffered, and so they had no standing. The same is true here.

It is Plaintiffs who rely on the wrong body of case law. After wrongly accusing the Defendants of relying "solely on non-procedural standing precedents" to make their argument, Plaintiffs immediately do just this, *five times in a row*. They cite *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012), then *Huddy v. FCC*, 236 F.3d 720, 722 (D.C. Cir. 2001), then *Tozzi v. U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001), then *Am. Farm Bureau Fed'n v. EPA*, 792 F.3d 281, 293 (3d Cir. 2015), then *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017). Not a single one of these is a "procedural injury" case.

Plaintiffs also lean heavily on *Silver I* to support their assertion of standing in this case. Defendants anticipated this and explained that, whether *Silver I* was correctly decided, the D.C. Circuit cases grounding that ruling were crucially different from what confronts the Court here. Dkt. no. 9-1 at 19-22. The distinction is this: in the cases the *Silver I* court cited for the proposition that there is "concrete injury" where regulations drive up compliance costs — *State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48 (D.C. Cir. 2015) and *Ass'n of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 458 (D.C. Cir. 2012) — it was plain to see how enjoining the challenged action would redress the injuries alleged. *See id.* That is not true

10

here, given the obvious disconnect between the challenged regulatory action and the alleged statutory burden.

Plaintiffs, without addressing this distinction, or discussing *Lew* or *Duncan,* point this Court to *Silver I* and argue that the decision governs the outcome in this case. Dkt. no. 10 at 15 n. 14. They appear to rely on issue preclusion. *Silver I* addressed a different statute and different regulations from this case, so issue preclusion does not apply. *See Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1303 (D.C. Cir. 2004); *Koch v. Schapiro*, 699 F. Supp. 2d 3, 10-11 (D.D.C. 2010).

Plaintiffs then assert that Defendants' position would lead to the absurd outcome that no "small business" could establish standing to challenge regulations in an RFA suit, because there is always an "overriding statute." *See* dkt. no. 10 at 18. Not so. A regulated entity, small business or otherwise, could still bring a suit if it plausibly alleged facts that, taken as true, would establish that agency action, in violation of the RFA, is the source of its injury. The plaintiffs did it in *California Cattlemen's Ass'n v. United States*, where ranchers raised an RFA challenge to an agency rule designating a stretch of land as "critical habitat," alleging the rule inhibited their ability to graze cattle on that land.  315 F. Supp. 3d 282, 285 (D.D.C. 2018).  The plaintiffs did it in *North Carolina Fisheries Ass'n, Inc. v. Gutierrez*, where fishermen made an RFA challenge to fishing quotas imposed by an agency, alleging the quotas harmed them by limiting the number of fish they can catch and sell. 518 F. Supp. 2d 62, 81-82 (D.D.C. 2007). The plaintiffs did it in *Associated Builders & Contractors, Inc. v. Shiu*, where a trade association of construction firms made an RFA challenge to a labor agency's regulations implementing the Americans with Disabilities Act. 30 F. Supp. 3d 25, 34 (D.D.C. 2014).

The list goes on. *See National Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272 (D.C. Cir. 2005) (RFA challenge to agency's permit issuance process, considered as rulemaking); *Central Texas Telephone Co-op., Inc. v. F.C.C.*, 402 F.3d 205 (D.C. Cir. 2005) (RFA challenge to a rule by the Federal Communications Commission setting requirements for "number portability," where a customer can switch service carriers but keep her phone number); *Associated Builders & Contractors, Inc. v. Shiu*, 30 F. Supp. 3d 25 (D.D.C. 2014) (RFA challenge to regulations implementing American with Disabilities Act); *Northwest Min. Ass'n v. Babbitt*, 5 F. Supp. 2d 9 (D.D.C. 1998) (RFA challenge to mining agency's rule requiring posting of bonds).

Clearly, requiring a plaintiff to allege facts that plausibly tie an agency's procedural violation to the asserted injury does not set an impossibly high bar. But it is one that these Plaintiffs do not clear.[6]

It is instead *Plaintiffs'* position that leads to the absurd outcome that simply alleging a procedural violation would carry standing along with it. *This* is obviously not right. *See* pages 9-10, above, *citing Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 917–18 (D.C. Cir. 2015); *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1159, 1160 (D.C. Cir. 2005); *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664–65 (D.C. Cir. 1996). In fact, in many cases in which plaintiffs alleged violations of the RFA, this District Court has found plaintiffs nonetheless lacked standing. *See California Cattlemen's Ass'n v. United States Fish & Wildlife Serv.*, 369 F.

---

[6] This is because, as Defendants have explained, Plaintiffs' alleged injury relates to the GILTI statute, which they describe as "overly complex," unfair and insane but do not challenge. Meanwhile, Plaintiffs allege a procedural violation in the issuance of the regulations, and seek relief from them, but the regulations simply guide the calculation of the amounts to be reported under the GILTI statute and set forth "anti-abuse" rules (which Plaintiffs at no point take issue with). *See* dkt. no. 9-2 at 6, 14-15.

Supp. 3d 141, 142–43 (D.D.C. 2019); *Farm-To-Consumer Legal Def. Fund v. Vilsack*, 636 F.

Supp. 2d 116, 122, 125-26 (D.D.C. 2009); *Newport Aeronautical Sales v. Dep't of Air Force*,

2007 WL 2007966, at *5–6 (D.D.C. July 11, 2007); *Rock Creek Pack Station, Inc. v. Blackwell*,

344 F. Supp. 2d 192, 198 (D.D.C. 2004).

###### B.    When Plaintiffs attempt to connect the injury they allege to the procedural violations they allege, they rely on errors of law and logic.

Last, Plaintiffs attempt to satisfy the requirement to connect their injury with the

procedural violation they allege. *See* dkt. no. 10 at 16, 20. In this attempt, they do not cite to any

allegations in their Complaint, leaving it unclear whether even a generous reading of the

Complaint would unearth what they now argue in their brief. But in any event, their arguments

fall short, too.

At bottom, Plaintiffs make two assertions to connect the agency's action with the injury

they assert: had Treasury concluded that the regulations have a significant economic impact on a

substantial number of small entities, it would (a) have exempted small businesses from the

GILTI statute or (b) at least published "simple guides" written in "simple English" that small

business owners could understand so that they could "comply with GILTI at nominal expense."

*See id.*[7]

Plaintiffs point to no language in the statute supporting their request for an exemption for

small businesses. There is none. *See* 26 U.S.C. § 951A. Such a broad exemption would therefore

be contrary to the statute. Accordingly, Plaintiffs' first attempt to connect agency action with the

---

[7] Plaintiffs also state "[c]oncrete interests of Plaintiffs were adversely affected by the procedural deprivation. Here, Defendants' compliance with the RFA could and should have resulted in the reduction of burdens imposed upon Plaintiffs and small businesses." Dkt. no. 10 at 16. But this is just a legal conclusion on the very question of standing being considered, and so does not add anything.

alleged injury (*i.e.*, the agency's failure to exempt small businesses from the GILTI statute) is wrong as a matter of law.

In ruling on standing, the Court need not turn a blind eye to this foundational error of law lurking beneath the Plaintiffs' case. True, it is a "well-established" rule that courts, in evaluating whether plaintiffs have standing, must not decide for or against plaintiffs on the merits of their claims and instead must assume that plaintiffs would be successful on the merits. *New England Anti-Vivisection Society v. U.S. Fish & Wildlife Service*, 208 F. Supp. 3d 142, 155, 161 (D.D.C. 2019); *see also Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007). But this action is about whether or not the agency committed a procedural violation in failing to adequately consider the impact of its regulations on small businesses, not about the meaning of the GILTI statute. While the Plaintiffs *presuppose* that Treasury could lawfully carve out an exemption for small businesses, it is not an intrinsic part of the merits of their suit. After all, Plaintiffs make no mention of this possibility anywhere in the Complaint. The ancillary question of whether the GILTI statute permits an exemption for small businesses, raised by Plaintiffs in arguing for standing, thus does not encroach upon the merits. It goes instead to causation and redressability, core requirements for standing.

"For purposes of ruling on a motion to dismiss for want of standing, [courts] must accept as true *all material allegations of the complaint*; and must construe the complaint in favor of the complaining party." *Ward v. Seldin*, 422 U.S. 490, 501 (1975) (emphasis added). That does not stop the Court from ruling, in the course of determining standing, that an assumption animating Plaintiffs' suit, nowhere mentioned in their Complaint, is an error of law that undercuts the relief they imagine might flow from a ruling in their favor. After all, "the standing doctrine is designed" to ensure that "the legal question presented to the court will be resolved ... in a

14

concrete factual context conducive to a *realistic appreciation of the consequences of judicial action*." *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 666 (D.C. Cir. 1987) (internal citation omitted) (emphasis added). Here, the Plaintiffs' presupposition is wrong as a matter of law, leading to a distinctly *unrealistic* appraisal of what Treasury could do in the first place, or could do even if the Court remands the regulations to the agency. *Compare New England Anti-Vivisection Society*, 208 F. Supp. 3d at 161-62 (concluding plaintiffs lacked standing after determining that they mischaracterized the law governing whether a statutory provision required the disclosure of information to them).

The agency could not, in the course of issuing the regulations, lawfully grant the exemption from the statute that Plaintiffs seek, severing this tie Plaintiffs mistakenly assume to exist between the agency's action and Plaintiffs' injury from the statute.

This leaves only Plaintiffs' suggestion that Treasury, if not for its (alleged) procedural violation, might have issued "simple guides" to assist small businesses in complying with their GILTI tax obligations. For this proposal, they rely on section 212 of the Contract with America Advancement Act of 1996, Pub. L. 104–121, March 29, 1996, 110 Stat 847. This law requires an "agency [to] publish one or more guides to assist small entities in complying with [a] rule" the agency publishes, but only when the "agency is required to prepare a final regulatory flexibility analysis under section 604 of title 5, United States Code." *Id.*

Publication of the compliance guide piggybacks on the determination that a "final regulatory flexibility analysis" is required.  If (as explained above) Plaintiffs otherwise lack standing to press their "procedural injury" claim that Treasury improperly skirted a regulatory flexibility analysis, because the alleged omission is not tethered to a concrete injury, then they do

not gain anything by alleging an auxiliary procedural omission (failure to issue a section 212 compliance guide) tied only to the first procedural omission.[8]

### III.   This Court also lacks jurisdiction because the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act bar this suit.

In this case, the remedy sought — deferred enforcement of the regulations pending remand to the agency to correct alleged procedural errors — would result in interference with the assessment and the collection of tax. The section 951A regulations clarify how to calculate the various amounts used to determine GILTI, which are included in the taxpayer's gross income and thus impact the taxpayer's tax liability. The relief sought should be judged by the relief requested in the complaint. Here, Plaintiffs ask the Court to enjoin operation of the regulation. But, since the regulations specify the rules for calculating the tax, enjoining those rules will increase the failure rate by taxpayers, interfering with the correct assessment (via self-assessment of the taxpayer or assessment by the IRS) of tax liability and will also interfere with the collection of the tax (either by voluntary payment with a return or by IRS action). And the anti-avoidance rules found in Treas. Reg. §§ 1.951A-2(c)(5) and 1.951A-3(h) that were written pursuant to sections 951A(c)(2)(A)(ii) and (d)(4) (not specifically challenged or applicable to Plaintiffs) are, as the name implies, directly connected to the assessment and collection of tax

---

[8] Defendants recognize that in a "procedural injury" case, Plaintiffs need not demonstrate that, but for the procedural defect, the final outcome of the rulemaking process would have been different. *See* dkt. no. 9-1 at 17 (quoting *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005)).  But the "final outcome of the rulemaking process" is the set of regulations, not the (different) outcome of conducting a final regulatory flexibility analysis where one was earlier omitted.

and reduction of improper avoidance.[9] Plaintiffs' arguments notwithstanding, that is precisely the type of relief that the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act (collectively "AIA") forbid.[10]

### A. The Anti-Injunction Act determination in *Silver I* does not compel the same result here.

Contrary to Plaintiffs' argument, *Silver I* is not identical to this case. *Silver I* addressed a different statute and different regulations from this case, so issue preclusion does not apply. *See Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1303 (D.C. Cir. 2004); *Koch v. Schapiro*, 699 F. Supp. 2d 3, 10-11 (D.D.C. 2010). In any event, Defendants respectfully disagree with the AIA ruling in *Silver I*, for the same reasons that the AIA bars Plaintiffs' challenge in this case.

In determining the applicability of the AIA, the D.C. Circuit has explained, "we have recognized our need to engage in 'a careful inquiry into *the remedy sought . . .* and *any implication* the remedy may have on assessment and collection.'" *Maze v. IRS*, 862 F.3d 1087, 1092 (D.C. Cir. 2017) (quoting *Cohen v. United States*, 650 F.3d 717, 724 (D.C. Cir. 2011) (en banc)) (emphasis added in *Maze*). In *Silver I*, the District Court recognized that proposition, *Silver I*, 2019 WL 7168625, at *3, but then did not consider the full extent of the relief that Plaintiffs were seeking. As in *Silver I*, Plaintiffs here seek to remand and *defer enforcement* of the regulations. Plaintiffs now say they "seek no invalidation of any regulation, only the remand for compliance with the RFA and PRA," dkt. no. 10 at 23, but that is contrary to their Complaint,

---

[9] Again, the Plaintiffs have alleged no harm specific to the regulations, including from the anti-avoidance rules.

[10] Those Acts are similar in operation, and if the Anti-Injunction Act bars relief, declaratory relief under the Declaratory Judgment Act also is unavailable. *See Florida Bankers Ass'n v. U.S. Dep't of Treasury,* 799 F.3d 1065, 1067 (D.C. Cir. 2015); *Cohen v. United States*, 650 F.3d 717, 727-31 (D.C. Cir. 2011) (en banc). For ease of reference, Defendants will refer to the AIA to encompass both Acts.

in which they ask the Court both to remand the challenged regulations and, in the meantime, to

defer their enforcement against Plaintiffs and other small entities, dkt. no. 1 at 14-15 (Prayer for

Relief).

The District Court in *Silver I* also did not address the impact of *Florida Bankers Ass'n v.*

*U.S. Dep't of Treasury*, 799 F.3d 1065 (D.C. Cir. 2015), in which the D.C. Circuit found that the

AIA barred a pre-enforcement challenge to invalidate a regulation that imposed a tax penalty. As

the D.C. Circuit noted, when a complaint, such as the one here, seeks to invalidate a tax-related

regulation, the AIA "ordinarily applies because the suit, if successful, would invalidate the

regulation and thereby directly prevent collection of the tax." *Florida Bankers*, 799 F.3d at 1067.

The District Court in S*ilver I* concluded that it "need not decide at this [motion to

dismiss] stage whether the greater relief Plaintiffs seek—staying enforcement of the regulations

. . . —would run afoul of the Anti-Injunction Act," and that it "need address that issue only if

Plaintiffs prevail on the merits." *Silver I*, 2019 WL 7168625, at *3 n.1. But the AIA is a

*jurisdictional* bar, and a court should not proceed to evaluate the merits of a case only to *then*

decide that it never had jurisdiction, anyway. *See Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 84 (1998) (admonishing against the exercise of "hypothetical jurisdiction" whereby

courts proceeded to the merits despite jurisdictional objections).

Carrying things to the merits would also flatly contravene the express language of the

AIA. The statute directs that "no suits *for the purpose* of restraining the assessment or collection

of any tax *shall be maintained* in any court[.]" 26 U.S.C. § 7421(a) (emphases added). The

*purpose* of a suit can be gleaned well before ruling on its merits, and where a court proceeds

anyway to the merits of such a suit, it has *already* violated the AIA by allowing the suit to "*be*

*maintained*."

The fact that Plaintiffs' suit involves a procedural challenge under the RFA does not change that result. Indeed, in *Florida Bankers* the D.C. Circuit invoked the AIA in dismissing a pre-enforcement regulatory challenge that included an RFA claim. *See Florida Bankers Ass'n*, 799 F.3d at 1065. In denying the United States' motion to dismiss in *Silver I*, the District Court did not address the impact of *Florida Bankers*.[11]

### B.    The Anti-Injunction Act applies without exception because Plaintiffs have alternative means to bring their regulatory challenges.

Plaintiffs' attempt to distinguish *Florida Bankers* and other cases cited in the motion to dismiss is unavailing. Plaintiffs allege they have no other forum to raise their RFA challenge because neither of them owes tax based on an income inclusion under GILTI – Silver because he alleges that he has not yet had any such inclusion in income, and Limited because it "owes no GILTI tax as a matter of law, because the tax is only imposed on the shareholder." Dkt. no. 10 at 23. Silver's ability to challenge the regulations at issue through other legal remedies is no more speculative than it was in *Florida Bankers*.[12] In *Florida Bankers*, two banking associations brought a pre-enforcement challenge to an IRS regulation that imposes a "penalty" on U.S. banks that fail to report interest paid to foreign account-holders. *Florida Bankers*, 799 F.3d at 1067.

---

[11] A case applying *Florida Bankers* to find that a pre-enforcement regulatory challenge is barred by the AIA is pending before the Supreme Court. *See CIC Servs., LLC v. IRS*, 925 F.3d 247 (6th Cir. 2019), *cert. granted*, 206 L. Ed. 2d 916 (May 4, 2020). Argument is scheduled for December 1, 2020.

[12] The tactic of characterizing a claim as falling outside the scope of the AIA while simultaneously requesting relief that would effectively restrain the assessment and collection of tax has been consistently rejected by courts. *See RYO Machine, LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 471 (6th Cir. 2012) (quoting *Int'l Lotto Fund v. Virginia State Lottery Dep't*, 20 F.3d 589, 591 (4th Cir. 1994) ("The [plaintiff] is not free to define the relief it seeks in terms permitted by the Anti–Injunction Act while ignoring the ultimate deleterious effect such relief would have on the Government's taxing ability."); *see also Gulf Coast Maritime Supply, Inc. v. United States*, 867 F.3d 123, 129-30 (D.C. Cir. 2017) (looking to the "obvious purpose" of a suit to determine whether the AIA applied).

The D.C. Circuit found that the AIA barred the suit because the "penalty" was treated as a tax under the Internal Revenue Code, and the pre-enforcement challenge to the regulation thus would restrain the assessment and collection of the tax paid if a bank failed to comply with the reporting requirement. *Id*. Like the Plaintiffs here, the plaintiffs in *Florida Bankers* did not yet owe the liability at issue. Indeed, the *Florida Bankers* plaintiffs never would owe the penalty at issue in that case, so long as they complied with the reporting requirements they wished to challenge. That did not prevent the D.C. Circuit from concluding that the AIA applied to bar the banking associations' pre-enforcement regulatory challenge.

Silver admittedly is subject to the requirements of section 951A; he just happens not to have any inclusion in gross income under section 951A(a) *yet*. If he does in a later year have to report and pay taxes on income as a result of the GILTI statute, he can challenge the regime then.

And even if Silver or Limited has standing to bring an RFA challenge to a regulation under which they may never owe tax, the narrow exception of *South Carolina* still does not provide a viable exception to operation of the AIA. *South Carolina v. Regan*, 465 U.S. 367 (1984). In that case, the Supreme Court created a limited exception to the AIA when the plaintiff, the state of South Carolina, lacked *any* other realistic means of litigating its claims. *See South Carolina*, 465 U.S. at 379-80. That was because South Carolina was not itself subject to the tax and thus, as a matter of law, would *never* be positioned to challenge the statute through a refund suit or any other means. *Id*. In *South Carolina*, the Supreme Court was concerned not only that the state never could bring a refund suit on its own behalf, but also that there appeared to be scant likelihood of another party aligned with the state's interests that ever would pursue the issue the state wished to raise. *See id*. at 381. In that context, the Supreme Court found that "the indicia of congressional intent—the Act's purposes and the circumstances of its enactment—

demonstrate that Congress did not intend the Act to apply where an aggrieved party would be required to depend on *the mere possibility* of persuading a third party to assert his claims." *Id*. But that is not the situation with Silver or Limited. Silver, when subject to tax on GILTI income inclusions, has alternatives in the form of a refund suit (or a Tax Court petition if the IRS asserts a deficiency) to pursue the challenges that both entities attempt to raise here. In this case, the interests of Limited and Silver are "inextricably intertwined" such that there is "much more than a mere possibility" that Silver could pay the tax and bring a refund claim for GILTI. *RYO Machine, LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 472 (6th Cir. 2012). Because of the relationship between the parties "[t]here is no need to find an elusive third-party challenger," as was the case in *South Carolina*. *Id*. Plaintiffs' arguments notwithstanding, the AIA applies to bar the present suit, by either Plaintiff.

Plaintiffs' reliance on *Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) (en banc), is equally unavailing. In *Cohen*, the IRS assessed and collected an excise tax on long-distance telephone service. *Cohen*, 650 F.3d at 719-20. After several courts found that the tax was illegal, the IRS issued a notice indicating that it would: (a) no longer collect the tax; and (b) give a refund to anyone who requested it through a particular procedure. *Id*. at 720-21. A group of long-distance telephone customers brought suit under the APA, challenging the refund procedure described in the notice. *Id*. at 721. Because the excise tax at issue had already been assessed and collected, and would never be assessed and collected again in the future, the D.C. Circuit concluded that the plaintiffs' suit did not interfere with the IRS's ability to collect and assess taxes. *Id*. at 725 ("This suit does not seek to restrain the assessment and collection of any tax. The IRS previously assessed and collected the excise tax at issue."). Thus, the suit was not barred by the AIA. *Id*. at 731. The facts of *Cohen* are clearly distinguishable from the facts of the

present case, where, as Plaintiffs admit, the IRS has not yet assessed or collected any tax owed as result of section 951A.

The outcome in *Z Street v. Koskinen*, 791 F.3d 24 (D.C. Cir. 2015), also does not aid Plaintiffs. The plaintiff in *Z Street*, a group seeking tax-exempt status, alleged that the IRS had unconstitutionally delayed consideration of its application because of its viewpoints. *Z Street*, 791 F.3d at 31. Because the plaintiff only challenged the allegedly unconstitutional delay, the D.C. Circuit found that various statutory remedies, including refund suits and suits under Internal Revenue Code section 7428 for a determination of tax-exempt status, provided no remedy for the challenged delay. "Were it otherwise, the IRS would be free for at least 270 days – the period of time taxpayers must wait to invoke section 7428 – to process exemption applications pursuant to different standards and at different rates depending upon the viewpoint of the applicants – a blatant violation of the First Amendment." *Id*. at 32. *Z Street* is readily distinguishable from Plaintiffs' situation because Plaintiffs may seek the relief they want – relief from the challenged regulations – through the alternative remedies available to Plaintiffs and Plaintiffs have not alleged any type of viewpoint or other discrimination in the processing of their tax returns. As discussed in the motion to dismiss, refund suits and Tax Court deficiency proceedings are appropriate vehicles to seek and, if warranted, to obtain relief from tax regulations. *See SIH Partners LLLP v. Comm'r of Internal Revenue*, 923 F.3d 296, 301 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 854 (2020) (reviewing Tax Court case in which the plaintiffs challenged long-standing regulations promulgated under Internal Revenue Code section 956); *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1074 (9th Cir. 2019), *cert. denied sub nom. Altera Corp. & Subsidiaries v. CIR*, No. 19-1009, 2020 WL 3405861 (U.S. June 22, 2020)

(reviewing Tax Court case in which the plaintiffs challenged amendments to the cost-sharing regulations promulgated under Internal Revenue Code section 482).

*Florida Bankers* provides a better guide for the application of the AIA in Plaintiffs' situation. And Silver cannot escape the mandate of the AIA when he has an available remedy, even though he must wait until he owes tax based on a GILTI income inclusion to challenge the GILTI regulations. Indeed, the point of the AIA is to defer such actions until they may be presented in a refund suit or deficiency proceeding. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 736-37 (1974) (finding that the principal purpose of the AIA is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'") (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). And, as discussed next, the fact that Plaintiffs raise procedural challenges under the Regulatory Flexibility Act does not interfere with the application of the AIA.

**C.    The Regulatory Flexibility Act in no way interferes with the application of the Anti-Injunction Act.**

The judicial review provisions in the RFA do not override the AIA's restrictions on injunctive relief. Although the RFA makes certain action reviewable, it expressly defers to other statutory schemes to determine the form and manner of review. The RFA provides that judicial review of an agency's alleged violation of that Act shall be "in accordance with chapter 7." 5 U.S.C. § 611(a)(1). "Chapter 7" refers to 5 U.S.C. §§ 701-706, sections of the APA. The APA's waiver of sovereign immunity expressly provides that it is limited by restrictions imposed by other statutes. 5 U.S.C. §§ 702(1)-(2) ("Nothing herein . . . affects other limitations on judicial review" or "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought").

The D.C. Circuit has held that the restrictions of the AIA limit the APA's waiver of sovereign immunity. *Cohen*, 650 F.3d at 724, 731 (citing H.R. Rep. No. 94-1656 at 12 (1976)); *We the People Found., Inc. v. United States*, 485 F.3d 140, 143 (D.C. Cir. 2007). The usual statutory scheme for judicial review of taxpayer challenges to IRS regulations applies to challenges based on the RFA. In that vein, it is worth noting again that *Florida Bankers* included a claim under the RFA. *Florida Bankers*, 799 F.3d at 1065. And the legislative history cited by Plaintiffs, dkt. no. 10 at 24, supports Defendants' position on the application of the AIA here, specifically referring to the AIA and noting that its application might limit the remedies available in an action for judicial review under the RFA.

## CONCLUSION

The Court lacks jurisdiction to entertain Plaintiffs' claims under the RFA and the PRA, Plaintiffs lack standing, and the AIA bars Plaintiffs' regulatory challenge. As a result, the United States asks the Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

DATED: September 18, 2020

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Joseph A. Sergi*
JOSEPH A. SERGI (D.C. Bar No. 480837)
Senior Litigation Counsel
LAURA M. CONNER (VA Bar No. 40388)
NISHANT KUMAR (D.C. Bar No. 1019053)
Trial Attorneys
Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Tel: (202) 514-2986
Fax: (202) 514-6866
Nishant.kumar@usdoj.gov
Joseph.a.sergi@usdoj.gov
Laura.m.conner@usdoj.gov