**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SILVER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-1544-CKK |
| | ) | |
| INTERNAL REVENUE SERVICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

In accordance with the Court's April 9, 2021 minute order, Defendants file this supplemental brief to highlight how Judge Mehta's summary judgment ruling in *Silver v. IRS*, 19-cv-247 (D.D.C.) ("*Silver I*") supports dismissal of this suit.  In *Silver I*, Plaintiffs challenged regulations promulgated under the section 965 transition tax law (26 U.S.C. § 965).  Here, the same Plaintiffs challenge regulations promulgated under the section 951 global intangible low taxed income ("GILTI") tax law (26 U.S.C. § 951).

The Court in *Silver I* held that it lacked jurisdiction because Plaintiffs failed to show "redressability," a necessary component of Article III standing.  Setting that aside, it concluded the suit would need to be dismissed, anyway, for lack of "*statutory* standing," because neither Plaintiff qualified to bring an RFA claim.

An analogous "redressability" problem plagues Plaintiffs in this suit.  And if, compared to *Silver I*, Plaintiffs have less of a standing problem because the GILTI tax is owed every year, while the transition tax was a "one time" imposition, then they face a bigger Anti-Injunction Act problem.  Either way, the outcome in *Silver I* strongly suggests the Court lacks jurisdiction over

1

this suit, too.  The Court could also dismiss the case for the alternative reason set forth in *Silver I*: neither Plaintiff qualifies to bring their Regulatory Flexibility Act ("RFA") claim.

## A.  As in *Silver I*, Plaintiffs' alleged injuries will not be redressed by the relief they seek in this action

In *Silver I*, Plaintiffs sought to enjoin the transition tax regulations while asserting they owed no transition tax.  They did not complain of a transition tax liability, but of the costs incurred in calculating and reporting zero liability.  Yet, Plaintiffs did not seek damages for past compliance costs, and because the transition tax was a one-time imposition --- and neither Silver nor Limited owed the tax --- Plaintiffs all but admitted they faced no compliance burden in the future.  *See* Dkt. 67 in *Silver v. IRS*, 19-cv-247 (D.D.C.) ("*Silver I* Op.") (filed in this action at dkt. 14-1) at pp.1, 5, 22. The *Silver I* Court held that Plaintiffs lacked standing because they failed to show that their alleged injuries (all in the past) would likely be redressed by a favorable ruling.  *Silver I* Op. at pp. 17, 20, 24.[1]

---

[1] While Defendants agree with the conclusion that Plaintiffs lacked standing in *Silver I*, Defendants respectfully disagree with parts of Judge Mehta's explanation.  As Defendants see it, Plaintiffs sought an injunction and related prospective relief while conceding they had no ongoing or future injury, so their case ran aground on the principle that injunctive relief requires ongoing or future injury.  *See, e.g., Owner-Operator Ind. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 347 (D.C. Cir. 2018).  The Court, however, construed Plaintiffs' separate request for declaratory judgment as seeking "retrospective relief" and then engaged in a needlessly complex standing analysis for both retrospective and prospective relief.  *See, e.g., Silver I* Op. at 16-22. Declaratory relief is not inherently retrospective.  *See, e.g., Dubuc v. Michigan Bd. of L. Examiners*, 342 F.3d 610, 616 (6th Cir. 2003) ("declaratory relief" was prospective); *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1338 (Fed. Cir. 2008) (same).  Whether declaratory relief is retrospective or prospective depends on the content of the declaratory judgment.  *See, e.g., Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425–26 (5th Cir. 2020); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847–48 (9th Cir. 2002); *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002). While declaratory relief ordering money damages may be retrospective, *see id.*, Plaintiffs did not seek money damages in *Silver I* or in this case.  The relief Plaintiffs sought in *Silver I* (and seek in this case) is only prospective, and a simpler standing analysis would have served.

For the reasons Defendants explain in their earlier briefing, the same holds true in this case:  Plaintiffs' alleged injuries from the "unfair and insane" section 951 GILTI tax law are unlikely to be redressed by the relief from the GILTI regulations that they seek.  *See, e.g,* Dkt. 9-1 at 15; dkt. 11 at 9, 13-15.  Plaintiffs disagree, based on the mistaken assumption (nowhere explained, though it is the cornerstone of their suit) that the regulations, if remanded and revised, could exempt Plaintiffs from the "unfair and insane" statute.

**B.     If the nature of the GILTI Tax distinguishes this suit from *Silver I*, it simultaneously heightens the Anti-Injunction Act problem for this suit**

*Silver I* dealt with a one-time transition tax.  This made it clear to see (though Plaintiffs attempted to muddy the waters) why a taxpayer with no tax liability and thus no future burden had nothing to gain from an injunction.  *See Silver I* Op. at 20, 22-24.   While the GILTI tax is a yearly obligation, there is still --- as there was in *Silver I* --- a profound disconnect between Plaintiffs' alleged injuries and their claims for relief, as Defendants explain at length in their earlier briefing.

If, however, this Court concludes instead that the recurrent nature of the GILTI tax supports Plaintiffs' standing here, that would only reinforce a separate barrier to jurisdiction: the Anti-Injunction Act (26 U.S.C. § 7421).  Defendants have explained why the Anti-Injunction Act compels dismissal of this suit.  *See* dkts. 9-1 and 11.  Here, Silver complains of a yearly tax rather than a one-time tax.  For that reason, he is freed from the quandary (that he faced in *Silver I*) of seeking prospective relief while facing no ongoing or future burden.  At the same time, though, he is deprived here of one of his main arguments in *Silver I* against applying the Anti-

3

Injunction Act, namely, that he has no alternative forum to challenge the tax regulations.[2]  Silver

must calculate, report and pay the tax on GILTI every year from now on.  If he finds the GILTI

statute or the regulations "unfair and insane," he can litigate his claims against them as part of a

tax refund suit.  The Anti-Injunction Act therefore bars this action.

**B.     The *Silver I* opinion compels the conclusion that neither Plaintiff is a "small entity" that is "directly regulated" by the GILTI tax regulations**

Judge Mehta ruled that neither Silver nor Silver Limited ("Limited") could assert a claim

under the RFA, because neither of them was a small entity directly regulated by the transition tax

rules challenged in *Silver I*.  *Silver I* Op. at pp. 25-26 (citing *Aeronautical Repair Station Ass'n,

Inc. v. F.A.A.*, 494 F.3d 161, 176 (D.C. Cir. 2007)).  To bring an RFA claim, at least one Plaintiff

had to satisfy *both* requirements of being (1) a "small entity" that was (2) "directly regulated" by

the transition tax rules.  *Id.* Neither Plaintiff met both.  *Id.*

Judge Mehta ruled that Limited was not directly regulated by the challenged rules

(regardless whether it met the definition of "small entity").  *Id.* at 28.[3]  Meanwhile, Silver was not

---

[2] Defendants also moved to dismiss *Silver I* on the pleadings, citing, among other reasons, the Anti-Injunction Act.  Plaintiffs argued in opposition that the Anti-Injunction Act did not apply, for one, because there was no alternative procedure to bring their dispute before the court.  Specifically, Silver explained that he could not challenge the section 965 regulations as part of a refund suit, because he owed no transition tax, would never owe any, and thus would never have occasion to seek a tax refund.  Dkt. 23 in *Silver I* at 14-17.  The Court in *Silver I* denied Defendants' motion to dismiss and held that the Anti-Injunction Act did not bar the suit.  *Silver I* dkt. 29.  In summary judgment briefing, Defendants reiterated their concern about violating the Anti-Injunction Act, but the Court did not address the Act again and ruled in Defendants' favor on other grounds.

[3] The *Silver I* Court never ruled whether Limited could qualify as a "small entity," because it had no need to.  In the earlier briefings before this Court, Defendants explain that Limited is not a "small entity" because it lacks a sufficient nexus to the United States.  *See* dkt. 9-1 and 11. As in *Silver I*, this Court need not decide Limited's status as a "small entity," because Limited, in any event, is not "directly regulated" by the section 951 rules.

a "small entity," that is, an independently owned and operated small business concern.  *Id.* at 29-30.  And even *if* Silver could count as a "small business concern" in another facet of his life --- i.e. "by virtue of his status as the sole proprietor of his real estate investing business" --- that sole proprietorship was not subject to the challenged tax regulations.  *Id.* at 30.  Thus, Silver's unrelated sole proprietorship would not count as a small entity directly regulated by the transition tax rules, either.

Silver and Limited face the same problem in this suit.  The GILTI tax applies to U.S. taxpayers that are U.S. shareholders in certain foreign entities.  26 U.S.C. § 951(a).  In turn, the regulations provide "rules to determine a U.S. shareholder's [GILTI]." 26 C.F.R. § 951A-1.  Limited is an Israeli corporation.  Dkt. 1 ¶ 5.  The Complaint does not allege that Limited is a U.S. taxpayer or a U.S. shareholder in a foreign corporation.  *See id.*  There is no allegation that Limited is subject to U.S. taxes at all, much less GILTI taxes.  *See id.*  Thus, Limited is not "directly regulated" by the GILTI tax rules and cannot bring an RFA claim against those rules.

Silver is not a "small entity" for the same reasons the Court held in *Silver I*.  And if there is some question as to that, he certainly is not subject to GILTI taxes *as* a "small entity."  *See Silver I* Op. at 29-30.  Silver mentions that he is "personally engaged in investments in U.S. commercial real estate," *id.* ¶ 6.  Even if he carries out those investments through a sole proprietorship, Silver nowhere alleges that his sole proprietorship is a U.S. shareholder in a controlled foreign corporation (separate from Limited).  *See id.* Nor does he allege that this (hypothetical) sole proprietorship's income from U.S. real estate investments is subject to the GILTI tax.  *See id.*  Thus, as was true in *Silver I*, neither Silver nor Limited can bring an RFA claim against the GILTI tax regulations.

**D.    The Court need not rely on material outside of the Complaint to dismiss the RFA claim**

In this supplemental brief, Defendants rely only on the Complaint to show that neither Plaintiff can make an RFA claim.  In the earlier briefing, they cited to evidence outside of the Complaint, but it makes no difference.

Before, Defendants argued that the Court lacked subject matter jurisdiction, because the RFA (at 5 U.S.C. § 611) affords judicial review only to claims brought by "small entities." Dkt. 9-1 at 8-12.  As permitted in addressing a question of jurisdiction, Defendants used evidence outside of the Complaint to show why neither Plaintiff qualified as an RFA small entity.  *See United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015).

In the meantime, the Court in *Silver I* cited the Supreme Court decision in *Lexmark* to note that the failure to qualify as a "small entity" creates a problem of "statutory standing" (really, that it amounts to a failure to state a claim) rather than a lack of subject matter jurisdiction.  *Silver I* Op. at 12-13, 25.  When deciding on a motion to dismiss whether a plaintiff lacks statutory standing, *i.e.* fails to state a claim, a court is limited to the face of the complaint. *Emor*, 785 F.3d at 677.

In determining whether Plaintiffs qualify to bring suit under 5 U.S.C. § 611, it is unclear whether the Court is ruling on jurisdiction or on the failure to state a claim.  Thus, it is unclear whether the Court's review is circumscribed by Rule 12(b)(6) to the face of the Complaint. [4] It

---

[4] Defendants do not concede that the question whether Plaintiffs meet the judicial review provision of 5 U.S.C. § 611 is one of "statutory standing" rather than the court's jurisdiction, and thus do not agree that the Court *should* be limited to review of the Complaint for failure to state a claim.  The *Silver I* Court cites *Lexmark Int'l, Inc. v. Static Control Components*, 134 S.Ct. 1377

(continued...)

does not make a difference in the result here, though, because even if the Court's scrutiny of the RFA claim were limited to the face of the Complaint, it would not help Plaintiffs.  It is apparent from the Complaint that neither Plaintiff is a small entity that is directly regulated by the section 951 regulations.  Thus, even without examining evidence outside the pleadings, this Court should dismiss the RFA claim at the heart of this action.[5]

## CONCLUSION

The Court in *Silver I* did not separately address Plaintiffs' oblique Paperwork Reduction Act ("PRA") claim in ruling for the Defendants and dismissing the case.  Plaintiffs' PRA claim in this suit (if they make one, which remains unclear) should fare no better.

---

(2014), but it is unclear that the *Lexmark* statutory standing analysis should apply in determining if Plaintiffs can bring an RFA claim against the Government.  *Lexmark*, after all, involved two private litigants and thus did not address whether --- as is the case here --- a condition for the waiver of sovereign immunity (and, in turn, for exercise of a court's jurisdiction) had been met. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.") The scant case law that cites *Lexmark* to discuss the statutory prerequisites to RFA suits, *see, e.g.*, *Permapost Prod., Inc. v. McHugh*, 55 F. Supp. 3d 14, 30 (D.D.C. 2014), does not grapple with whether a failure to meet the conditions of 5 U.S.C. § 611, by placing a claim outside the statutory waiver of sovereign immunity, presents a *jurisdictional* problem (rather than just a lack of "statutory standing").

[5] Alternatively, if the Court needs to venture outside the Complaint to dismiss Plaintiffs' claims, while still treating this as a 12(b)(6) dismissal for failure to state a claim, it can do that, too.  The Court could take judicial notice of the findings in *Silver I* that: "As a corporation located in and organized under the laws of Israel, Silver Limited is not a citizen or resident of the United States, a domestic partnership or corporation or a qualifying trust or estate." *See Silver I* Op. at 26; *Sibley v. Breyer*, 456 F. Supp. 2d, 45 (D.D.C. 2006) (a court can take judicial notice of facts found in other proceedings in ruling on a 12(b)(6) motion to dismiss). The Court could also rely on collateral estoppel to conclude that Silver does not qualify as a "small entity" under the RFA. *See Silver I* Op. at 29-30; *Lewis v. D.E.A.*, 777 F. Supp. 2d 151, 159, 162 (D.D.C. 2011) (party may raise collateral estoppel in a motion to dismiss for failure to state a claim).

Defendants explain why in their earlier briefing.  For the reasons in this supplemental brief, as well as those set out in the Defendants' earlier briefing, the Court should dismiss the Complaint.


DATED: April 22, 2021                    DAVID A. HUBBERT
                                         Acting Assistant Attorney General

                                         */s/ Nishant Kumar*
                                         JOSEPH A. SERGI (D.C. Bar No. 480837)
                                         Senior Litigation Counsel
                                         LAURA M. CONNER (VA Bar No. 40388)
                                         NISHANT KUMAR (D.C. Bar No. 1019053)
                                         Trial Attorneys
                                         Tax Division
                                         U.S. Department of Justice
                                         Post Office Box 227
                                         Washington, DC 20044
                                         Tel: (202) 514-2986
                                         Fax: (202) 514-6866
                                         Nishant.kumar@usdoj.gov
                                         Joseph.a.sergi@usdoj.gov
                                         Laura.m.conner@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

                                         /s/ Nishant Kumar
                                         NISHANT KUMAR
                                         Trial Attorney, Tax Division
                                         U.S. Department of Justice