# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**MONTE SILVER** and
**MONTE SILVER, LTD**.,
an Israel corporation

       *Plaintiffs*

    *v.*

**INTERNAL REVENUE SERVICE;**
**UNITED STATES DEPARTMENT**
**OF THE TREASURY; CHARLES RETTIG**,
in his official capacity as Commissioner of the
Internal Revenue; and **JANET YELLEN**[1], in
her official capacity as United States Secretary
of the Treasury

       *Defendants*

Civil Action No. 1:20-cv-1544 CKK

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Jannet Yellen, in her official capacity as Secretary of Treasury, has been substituted as a defendant in place of former Secretary of Treasury, Steven Mnuchin.

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND PROCEDURAL HISTORY ........................................................... 1

II.   ARGUMENT ..................................................................................................................... 2

   A.   PLAINTIFFS HAVE ARTICLE III STANDING TO MAINTAIN THIS LAWSUIT ... 2

      1.   THE *SILVER I* COURT MISINTERPRETED THE RFA IN ITS STANDING ANALYSIS .................................................................................................................. 2

      2.   *SILVER I* RULING ON ART. III STANDING HAS NO IMPACT ON THIS PROCEEDING BECAUSE GILTI IS AN ANNUAL, ONGOING OBLIGATION ............. 3

      3.   FUTURE INJURY IS NOT A PREREQUISITE FOR RELIEF UNDER 5 U.S.C. §611………………............................................................................................................. 5

   B.   PLAINTIFFS ARE REGULATED ENTITIES FOR THE PURPOSES OF THE RFA . 8

      1.   PLAINTIFFS FALL WITHIN THE ZONE OF INTERESTS OF THE RFA ............. 8

      2.   IN THE CASE OF SUBPART F STATUTES AND REGULATIONS, WHERE TAX LAW DISREGARDS THE CORPORATE ENTITY, PLAINTIFFS ARE AN INTEGRATED ENTITY FOR RFA PURPOSES ............................................................. 13

III.   THE DETRIMENTAL IMPACT OF THE *SILVER I* RULING ...................................... 15

IV.   CONCLUSION ............................................................................................................... 15

i

## I.   INTRODUCTION AND PROCEDURAL HISTORY[2]

In accordance with the Court's April 9, 2021 minute order, Plaintiffs are pleased to submit this "supplemental brief specifically addressing the impact of Judge Mehta's most recent opinion in _Silver, et al. v. IRS, et al_., No. 1:19-cv-247-APM" ("_Silver I_") on "Defendants' pending Motion to Dismiss."

Defendants filed their motion to dismiss ("MTD") in this proceeding on August 24, 2020 (ECF 9). Plaintiffs filed their memorandum in opposition ("Opposition") on September 9, 2020 (ECF 10).

On March 28, 2021, the Court in _Silver I_ issued a Memorandum Opinion (the "Opinion") – _Silver, et al. v. IRS, et al._, 2021 WL 1180081 (D.D.C. Mar. 28, 2021) – and Order (ECF 68) (the "Order") denying Plaintiffs' motion for Summary Judgment (ECF 47) and granting Defendants' Cross-Motion for Summary Judgment (ECF 57).

As shown below, the _Silver I_ ruling does not have any significant impact on the current lawsuit which challenges a completely different set of regulations. Whereas _Silver I_ dealt with regulations promulgated under the section 965 of the Code, better known as the one-time transition tax, the regulations at issue here have been issued under the section 951A of the Code ("GILTI") which is an annual, on-going obligation.

In addition, the findings in _Silver I_ are also wrong. The court in _Silver I_ erroneously ruled that Plaintiffs lacked Art. III standing. The court in _Silver I_ also erroneously concluded that Plaintiffs failed to state a claim under the Regulatory Flexibility Act ("RFA") because they are not

---

[2] All abbreviations and terms, unless otherwise indicated, are the same as those used in Plaintiffs' pleadings, motion papers and related submissions.

"regulated entities." Concomitantly with the submission of this Supplemental Brief, Plaintiffs are filing a motion for reconsideration in *Silver I*.  Should the *Silver I* court deny their motion, they will file an appeal to the D.C. Circuit.

## II.   ARGUMENT

### A.  PLAINTIFFS HAVE ARTICLE III STANDING TO MAINTAIN THIS LAWSUIT

#### 1.  THE *SILVER I* COURT MISINTERPRETED THE RFA IN ITS STANDING ANALYSIS

In its December 24, 2019 Order denying the Government's motion to dismiss in *Silver I* (ECF 29), the court found that Plaintiffs have Article III standing. In that Order, the *Silver I* court agreed with the parties that the injury at bar is best classified as a "procedural" injury, *i.e.*, "an injury resulting from the violation of a procedural right created by statute." *Id.* The "injury-in-fact" identified was the compliance costs associated with "the TCJA's transition tax regulations." *Id*. The Court also found that there was a causal connection between the injury and Defendants' alleged failure to undertake an RFA analysis and determined that Plaintiffs established standing. *Id*. Notably, at the motion to dismiss stage, the court stated that the redressability standard was relaxed because the injury at issue was "procedural." *Id*.

At the summary judgment stage, the *Silver I* court revisited the issue of Article III standing. In this regard, the Court elected to analyze Plaintiffs' requested relief as retrospective and prospective.  The *Silver I* court's rationale is confusing and ultimately set the stage for an erroneous conclusion. On the one hand, the court described Plaintiffs' request that the Section 605(b) certification be declared insufficient and the Final Regulations be remanded back to the agency to comply with the RFA as "retrospective." On the other hand, Plaintiffs' request that enforcement of the Final Regulations be deferred was deemed by the Court as "prospective" relief, akin to an

2

injunction. The court made this distinction even though both forms of relief are expressly referred to in 5 U.S.C. §611 without any qualification as to time. Plaintiffs never made any requests for retrospective or prospective relief. Plaintiffs simply asked the *Silver I* court for the statutory relief mandated by the RFA, Section 611.

In their MTD in this litigation, Defendants take a different track.  They contend that Plaintiffs lack Art. III standing because any burdens suffered by Plaintiffs stem from the GILTI *statute*, not the GILTI Regulations. *See* <u>MTD</u>, at 14-21. A similar argument was made and rejected in *Silver I*. In their Opposition to the MTD [ECF 10], Plaintiffs have already shown why this argument fails. [*Id*., at 15-20].  Defendants have **not** argued here that Plaintiffs lack Art. III standing on the grounds based on the Opinion in *Silver I*.  Nor, as we explain below, could they. Nevertheless, due to the *Silver I* court's ruling, and because Defendants are likely to invoke this argument in their supplemental brief, Plaintiffs address this issue.

2. ___*SILVER I* RULING ON ART. III STANDING HAS NO IMPACT ON THIS PROCEEDING BECAUSE GILTI IS AN ANNUAL, ONGOING OBLIGATION___

The GILTI Regulations, unlike the Transition Tax Regulations at issue in *Silver I*, do not concern a one-time transition tax, but contemplate annual compliance into the future. *See* Complaint, ECF 1, at ¶37. Therefore, *Silver I* has no impact whatsoever on Plaintiffs' Art. III standing in this case. Here, it cannot be seriously disputed that Plaintiff Silver and his CFC, Silver Limited, will be forced to collect and report information concerning GILTI income for the foreseeable future and therefore will be required to incur compliance costs to meet these informational collection and reporting obligations.  *See also* Complaint, ECF 1, at ¶¶32, 38.  *Silver I*'s discussion of Article III standing both in terms of redressability and future injury is therefore completely distinguishable and irrelevant to the GILTI regulation at issue in this case.

As discussed in more detail below, this future injury principally affects the CFC. To be sure, the GILTI *tax* is ultimately paid by the U.S. individual shareholder. However, all the compliance costs fall almost exclusively on the CFC, like Silver Limited.[3] Plaintiffs respectfully refer the Court to a chart attached here as **Exhibit "A"** describing the various essential obligations imposed on a CFC like Silver Limited under the GILTI tax regime. Without investing substantial resources in tax/accounting work, the CFC cannot provide the end data to the U.S. shareholder. Without this data, the U.S. shareholder cannot comply.  To say that the CFC does not have to comply and does not incur injury as a direct result of the GILTI Final Regulations is, simply stated, fictional.

Furthermore, Plaintiffs' future GILTI compliance costs will be fully redressable by an order issued by this Court granting Plaintiffs the prayed-for relief.  An order remanding the GILTI Regulations to the IRS to properly comply with the requirements of RFA Sections 604, 605 and

---

[3] In this regard, we refer the Court to the Small Business Regulatory Enforcement Fairness Act, 142 CONG. REC. SENATE, No. 46 at S3245 (daily ed., Mar. 29, 1996) where it was stated that:

> […] most IRS interpretative rules involve some aspect of defining or establishing requirements for compliance with the Code, or otherwise require small entities to maintain records to comply with the Code, and would now be covered by the RFA. One of the primary purposes of the RFA is to reduce the compliance burdens on small entities whenever possible under the statute. **To accomplish this purpose, the IRS should take an expansive approach in interpreting the phrase "collection of information" when considering whether to conduct a regulatory flexibility analysis**.

> *Emphasis added*.

In the RFA/GILTI context, the CFCs obligations to collect information on behalf of its shareholder(s) should and is included in the scope of the RFA.

212,[4] and deferring the effectiveness of such Regulations for small entities will cure the procedural infraction caused by the Government's failure to comply with Section 605(b). In addition, the sought-after relief will enable the Plaintiffs and those similarly situated to avoid incurring compliance costs until such time as the Government has met its obligations under the RFA to conduct a proper regulatory flexibility analysis assessing the impact of the Regulations upon small entities.

Accordingly, to the extent that this Court determines that future injury is required to establish Art. III standing, it is clearly established in the GILTI context both respect to injury-in-fact and redressability, and both with respect to Plaintiff Silver and his CFC, Plaintiff Limited.

### 3.   FUTURE INJURY IS NOT A PREREQUISITE FOR RELIEF UNDER 5 U.S.C. §611

While in the GILTI context Plaintiffs have adequately alleged that they will suffer future injury, Plaintiffs nevertheless maintain that future injury is **not** a prerequisite for relief under Section 611 of the RFA.[5] Plaintiffs consistently asserted this position in *Silver I* as well. Counsel

---

[4] Section 212 requires Defendants to publish guides to assist small entities in complying with their promulgated rules. Section 212 was enacted as part of the Small Business Regulatory Enforcement Fairness Act of 1996, codified as a Note to 5 U.S.C. §601.

[5] In addition to this argument, Plaintiffs make two additional arguments in their Motion for Reconsideration in *Silver I*. There, Plaintiffs argue that the court erred in finding that the Transition Tax does not impose future compliance costs. This is manifestly incorrect. As discussed in Plaintiffs' Motion for Reconsideration, the Transition Tax Regulations directly impose future compliance costs because Plaintiff Silver is required to make an election under Section 962 in order to be able to make use of foreign tax credits to which Sliver Ltd. was entitled in order to set off liability for the Transition Tax. Notably, the *Silver I* court agreed that an eight-installment payment election "would create forward-looking burdens" that would satisfy standing. *See* Hr'g Tr., at 29.

In addition, in their Motion for Reconsideration, Plaintiffs argue that the *Silver I* court's ruling concerning the redressability prong of Art. III standing can easily be remedied by requesting nominal damages. In *Silver I*, Plaintiffs have moved for leave to file an amended complaint adding a prayer for relief in the form of nominal damages to cure any possible defect in Art. III redressability. This argument is based on the Supreme Court's March 8, 2021 decision in

for Plaintiffs reasserted this argument and clarified it during oral argument, in response to a question raised by the *Silver I* court. *See* Hr'g Tr., at 41-42. Counsel explained that the remand and deferral remedies under 5 U.S.C. §611 are not injunctions in the classical or conventional sense. Rather they are specific statutory remedies unique to the RFA, added by Congress in the 1996 Amendment precisely to give aggrieved small businesses the ability to seek judicial review of what Congress recognized as a blatant disregard by federal agencies of the procedural minimal laid down in the original 1980 legislation.

During oral argument, Judge Mehta in *Silver I* responded to this contention as follows:

> So the question of whether, like an injunction, the statutory remedy that you've identified -- and I appreciate you flagging it -- for standing purposes, whether that requires future injury or not, I have to think about that.

Ultimately, however, the court declined to consider Plaintiffs' argument because they had raised the argument "for the first time at oral argument" (Opinion, at fn. 5). In fact, however, from the very commencement of the *Silver I* litigation, Plaintiffs maintained that RFA relief is not conditioned on future injury. Moreover, in *Silver I*, like here, Plaintiffs did not seek injunctive relief. In *Silver I*, as here, nowhere in their original complaint (ECF 1) or in the amended complaint (ECF 5) is there any prayer for injunctive relief as such. Plaintiffs only requested that the Court grant the remedies set forth in Section 611. The same is true for the present litigation challenging the GILTI Final Regulations.

Section 611 provides in relevant part:

> For any rule subject to this chapter, a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency

---

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), where the Court held a request for nominal damages satisfies the redressability element necessary for Article III standing where a plaintiff's claim is based on a violation of a legal right.

compliance with the requirements of sections 601, 604, 605(b), 608(b), and 610 in accordance with chapter 7 […]

In granting any relief in an action under this section, the court shall order the agency to take corrective action consistent with this chapter and chapter 7, including, but not limited to—

(A)      remanding the rule to the agency, and

(B)      deferring the enforcement of the rule against small entities unless the court finds that continued enforcement of the rule is in the public interest.

5 U.S.C. §611(a)(1) & (4).

Nothing in the language of the statute suggests that Congress wished to treat Section 611 as "prospective" relief equivalent to an injunction.  The plain meaning of Section 611 comports with the Congressional intent in amending the RFA to protect small businesses from overreaching and burdensome government regulations.  *See* Small Business Regulatory Enforcement Fairness Act--Joint Managers Statement of Legislative History and Congressional Intent, 142 CONG. REC. S3245 (daily ed. Mar. 29, 1996).  From the very outset, Congress made it clear that forcing small entities to incur compliance costs routinely absorbed by large enterprises was an evil the RFA was intended to avert.[6]  When the RFA was amended in 1996 to include judicial recourse for the very procedural misconduct complained of in this case [*i.e.,* mis-certification under Section 605(b)], Congress did not anticipate that courts would circumvent judicial review by reimposing procedural hurdles based on equity practice and the law of injunctions.[7]

---

[6] Congressional Findings and Declaration of Purpose, Pub. L. 96–354, §2, Sept. 19, 1980, 94 Stat. 1164, published as a Note to 5 U.S.C. §601 ("The Congress finds and declares that uniform Federal regulatory and reporting requirements have in numerous instances imposed unnecessary and disproportionately burdensome demands including legal, accounting and consulting costs upon small businesses […] with limited resources.").

[7] The result of applying the Court's logic to Section 611 is that plaintiffs who can prove past injury will be entitled to relief under 611(a)(4)(A), but **NOT** 611(a)(4)(B). Nothing in the statute suggests

Likewise, this Court should not treat relief under Section 611 as injunctive, requiring plaintiffs to allege and prove future injury.[8] Such an interpretation of the RFA would recreate, by judicial fiat, the same sort of procedural impediments and disincentives for small entities that the RFA was enacted to ameliorate.

In sum, future injury is not a prerequisite for statutory relief under RFA, Section 611.  To the extent that the Court agrees with *Silver I* that future injury is necessary for Art. III standing in respect of prospective relief, regardless of the plain meaning of Section 611, Plaintiffs have adequately pled such injury in relation to the GILTI Regulations given the ongoing compliance demands and attendant costs traceable directly to those Regulations. Finally, a court order granting Plaintiffs the relief prayed for under the RFA will adequately redress the harm alleged.  *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 572, n. 7 (1992) (redressability is relaxed where standing is predicated on procedural injury).

### B.  PLAINTIFFS ARE REGULATED ENTITIES FOR THE PURPOSES OF THE RFA

### 1.  PLAINTIFFS FALL WITHIN THE ZONE OF INTERESTS OF THE RFA

In its Opinion, the *Silver I* court found that to state a claim under the RFA, the plaintiff must be "subject to" the challenged regulation. Opinion, at *13. The court described this threshold argument as a matter of "statutory standing" which, the court noted, "the Supreme Court has

---

that Congress intended to bifurcate the different forms of relief and make them available to some small businesses, but not others.

[8] However, as discussed above, under the GILTI regime, Plaintiffs will, without question, incur *future* compliance costs.

clarified is not jurisdictional but rather a question of whether Plaintiffs have a cause of action under the statute." Opinion, at *12, *citing* Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc., 572 U.S. 118, 128 & n. 4 (2014). Ultimately, the *Silver I* court found that Silver Limited is not "subject to" the Transition Tax Regulations and therefore is not a "regulated" entity because "nothing within the transition tax regulations directs a foreign company to take any action." Opinion, at *14.  As a result, in that court's view, Silver Limited lacks statutory standing and a cause of action under the RFA in regard to the Transition Tax Regulations.  Given the content of the GILTI Regulations at issue in this case, the holding of the court in *Silver I* is both inapposite and, in any event, wrong.

Preliminarily, we note that Defendants have never contended- either in *Silver I* or here – that the Plaintiffs are not "regulated" entities for purposes of the RFA.[9] In fact, in *Silver I*, Defendants admitted that Silver Limited, as a CFC, is governed by the law and is "subject to" the challenged regulations. *See* Opinion, at *13 (discussing Defendants' apparent concession in this matter). This issue was raised for the first time, *sue sponte,* by the *Silver I* court during oral argument. *See* Hr'g Tr., at 4. In any case, because the *Silver I* court based its Opinion on this matter and because Defendants are likely to invoke it in their supplemental brief, we shall discuss it here.

As the Supreme Court has explained, a "statutory standing" analysis asks the question whether a plaintiff fall within the "zone of interests" of the statute at issue. *See* Lexmark, at 131; *See also*, Permapost Prod., Inc. v. McHugh, 55 F. Supp. 3d 14, 30 (D.D.C. 2014) (describing the issue in terms of "zone of interests.").  Thus, Limited's "statutory standing" is a function of whether it falls within the "zone of interests" to be protected by the RFA.  That, as we show below, is a very lenient inquiry that sets a low bar.

---

[9] Defendants' arguments focused exclusively on whether the Plaintiffs are "small entities," not whether they are "regulated" entities.

Under the "zone of interests" approach, a statutory cause of action extends only to plaintiffs whose interests "fall within the zone of interests protected by the law invoked." *Id*., citing *Allen v. Wright*, 468 U.S. 737 (1984). In the APA/RFA[10] context, that test is not "especially demanding." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012). The zone of interest" test "forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that" Congress authorized that plaintiff to sue. *Id. See also Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev*., 2021 WL 184359, at *10 (D.D.C. Jan. 18, 2021) (finding that pro bono or low-cost counsel are within the "zone of interests" of the INA even though they are not regulated by it).

Here, each of the Plaintiffs in this case is directly impacted by the GILTI Regulations and hence fall well within the "zone of interests" protected by the RFA:

(i)    **Plaintiff Silver Limited**:

Plaintiff Limited is within the "zone of interests" of the RFA because its interests are directly and inherently related to and consistent with the purposes implicit in the statute such that it can be reasonably assumed that Congress authorized that type of plaintiff to sue. *Cf. Lexmark*, at 130. One need only glance at the GILTI statute to see how deep within the RFA/GILTI zone a CFC like Limited is. Plaintiffs again respectfully refer the Court to the chart attached as **Exhibit "A"** describing the various essential obligations imposed on a CFC under GILTI. The following are just a few examples:

(1) To calculate GILTI income one must know the CFC Gross Income less CFC expenses associated with this income, less net deemed tangible income return.

---

[10] RFA-related challenges are reviewed in accordance with the APA. 5 U.S.C. §611(a)(2).

(2) Qualified business asset investment is solely a function of the CFC's specified tangible property.

(3) "Specified tangible property" is solely a function of the CFC tangible property used in the  CFC's production of income

*See* also, fn. 2 above.

To be sure, the GILTI tax is ultimately paid by the U.S. shareholder. However, all of the highly complex accounting and compliance work which causes significant costs is done at the CFC level. In recognition that the "zone of interest" test sets a "low bar" (*Cath. Legal Immigr. Network, Inc.*, at 10.), a CFC in the GILTI context is far more within the "zone of interests" of the RFA than pro bono counsel in the INA context. Without investing substantial resources in tax/accounting work, the CFC cannot provide the end data to the U.S. shareholder.  Without this data, the U.S. shareholder cannot comply.  To say that the CFC does not have to comply is to ignore the plain meaning of the TCJA and the Final Regulations. [11]

---

[11] The *Silver I* court cited *Mid-Tex Elec. Co-op., Inc. v. F.E.R.C*., 773 F.2d 327 (D.C. Cir. 1985) for the proposition that an entity is not "subject to" a regulation unless the regulation "imposes responsibilities directly on" the entity. Opinion, at *14. That case is clearly distinguishable. There, end-user wholesale customers of electric utilities whose wholesale rates were regulated by the Federal Energy Regulatory Commission challenged proposed rule allowing electric utilities to include in their rate bases amounts equal to 50% of their investments in construction work in progress. In *Mid–Tex*, FERC was not required to consider the indirect economic effects on the wholesale customers of the utilities or on the ultimate retail consumers, **neither of which was regulated by the challenged rule**. *Mid-Tex* and its progeny stand for the proposition that only "regulated" entities fall within the "zone of interests" of the RFA and may file suit. The plaintiffs in Mid-Tex and similar cases were neither the subject nor the target of the challenged regulation. Clearly, that is **NOT** the case in the GILTI context (nor for that matter in respect to the Transition Tax at issue in *Silver* I), where the foreign CFC is directly impacted by the challenged regulation, targeted by the challenged regulation and required to comply with the information collection and reporting requirements imposed by the GILTI Regulations and, as a result, will incur compliance costs.

(ii)   **Plaintiff Silver**:

There is no dispute that Plaintiff Silver, as the taxpayer, is a "regulated" entity for purposes of the Final Regulations. As a shareholder of the CFC, Silver is directly regulated by the GILTI Final Regulations. *See also*, <u>Opinion</u>, at *13 (finding that Silver is "subject to" the transition tax regulations).

However, in a case of first impression anywhere in the United States, the *Silver I* court held that Silver was not a "small business concern" for the purposes of the RFA (5 U.S.C. §601(6)) and SBA (15 U.S.C. §632(a)(1)) because he is not "individually owned and operated."[12] *See* <u>Opinion</u>, at *15.  In other words, the *Silver I* court held that a natural person cannot be a small business concern for the purposes of the SBA and, therefore, the RFA. This is plainly wrong. Silver, as the sole shareholder and operator of Limited, is not only "individually owned and operated," but is also in the business of managing and operating his professional corporation. Nothing in the statute or in the legislative history indicates that natural persons cannot qualify as "independently owned and operated."[13] Indeed, the most independently owned and operated business is, in fact, a natural

---

[12] 15 U.S.C. §632(a)(1) defines a small business concern as follows:

> For the purposes of this chapter, a small-business concern […] shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation.

There is no issue in this case regarding the "dominant in its field" prong. That Silver is not dominant in his field of operation is undisputed.

[13] Indeed, the SBA, the agency primarily responsible for administering the Small Business Act and related legislation, 15 U.S.C. §§631 and 633, has by regulation interpreted the phrase "small business concern" to include a "sole proprietorship," which by definition is a natural person.   13 C.F.R. §121.105.

individual. In this case of first impression, the Court did not support its naked conclusion with any legal, statutory, or administrative authority.[14]

Accordingly, both Plaintiffs fall within the "zone of interests" of the RFA in the GILTI context.

2. **IN THE CASE OF SUBPART F STATUTES AND REGULATIONS, WHERE TAX LAW DISREGARDS THE CORPORATE ENTITY, PLAINTIFFS ARE AN INTEGRATED ENTITY FOR RFA PURPOSES**

The Court also sought to justify its holding that neither Plaintiff is regulated for RFA purposes on the basis of the common law rule that treats a corporation and its shareholders as distinct juridical persons. The Court stated as follows:

> Such an argument—that a shareholder and a corporation should be viewed as one and the same—flies in the face of the longstanding principle that "[a] corporation is ordinarily to be viewed as a distinct entity, even when it is wholly owned by a single individual."

Opinion, at *14.

The application of the common law doctrine in the context of the RFA and the GILTI Regulations is misplaced. The Court's analysis ignores the manner in which CFCs and their U.S. stockholders are treated by the Government under Subpart F of the IRC.

Plaintiffs maintain that both the U.S. shareholder and the wholly owned CFC should be viewed as an integrated enterprise without regard to the corporate veil doctrine.  This follows inexorably from the GILTI statute and Final Regulations.   As is the case here, the GILTI statute

---

[14] The Court also concluded that Silver, as a sole proprietor, lacks statutory standing because "whatever status Silver may hold in relation to his real estate business is irrelevant to whether he qualifies as a small entity under the RFA for the purposes of this case." Opinion., at *15. However, Silver's capacity as a real-estate investor is not determinative.  What is relevant is Silver's capacity as a shareholder in his CFC, Silver Limited.

13

and Final Regulations disregard the corporate veil doctrine for tax purposes. This follows from the nature of the CFC as that concept is understood in American tax law.  Plaintiffs never suggested, nor do they suggest now, that courts should ignore the corporate veil separating shareholders from their corporation *for general liability purposes.*  In this case, however, the IRS treats the foreign corporation and its U.S. stockholder as an integrated enterprise.[15]

With the passage of the TCJA and the creation of the GILTI Tax, the IRS **undid** the corporate veil between U.S. shareholders and their CFCs in order to impose a tax of all undistributed and deferred earnings and profits. The Final Regulations and the statute which they implement make no sense unless they apply both to the U.S. stockholder and the foreign corporation as an integrated enterprise.  They are inseparable for tax purposes.  They should be treated no differently for the purposes of the RFA.

---

[15] *See* https://www.irs.gov/irm/part4/irm_04-061-007:

> The taxation of foreign income earned by foreign corporations owned by U.S. persons drastically changed with the introduction of subpart F into the Internal Revenue Code (IRC) in 1962. Subpart F deals with the U.S. taxation of amounts earned by CFCs. It provides that certain types of income of CFCs, though undistributed, must be included in the gross income of the U.S. shareholder in the year the income is earned by the CFC. Taxation of foreign income earned by CFCs also significantly changed with the passage of TCJA in late 2017. Certain previously deferred earnings were immediately taxable under the IRC 965 transition tax, and going forward, a new taxation subpart F regime was established for global intangible low-taxed income (GILTI) and a dividends received deduction for foreign source dividends were enacted.

*See also*, William W. Park, *Fiscal Jurisdiction and Accrual Basis Taxation: Lifting the Corporate Veil to Tax Foreign Company Profits*, 78 COLUM. L. REV. 1609 (1978).

### III.   **THE DETRIMENTAL IMPACT OF THE *SILVER I* RULING**

Under the *Silver I* ruling a U.S. individual shareholder and its foreign CFC are barred from bringing RFA lawsuits for Subpart F statutes and regulations promulgated thereunder. This was clearly not the intent of Congress when it enacted the RFA and amended it in 1996. This conclusion is at odds with the letter and spirit of the RFA; it should not be heeded to in this lawsuit challenging the GILTI Final Regulations.

### IV.   **CONCLUSION**

The Opinion in *Silver I* does not significantly impact the present proceeding. Based on Plaintiffs' Opposition and this Supplemental Brief, the Court is requested to deny Defendants' Motion to Dismiss.

Respectfully submitted,

<u>Date</u>: April 23, 2021.

/s/ *Lawrence Marc Zell*

_____

Lawrence Marc Zell (DC Bar # 959437)
Noam Schreiber, *of counsel*
**ZELL & ASSOCIATES INTERNATIONAL ADVOCATES LLC**
1345 Ave. of the Americas,
2nd Floor,
New York, NY 10105

*Counsel for Plaintiffs*