UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONTE SILVER, *et al.*,
    Plaintiffs

v.

INTERNAL REVENUE SERVICE, *et al.*
    Defendants.

Civil Action No. 20-1544 (CKK)

**MEMORANDUM OPINION**
(November 7, 2022)

This matter is before the Court on Defendants'[1] [9] Motion to Dismiss. Plaintiff Monte Silver and his Israeli tax firm Monte Silver, Ltd. (together, "Plaintiffs," separately "Silver" and "Silver, Ltd.") claim that Defendants violated the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.* by failing to issue a "final regulatory flexibility analysis" ("FRFA") as required when promulgating particular tax regulations. Because the Court agrees it lacks jurisdiction over this matter, and upon consideration of the pleadings,[2] the relevant legal authorities, and the entire record, the Court shall **GRANT** Defendants' [9] Motion to Dismiss.

---

[1] Defendants are the United States Internal Revenue Service ("IRS"), the United States Department of the Treasury ("Treasury"), Charles P. Rettig in his official capacity as Commissioner of Internal Revenue, and Janet L. Yellen in her official capacity as United States Secretary of the Treasury.

[2] The Court's consideration has focused on the following documents:
- Plaintiffs' Complaint, ECF No. 1 ("Compl.");
- Defendants' Memorandum in Support of Motion to Dismiss, ECF No. 9-1 ("Mot.");
- Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction, ECF No. 10 ("Pls.' Opp.");
- Defendants' Reply in Support of Motion to Dismiss, ECF No. 11 ("Repl.");
- Defendants' Supplemental Brief, ECF No. 16 ("Defs.' Supp. Br."); and
- Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion to Dismiss, ECF No. 17 ("Pls.' Supp. Br.").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

**I.     BACKGROUND**

For the purposes of the motion before it, the Court accepts as true the well-pleaded allegations in Plaintiffs' complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites only the background necessary for the Court's resolution of the pending Motion.

Before turning to the facts particular to this case, the Court must pause to note that Plaintiffs unsuccessfully maintained a very similar suit in this jurisdiction, *Silver v. IRS*, 19-cv-247 (APM) (D.D.C.) (*Silver I*). As here, Plaintiffs attempted to maintain a cause of action under the Regulatory Flexibility Act to vitiate a regulation effecting a provision of the Tax Cuts and Jobs Act, Pub. L. No. 115-97, 131 Stat. 2054 (2017) ("TCJA" or the "Act"). The Court in *Silver I* granted summary judgment in favor of the same defendants as here, concluding that Plaintiffs lacked Article III and statutory standing. *Silver v. IRS*, 569 F. Supp. 3d 5, 8-10 (D.D.C. 2021) *appeal docketed* No. 21-5116 (D.C. Cir. 2021). In that case, Plaintiffs argued that the Court should set aside a one-time "transition tax" imposed by a regulation effecting the TCJA, a tax to which Plaintiffs were not subject and never paid. *Id.* at 10.

Here, Plaintiffs challenge regulations effecting the TCJA's provisions revising the "global intangible low-taxed income" ("GILTI") of certain "controlled foreign corporations" ("CFC"). These tax provisions are complex, although their details are not particularly germane to this case. Suffice it to say, the TCJA changed the tax rate that a U.S. shareholder pays on the foreign earnings of a foreign corporation if those earnings are "repatriated" to the United States. *See* TCJA § 14101(a); 26 U.S.C. § 245A. In essence, the TCJA sets a GILTI rate that is a U.S.

2

shareholder's pro-rate share of the aggregate profit of its CFC(s) in excess of a ten percent return on the U.S. shareholder's pro-rate share of the CFC's tangible assets.  On June 21, 2019, Defendants IRS and Treasury promulgated regulations under the broad heading "Guidance Related to Section 951A (Global Intangible Low-Taxed Income), 84 Fed. Reg. 29288-01. Among other things, it provides instructions on how to calculate a GILTI amount, what domestic entities are subject to GILTI on foreign earnings, and also imposed certain reporting requirements.  *See* 83 Fed. Reg. 51072, 51072-73 (Oct. 10, 2018) (proposed rules).  Because these regulations define how GILTI is calculated, they determine, in part, the ultimate amount of tax paid.  *See, e.g.*, 26 C.F.R. § 1.951A-1(c) (effective Jan. 22, 2022).

Plaintiff Silver is a United States citizen residing in Israel.  Compl. ¶ 4.  Plaintiff Monte Silver, Ltd. is an Israeli corporation through which Silver provides legal services to, among others, United States citizens and companies.  Plaintiff Silver is the sole shareholder on Silver, Ltd..  There is no allegation that either Plaintiff is a U.S. taxpayer or subject to GILTI taxes.  Indeed, Plaintiff has conceded in his briefing that "Silver Ltd. cannot owe any GILTI taxes as the tax only applies to the U.S. shareholder." Opp. at 10 (emphasis original).  Plaintiffs further allege that they "have incurred and will continue to incur on-going compliance costs relating to GILTI into the future *even though they owe no GILTI tax*." *Id.* (emphasis added).  Again, Plaintiffs' sole claim is that the Court should set aside the GILTI regulations and remand to Treasury because Treasury did not conduct a FRFA pursuant to the FRA.  Neither Plaintiff advances any other claim.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984) ("It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists."). A court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1). *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("As it must on motions to dismiss for failure to state a claim, a district court considering a motion to dismiss for lack of subject matter jurisdiction accepts the allegations of the complaint as true."). "Where necessary to resolve a jurisdictional challenge under Rule 12(b)(1), 'the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id*. (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

4

U.S. at 678.  In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

### III. DISCUSSION

Defendants mount three main arguments in favor of dismissal: (1) lack of Article III standing; (2) lack of subject matter jurisdiction under the Anti-Injunction Act and the Declaratory Judgment Act; and (3) lack of statutory standing.[3]  First, unlike in *Silver I*, because Plaintiffs have pleaded that they face future injury, they have established Article III standing.  However, the Court concludes that the Anti-Injunction Act bars this action because the Plaintiffs aim to interrupt a tax rule governing who pays what amount of tax.  Because the Court lacks jurisdiction, the Court does not address statutory standing, an issue that goes to the sufficiency of Plaintiffs' claim and not to the Court's jurisdiction.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014).

#### A. Standing

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  To establish standing, Plaintiff bears the burden of demonstrating that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id*.  "This set for criteria implements Article III by limiting judicial

---

[3]  Initially, Defendants argued both that Plaintiffs lack standing to bring a claim under the RFA and the Paperwork Reduction Act.  Plaintiffs have since conceded that they do not attempt to bring a claim under the PRA, so that argument is moot.

5

intervention to only those disputes between adverse parties that are 'in a form . . . capable of judicial resolution.'" *Fl. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 218 (1974)). At the pleading stage, this requires Plaintiff to "'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Where a plaintiff challenges a regulation on a theory of procedural injury, the standing "requirements are modified somewhat." *Nat'l Wildlife Fed. v. U.S. Army Corps of Eng'rs*, 170 F. Supp. 3d 6, 11 (D.D.C. 2016). The plaintiff must show "*both* (1) that their procedural right has been violated, *and* (2) that the violation of that right has resulted in an invasion of their concrete and particularized interest." *Ctr. for L. and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1159 (D.C. Cir. 2005) (emphasis altered). Increased compliance costs as a result of a procedurally improper rule are sufficient to show such an injury. *E.g.*, *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C Cir. 2015); *Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 458 (D.C. Cir. 2012). Beyond injury, however, a plaintiff must further plead redressability, i.e., that "correcting the alleged procedural violation could still change the substantive outcome in the [plaintiff's] favor." *Narragansett Indian Tribal Historic Pres. Office v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020) (emphasis omitted).

Defendants argue that Plaintiffs have not pleaded an injury that the Court could conceivably redress, nor could Plaintiffs plead such an injury. Defendants insist that Plaintiffs complain only that the underlying GILTI statute is onerous and confusing, and that a remand would not rewrite the GILTI statute. Defs.' Supp. Br. at 3. Defendants misunderstand Plaintiffs' complaint.

6

Plaintiffs complain that they "have[] no idea how to comply [*both*] with GILTI [*and*] the Final Regulations." Compl. ¶ 37. They also argue that the instant regulations [are] "extremely complicated and lengthy," *see id.* ¶¶ 44-45, and that the lack of "any guide to assist small entities in complying with the Final Regulations," required under the RFA, has "adversely affected [and] aggrieved" Plaintiffs. *Id.* ¶¶ 48, 50. Plaintiff Silver explains in a supplemental declaration that, as a result, he and his "company . . . have been forced to spend funds, time[,] and effort to comply with GILTI." Declaration of Monte Silver, ECF No. 10-9, ¶ 12 ("Silver Decl."). As Plaintiffs argue on the merits, had Treasury issued a FRFA "to assist small entities in complying with the Final Regulations," Plaintiffs might spend less "funds, time, and effort to comply with GILTI" in the future. Because, GILTI compliance occurs annually—unlike the one-time fee in *Silver I*—the Court can fashion relief that could conceivably redress Plaintiffs' claimed injury. As such, the Court sees no Article III standing issues here.

### B. AIA

Next, Defendants argue that the Anti-Injunction Act and Declaratory Judgment Act strip the Court of subject matter jurisdiction. The Court agrees.

As the United States Court of Appeals explained in *Cohen*, the AIA excludes from the jurisdiction of the federal courts any action "to restrain[] the assessment or collection of any tax." 650 F.3d at 724 (quoting 26 U.S.C. § 7421(a)). "The AIA has 'almost literal effect': It prohibits only those suits seeking to restrain the assessment or collection of taxes." *Id.* (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737 (1974)). The AIA's main aim is to "protect[] the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund." *Bob Jones*, 416 U.S. at 736-37 (quoting *Enochs v. Williams*

*Packaging & Navigation Co.*, 370 U.S. 1, 7 (1962)). Interpreting *Bob Jones*, *Cohen* held that action seeking to set aside a regulation promulgated by Treasury to procedural failures, e.g., failure to provide sufficient notice and comment, is not an action "seeking to restrain the assessment or collection of taxes." *Id.* at 727. In other words, under *Cohen*, the AIA bars an action challenging a particular tax regulation only if it is concerned with "the trigger for levy and collection efforts" or "the actual imposition of a tax against a plaintiff, and [] not third-parties trying to contest the validity of a tax or to stop its collection." *Id.* at 726.

*Cohen*'s approach has since been complicated somewhat by the Supreme Court's decision in *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582 (2021), issued after the parties completed supplemental briefing. There, the Court reiterated that "a person can typically challenge a federal tax only after he pays it, by suing for a refund." *Id.* at 1486. To determine whether an action is precluded, a court must look to "the end or aim to which [the action] is directed." *Id.* at 1589. In other words, the court must look to "the claims brought[,] injuries alleged . . . [a]nd[,] most especially, . . . the relief requested." *Id.* at 1590 (internal quotation marks omitted). On the one hand, if, "look[ing] to the face of the taxpayer's complaint," the action seeks to set aside a rule but not enjoin the collection of a tax related to the rule, then the action is not barred by the AIA. *Id.* at 1590. On the other hand, "[i]f the dispute is about a tax rule," in other words, a revenue-raising rule, then "the sole recourse is to pay the tax and seek a refund." *Id.* at 1593. Applying this principle, the Court held that the AIA did not bar a suit challenging a regulatory reporting requirement because the plaintiff sought only to enjoin a regulation that did not govern the amount of tax collected or from whom. *See id.* at 1594.

Because neither Plaintiff appears to yet owe GILTI tax, this action presents rather more unique circumstances. Certainly, the regulation at issue here actually imposes tax obligations; it

8

is not, for example, concerned only with "the IRS's continued retention of [a taxpayer's] personal financial information" as a function of "information gathering." *See Harper v. Rettig*, 46 F.4th 1, 8 (1st Cir. 2022) (applying *CIC*, concluding that AIA did not bar such a challenge). At the same time, reading the complaint's requested relief, it is, in actuality, "a challenge to the assessment or collection of a tax itself." *See Franklin v. United States*, 49 F.4th 429, 434 (5th Cir. 2022) (applying *CIC*, AIA barred claim that penalty assessments were invalid under Administrative Procedure Act because injunctive relief would effectively bar collection of penalty tax).  The complaint asks that the Court "[d]efer enforcement of the final rule against Plaintiff and all other small entities until such time as the Court finds" the IRS has complied with applicable procedural requirements.  Compl. at 14.  Pursuant to the TJCA, the IRS must, among other things, promulgate "rules for the application of" some portions of the GILTI tax as defined by statute. *See* 26 U.S.C. § 951A(f)(b).  The IRS did precisely that in the challenged regulations, further defining what entities are subject to GILTI and what amount must be paid.  If the Court "defers enforcement" of the challenged regulations, then it enjoins the IRS and Treasury from collecting a tax in an amount and from entities that it has determined must pay the requisite amounts.

Pursuant to Supreme Court precedent, the Court must effect the AIA to "permit the United States to assess and collect taxes to be due without judicial intervention." *Enochs*, 370 U.S. at 7.  Particularly so here, where a challenge to a tax rule is not even brought by a plaintiff due to pay the challenged tax.  Because Plaintiffs have sued to block a rule governing who pays a tax and in what amount, *CIC* mandates that the Court dismiss the complaint as barred by the AIA.

9

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' [9] Motion to Dismiss and **DISMISSES** Plaintiffs' complaint for want of subject matter jurisdiction.  An appropriate order accompanies this Memorandum Opinion.

Dated: November 7, 2022

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge