# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SILVER, *et al.*,                              )
                                        )
      Plaintiffs,                          )
                                        )
      v.                                        )          No. 1:20-cv-1544-CKK
                                        )
INTERNAL REVENUE SERVICE, *et al.*,          )
                                        )
      Defendants.                          )
_____ )

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Dated: April 21, 2025

*/s/ Moira E. Goodwin*
MOIRA E. GOODWIN (DC Bar No 1780293)
LAURA M. CONNER (VA Bar No 40388)
Trial Attorneys, Tax Division
JOSEPH A. SERGI (DC Bar No 480837)
Senior Litigation Counsel
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
202-514-2986 (phone)
202-514-6866 (fax)
moira.e.goodwin@usdoj.gov
laura.m.conner@usdoj.gov
joseph.a.sergi@usdoj.gov

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................................. 1

II.   Background. ................................................................................................. 1

   a.   The GILTI regime. .................................................................................. 1

   b.   Procedural history. ................................................................................ 4

III.  Standards of review. .................................................................................. 4

IV.   Argument ..................................................................................................... 6

   a.   Plaintiffs lack Article III standing. ....................................................... 7

      i.   Plaintiffs' injuries are not caused by the challenged regulations, nor can they be redressed by this action. ............................................................... 7

   b.   Artful pleading cannot circumvent the Anti-Injunction Act, which continues to bar this suit. ...................................................................................... 13

      i.   The AIA bars all suits to restrain tax assessment, which this suit continues to be. ..................................................................................................... 14

      ii.  No exception to the AIA applies ........................................................ 17

   c.   Plaintiffs have failed to state a claim under the RFA, the PRA, or the APA. 20

      i.   Plaintiffs have failed to state a claim under the RFA. ....................... 21

      ii.  Plaintiffs have failed to state a claim under the PRA. ....................... 25

      iii. Plaintiffs have failed to state a claim under the APA. ....................... 26

V.    Conclusion. ............................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeronautical Repair Station Ass'n, Inc. v. FAA,*
  494 F.3d 161 (D.C. Cir. 2007) .............................................................. 23

*Alegent Health-Immanuel Med. Ctr. v. Sebelius,*
  34 F. Supp. 3d 160 (D.D.C. 2014) ................................................. 26, 27

*Alexander v. Ams. United,*
  416 U.S. 752 (1974) ........................................................................... 16

*Ambort v. United States,*
  392 F.3d 1138 (10th Cir. 2004) ......................................................... 18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................. 5

*Asociacion de Reclamantes v. United Mexican States,*
  735 F.2d 1517 (D.C. Cir. 1984)............................................................ 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................. 5

*Block v. Comty. Nutrition Inst.,*
  467 U.S. 340 (1984) ........................................................................... 27

*Blue v. District of Columbia,*
  811 F.3d 14 (D.C. Cir. 2015) ............................................................. 21

*Cement Kiln Recycling Coal. v. EPA,*
  255 F.3d 855 (D.C. Cir. 2001) ..................................................... 23, 24

*CIC Servs., LLC v. Internal Revenue Serv.,*
  593 U.S. 209 (2021) ............................................................... 15, 16, 17

*Cohen v. United States,*
  578 F.3d 1 (D.C. Cir. 2009) ............................................................... 14

*Cohen v. United States,*
  650 F.3d 717 (D.C. Cir. 2011) ..................................................... 14, 18

*Comm'r v. Lane-Wells Co.,*
  321 U.S. 219 (1944) ........................................................................... 11

*Confederated Tribes & Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau,*
843 F.3d 810 (9th Cir. 2016) .................................................................... 18

*Ctr. for Biological Diversity v. EPA,*
861 F.3 174, 182 (D.C. Cir. 2017)........................................................... 8

*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.,*
585 F. Supp. 3d 63 (D.D.C. 2022) .......................................................... 4

*Ctr. for Law & Educ. v. Dep't of Educ.,*
396 F.3d 1152 (D.C. Cir. 2005)............................................................. 12

*Educo v. Alexander,*
557 F.2d 617 (7th Cir. 1977) ................................................................. 15

*Fla. Audubon Soc. v. Bentsen,*
94 F.3d 658 (D.C. Cir. 1996) (en banc) ................................................. 8

*Fla. Bankers Ass'n v. U.S. Dep't of the Treasury,*
799 F.3d 1065 (D.C. Cir. 2015)............................................................. 15

*Flora v. United States,*
362 U.S. 145 (1960) .............................................................................. 19

*Gregorio v. Hoover,*
238 F. Supp. 3d 37 (D.D.C. 2017) ........................................................... 5

*Helvering v. Mitchell,*
303 U.S. 391 (1938) .............................................................................. 11

*Hemp Indus. Assoc. v. DEA,*
36 F.4th 278 (D.C. Cir. 2022) ................................................................. 5

*Jud. Watch v. Rossotti,*
317 F.3d 401 (4th Cir. 2003) ................................................................. 18

*Krishnan v. Foxx,*
177 F. Supp. 3d 496 (D.D.C. 2016) ................................................. 24, 25

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ................................................................................ 7

*Maze v. Internal Revenue Serv.,*
862 F.3d 1087 (D.C. Cir. 2017)............................................................. 20

*Moore v. United States,*
  36 F.4th 930 (9th Cir. 2022), *aff'd*, 602 U.S. 572 (2024) ........................................ 1

*N.C. Fisheries Ass'n, Inc. v. Gutierrez,*
  518 F. Supp. 2d 62 (D.D.C. 2007) ....................................................................... 22

*Narragansett Indian Tribal Historic Pres. Off. v. FERC,*
  949 F.3d 8 (D.C. Cir. 2020) ................................................................................ 12

*Nat'l Wildlife Fed'n v. Lohr,*
  2024 WL 4443687 (D.D.C. Oct. 8, 2024) ............................................................ 17

*Nat'l Taxpayers Union, Inc. v. United States,*
  68 F.3d 1428 (D.C. Cir. 1995) ............................................................................. 18

*Nunes v. WP Co. LLC,*
  513 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................... 5

*Optimal Wireless LLC v. Internal Revenue Serv.,*
  77 F.4th 1069 (D.C. Cir. 2023) ...................................................................... 15, 20

*Perrigo Rsch. & Dev. Co. v. U.S. F.D.A.,*
  290 F. Supp. 3d 51 (D.D.C. 2017) ............................................................... 5, 6, 20

*RYO Mach., LLC v. U.S. Dep't of Treasury,*
  696 F.3d 467 (6th Cir. 2012) ............................................................................... 18

*Sickle v. Torres Advanced Enter. Sols., LLC,*
  884 F.3d 338 (D.C. Cir. 2018) ........................................................................ 5, 23

*Silver v. Internal Revenue Serv.,*
  2024 WL 1697436 (D.C. Cir. Apr. 19, 2024) ........................................................ 4

*Snyder v. Marks,*
  109 U.S. 189 (1883) ...................................................................................... 15, 18

*South Carolina v. Regan,*
  465 U.S. 367 (1984) .................................................................................. 4, 17, 18

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
  985 F.3d 1032 (D.C. Cir. 2021) ........................................................................... 17

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) .............................................................................................. 8

*United States v. Clintwood Elkhorn Mining Co.,*
  553 U.S. 1 (2008) ................................................................................................. 19

**Statutes**

U.S.C. 701(a)(1) .................................................................................................. 27

5 U.S.C. § 601 .............................................................................................. 21, 25

5 U.S.C. § 605(b) ............................................................................. 8, 21, 24, 25

5 U.S.C. § 611(a)(1) .......................................................................................... 21

15 U.S.C. § 632(a)(1) ................................................................................. 21, 22

28 U.S.C. § 1346(a)(1) ...................................................................................... 19

28 U.S.C. § 2201(a) (Declaratory Judgment Act) ............................ 6, 7, 13, 14, 15, 16

44 U.S.C. § 3502(3)(A) ...................................................................................... 27

I.R.C. § 951(b) ................................................................................................... 12

I.R.C. § 951A ................................................................ 1, 2, 3, 6, 9, 11, 12, 16, 19, 22

I.R.C. § 953(c)(8)(B) .......................................................................................... 12

I.R.C. § 959 .......................................................................................................... 2

I.R.C. § 6038 ...................................................................................................... 10

I.R.C. § 6201(a)(1) ............................................................................................. 16

I.R.C. § 7421(a) (Anti-Injunction Act) ......................... 4, 6, 7, 13, 14, 15, 16, 17, 18, 20

I.R.C. § 7422(a) ................................................................................................. 19

Administrative Procedure Act ................................................ 1, 7, 16, 17, 20, 21, 26, 27

Paperwork Reduction Act ............................................ 1, 4, 6, 7, 14, 18, 20, 21, 25, 26, 27, 28

Regulatory Flexibility Act .......................... 1, 3, 4, 6, 7, 8, 14, 18, 21, 22, 23, 24, 25, 26

Small Business Act ...................................................................................... 21, 22

**Other Authorities**

13 C.F.R. § 121.105 ........................................................................................... 22

26 C.F.R. 1.951A-3(e)(3)(ii) .............................................................................. 10

26 C.F.R. 1.6038-2(a) ................................................................................. 10

26 C.F.R. 1.6038-5(a) ................................................................................. 10

Federal Rule of Civil Procedure 12(b)(1) ................................................... 4, 5

Federal Rule of Civil Procedure 12(b)(6) ................................... 5, 21, 24, 25

Monte Silver, *GILTI Regulations Are a Big Win for Small Businesses*,
    Jerusalem Post, July 24, 2020, WLNR 21922493,
    https://perma.cc/53EN-8CKU .............................................................. 20

www.irs.gov/Form8992 ............................................................................... 26

## I.     Introduction.

In 2017, Congress enacted I.R.C. § 951A to change the taxation of certain income earned by certain foreign corporations. In response, Treasury promulgated comprehensive regulations to implement the statute and assist taxpayers who must calculate and pay the tax. Plaintiffs Monte Silver ("Plaintiff Silver") and Monte Silver, LTD. ("Plaintiff Limited") disagree with the statute, its underlying policy, and its failure to exempt them and others similarly situated from its scope. Lacking any remedy against a lawfully enacted statute, they have challenged the regulations. They allege the regulations violate the Regulatory Flexibility Act ("RFA"), Paperwork Reduction Act ("PRA"), and Administrative Procedure Act ("APA"). Because they cannot establish jurisdiction and fail to state a claim, the Court should dismiss.

## II.     Background.

### a.  The GILTI regime.

In the 2017 Tax Cuts and Jobs Act ("TCJA"), Congress significantly changed the taxation of foreign-based income. Pub. L. No. 115-97, §§ 14101-14502, 131 Stat. 2054, 2189-2235. Among those changes, Congress enacted I.R.C. § 951A, which defines the "global intangible low-tax income" ("GILTI") of U.S. shareholders of "controlled foreign corporations" ("CFCs").

As a general matter, prior to the TCJA (and outside of subpart F), U.S. taxpayers holding shares in foreign corporations were not subject to U.S. income tax on the income of those corporations until the earnings were distributed to them as dividends or effectively repatriated as a loan. *See Moore v. United States*, 36 F.4th

1

930, 933 (9th Cir. 2022), *aff'd*, 602 U.S. 572 (2024). The TCJA "transformed U.S. corporate taxation from a worldwide system . . . toward a territorial system." *Id.* As part of that shift, § 951A requires a U.S. shareholder of a CFC to include GILTI in its gross income, regardless of whether the shareholder received the income. *See* I.R.C. § 951A(a). The GILTI generally amounts to a U.S. shareholder's pro-rata share of the aggregate profit of its CFC(s) minus a ten percent return on the U.S. shareholder's pro-rata share of its CFC(s)' tangible assets. *Id.* § 951A(b)–(d).

The idea is income generated from intangible assets—things like intellectual property—is harder to locate, track, and quantify. Thus, the GILTI is determined from a process of exclusion; shareholders start with the CFC's total income (excluding amounts otherwise taxed), minus an amount tied to the CFC's tangible assets, and the remainder represents the GILTI. *See generally* B. Bittker & L. Lokken, Federal Taxation of Income, Estates and Gifts ¶ 69A.1–69A.5 (2024). And while U.S. shareholders must include GILTI each year regardless of whether the CFC passed on its earnings, whenever distributions are eventually made, the U.S. shareholder is not subject to additional tax on any amounts previously included in GILTI. *See* I.R.C. § 959.

That said, neither the technical explanation of the statute nor its underlying tax policy is relevant to this action. Though (we submit) the culprit of Plaintiffs' troubles is the concededly complex statutory scheme, they have opted to direct their challenge at the regulations Treasury promulgated to help the taxpayers that must comply with it. Treasury proposed GILTI regulations on October 10, 2018, and,

after public comments—including from Plaintiff Silver—and a hearing,

promulgated final GILTI regulations on June 21, 2019.[1]

The GILTI regulations flesh out the statute's general rules and definitions,

walk through hypothetical GILTI computations, provide guidance for consolidated

groups and partnerships, create anti-avoidance rules, expand existing reporting

requirements, and reconcile certain § 951A provisions with other sections of the Tax

Code. *See generally* Ex. 3. The final regulations largely track the proposed

regulations, but Treasury incorporated important changes in response to public

comments, including with respect to the treatment of domestic partnerships, the

interactions with existing subpart F rules, and the scope of the anti-abuse

provisions. Plaintiffs do not challenge any substantive aspect of the regulations, nor

do they raise any notice-and-comment or specific arbitrary-and-capricious

challenge.

In both the notice of proposed rulemaking and the final regulation, Treasury

certified under the RFA that the proposed rules would not have a significant

economic impact on a substantial number of small entities. *See* Ex. 2 at 51087; Ex. 3

at 29333.

─────────────────────

[1] The notice of proposed rulemaking can be cited as Guidance Related to Section
951A (Global Intangible Low-Taxed Income), 83 Fed. Reg. 51,072 (proposed Oct. 10,
2018) (to be codified at 26 C.F.R. pt. 1). For the Court's convenience, the full text of
the NPRM is attached as Exhibit 2. The final rulemaking can be cited as Guidance
Related to Section 951A (Global Intangible Low-Taxed Income) and Certain
Guidance Related to Foreign Tax Credits, 84 Fed. Reg. 29,288 (June 21, 2019)
(codified at 26 C.F.R. pt. 1). For the Court's convenience, the full text of the final
rulemaking is attached as Exhibit 3.

### b. Procedural history.

Plaintiffs filed this action under the RFA, asking the Court to defer

enforcement of the GILTI regulations for their failure to include a final regulatory

flexibility analysis. D.E. 25 at 3. While Plaintiffs initially advanced a claim under

the PRA, they abandoned the claim, which mooted further consideration by the

Court. *Id.* at 5 n.3.

The government moved to dismiss for (1) lack of Article III standing;

(2) application of the Anti-Injunction Act; and (3) lack of statutory standing under

the RFA. *See* D.E. 9-1. The Court determined Plaintiffs established Article III

standing, but granted the motion to dismiss, holding the Anti-Injunction Act barred

the action "because the Plaintiffs aim to interrupt a tax rule governing who pays

what amount of tax." D.E. 25 at 5.

Plaintiffs appealed to the D.C. Circuit, which vacated the dismissal order and

remanded to this Court for further factual development regarding the *South

Carolina v. Regan* exception to the Anti-Injunction Act. *See Silver v. Internal

Revenue Serv.*, 2024 WL 1697436, at *1 (D.C. Cir. Apr. 19, 2024) (citing 465 U.S.

367 (1984)). On remand, Plaintiffs opted to amend their complaint, which

Defendants now move to dismiss.

### III.  Standards of review.

Defendants move to dismiss this action for lack of subject-matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs bear the burden to

establish subject-matter jurisdiction. *Ctr. for Biological Diversity v. U.S. Int'l Dev.

Fin. Corp.*, 585 F. Supp. 3d 63, 69 (D.D.C. 2022). In reviewing the motion to dismiss,

the Court should "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Hemp Indus. Assoc. v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (cleaned up). "But the court need not accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 44 (D.D.C. 2017) (cleaned up); *see also Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1519 n.1 (D.C. Cir. 1984) (noting that "for purposes of a Rule 12(b)(1) motion [a court] need not accept as true the plaintiffs' version of controverted jurisdictional facts").

Additionally, Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). A complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As under Rule 12(b)(1), the Court must accept Plaintiffs' facts as true. *See Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 370 (D.C. Cir. 2018). But the Court need not accept "a legal conclusion couched as a factual allegation," *Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1, 5 (D.D.C. 2020) (cleaned up), nor must the Court "accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint," *Perrigo Rsch. & Dev. Co. v. U.S. F.D.A.*, 290 F. Supp. 3d 51, 60 (D.D.C. 2017). Finally, a pleading "must offer more than labels and conclusions or a formulaic recitation of the elements of a

cause of action," thus "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (cleaned up).

## IV.    Argument.

Plaintiffs contend Treasury failed to comply with the procedural requirements of the RFA and PRA when it proposed and finalized regulations to implement I.R.C. § 951A. Plaintiffs are wrong. But the Court need not consider the merits, because Plaintiffs cannot establish subject-matter jurisdiction.

To start, Plaintiffs cannot establish standing. Plaintiffs contend the regulations create compliance costs, which may be lessened if the regulations are remanded for Treasury to perform additional analyses. But the statute is responsible for Plaintiffs' compliance costs, not the regulations, and Treasury lacks statutory authority to exempt anyone from the statute's plain sweep. While Plaintiff Silver—but not Plaintiff Limited—may incur costs to submit the forms required by the regulations, a remand to Treasury cannot plausibly redress that harm. Plaintiffs incur costs to calculate and report the GILTI tax under the plain terms of the GILTI statute. Their grievance is not with the regulations, so they lack standing to challenge them.

In addition, Plaintiffs' claims against the GILTI regulations are barred by the Anti-Injunction Act ("AIA") and Declaratory Judgment Act ("DJA"). True, Plaintiffs modified their prayer for relief to request remand of the regulations rather than an order against their enforcement. But the DJA precludes suits seeking declaratory judgments at least to the extent the AIA precludes suits seeking injunctions. The AIA, DJA, and caselaw require suits challenging taxes to be brought in a refund

suit. Because this suit challenges the GILTI regulations (which are integral to the GILTI tax), it is barred by the AIA and DJA. And because no exception to the AIA applies, the Court lacks jurisdiction.

Regardless, Plaintiffs have failed to state a claim on the merits. They fail to allege facts to establish statutory standing under the RFA or a plausible violation of its requirements. They cannot state a claim under the PRA, which precludes affirmative suits. And if they intended to state an independent claim under the APA, there are no facts alleged to support it.

The Court should dismiss Plaintiffs' amended complaint, in full.

### a. Plaintiffs lack Article III standing.

Plaintiffs are not injured by the GILTI regulations, and their requested relief will not remedy their injury.[2] Because Plaintiffs lack standing, the Court should dismiss the amended complaint for lack of jurisdiction.

### i. Plaintiffs' injuries are not caused by the challenged regulations, nor can they be redressed by this action.

To establish Article III standing, a plaintiff must plead (and ultimately prove) an "injury in fact" that is "fairly traceable to the challenged action of the defendant" which is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Plaintiffs must "demonstrate standing for each claim that they

---

[2] The Court previously concluded that Plaintiffs established standing for their original complaint. D.E. 25 at 5–7. Plaintiffs put the issue back in play by amending their complaint and changing the request for relief.

press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Plaintiffs do not challenge the substance of the GILTI regulations, only the process by which they were promulgated. Specifically, Plaintiffs allege that they were injured by Treasury's decision to issue a § 605(b) certification, rather than conduct a full RFA analysis. And had Treasury conducted the full analysis, they say, it may have issued different regulations, which may have lessened the compliance burden on Plaintiffs and others similarly situated. Plaintiffs thus rest their standing on a procedural injury. *Cf. Ctr. for Biological Diversity v. EPA*, 861 F.3 174, 182 (D.C. Cir. 2017).

In a case alleging a procedural injury, courts "relax the redressability and imminence requirements" of standing. *Id.* But "the injury in fact requirement is a hard floor of Article III jurisdiction that cannot be altered by statute." *Id.* at 183. And the plaintiff must still show "a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest." *Id.* (quoting *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc)).

Plaintiffs rest their injury in fact on increased compliance costs, which they allege are caused by the regulations. D.E. 33 ¶ 3. Compliance costs can qualify as an injury in fact. But here, the costs Plaintiffs incur to comply with the GILTI regime are caused by the statute, not the regulations. To take one example, the GILTI statute requires a shareholder to calculate its net CFC tested income for the year,

which requires calculation of the CFC's tested income and tested loss, which both require complicated accountings of the CFC's transactions, deductions, dividends paid out, and more. *See* I.R.C § 951A(c)(1) ("net CFC tested income"); § 951(c)(2)(A) ("tested income"); § 951(c)(2)(B) ("tested loss"); § 951A(d)(1) ("qualified business asset investment"); § 951A(d)(2) ("specified tangible property"). The regulations simply lay out Treasury's interpretation of how the calculation required by statute should be done. The obligation to perform the calculation exists independent of the regulations. All persons covered by § 951A are required to calculate and report GILTI, with or without the Treasury regulations.[3]

Plaintiff Silver's obligation to calculate his GILTI inclusion—and Plaintiff Limited's obligation to provide the information necessary for Plaintiff Silver to do so—arises from the GILTI statute. Both Plaintiffs would incur the same compliance costs if the regulation were rescinded tomorrow. If anything, Plaintiffs would likely incur significantly *more* costs in the regulations' absence, bearing all costs to interpret the statute in the first instance. The requirement to calculate GILTI arises from the statute, and so do the compliance costs that follow.

---

[3] That is not to say the regulations do not have a significant role to play in implementing the statute. The statute leaves open questions regarding, for example, how to calculate tested income and tested loss through partnerships and how to calculate the pro rata share of qualified business asset investment (such as when the property has dual use or there is preferred stock). The regulations provide reasoned answers to these questions (and others), necessary for *certain* shareholders to accurately calculate and report GILTI. Plaintiffs, however, identify nothing in *Plaintiff Silver's* GILTI calculation (a U.S. shareholder that wholly owns a CFC with one class of stock) that comes out differently under the regulations than it would in their absence.

At most, Plaintiff Silver may incur a de minimis cost to submit certain information reports to the IRS, which are required by the regulations.[4] The GILTI regulations created a new Form 8992, which U.S. shareholders must file or risk penalties under I.R.C. § 6038. *See* Ex. 3 at 29369 (amending 26 C.F.R. 1.6038-5(a)). And while the GILTI regulations did not create Form 5471, they did create a new Schedule I-1, which certain U.S. persons must submit.[5] *See id.* (amending 26 C.F.R. 1.6038-2(a), which is the basis for Form 5471); *see also* Ex. 2 at 51085 (noting the creation of new Schedule I-1).

To the extent Plaintiff Silver must enter information into specific forms he would not otherwise prepare, he may be able to trace an injury to the regulations. As explained below, that de minimis injury is not redressable by this action, even under the relaxed procedural standard. We emphasize, however, that all of Plaintiffs' other compliance costs—including the time and labor to gather information and perform the calculations guided by the forms—are fairly traceable to the statute, not the regulations. Neither Form 8992 nor Form 5471, Schedule I-1 require any information or calculation not otherwise necessary to properly calculate the income inclusion required by the statute. For a shareholder to calculate and

---

[4] The complaint does not allege any new reporting requirement for Plaintiff Limited, and none exists.

[5] The regulations create a few other information reporting requirements in specific circumstances, none of which Plaintiffs allege they encounter. *E.g.*, 26 C.F.R. 1.951A-3(e)(3)(ii) (requiring a shareholder to submit a statement with its income tax return if it elects to use an alternative depreciation method to determine adjusted basis).

report its GILTI—an obligation created by the statute—it would need to gather all the information covered by the forms. At most, Plaintiff Silver is injured in the lost minutes necessary to transfer the information he must already compile from one computer program to another. To the extent that qualifies as an injury, we would concede it is caused by the forms, which are caused by the regulations. Plaintiff Limited, however, has no new reporting obligation created by the regulations, and thus plainly lacks Article III standing.

So, at most, Plaintiff Silver is injured in the de minimis time required to input numbers he and Plaintiff Limited must already prepare into specific forms he must submit to the IRS. But while § 951A remains on the books—and Plaintiffs do not challenge the statute—that injury is not redressable by the courts. Plaintiffs cannot credibly dispute that if GILTI must be included in gross income, the IRS will require some mechanism by which the GILTI will be reported. Self-assessment and reporting form the foundation of the U.S. tax system. *See Comm'r v. Lane-Wells Co.*, 321 U.S. 219, 223 (1944) (describing "the system of self-assessment" that "is so largely the basis of our American scheme of income taxation"); *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938) ("In assessing income taxes the Government relies primarily upon the disclosure by the taxpayer of the relevant facts. This disclosure it requires him to make in his annual return."). If Plaintiff Silver could articulate an injury unique to current Form 8992 (or Form 5471, Schedule I-1), that injury might be redressable by this challenge. But to the extent the injury is the de minimis burden of reporting GILTI *at all*, that injury will not (and cannot) be redressed.

11

That is because, in substance, Plaintiffs contend they are injured by what the challenged regulations *fail* to do. Plaintiffs implicitly contend that Treasury should have exempted Plaintiff Silver and those similarly situated from the GILTI regime. But had Treasury attempted to exempt persons like Plaintiff Silver, it would have exceeded its statutory authority under § 951A and related provisions.

GILTI must be included in the gross income of "[e]ach person who is a United States shareholder of any controlled foreign corporation for any taxable year." I.R.C. § 951A(a). "United States shareholder" is defined as a U.S. person who owns at least 10% of stock of a foreign corporation. I.R.C. § 951(b). Plaintiff Silver is a U.S. citizen and the sole shareholder of Plaintiff Limited, which is a foreign corporation. D.E. 33 ¶ 4. Thus, Plaintiff Silver is a U.S. shareholder under the plain text of §§ 951 and 951A.

While surrounding sections of the Code contain express delegations to Treasury to adjust the definition of United States shareholder for specific purposes, *e.g.*, I.R.C. § 953(c)(8)(B), § 951A contains no such authority. Thus, under the plain text of the statute, Treasury could not have exempted Plaintiff Silver from the GILTI regime. While the redressability requirement is "relaxed" in cases alleging a procedural injury, it is not eliminated. *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005); *Narragansett Indian Tribal Historic Pres. Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020). Regardless of the procedures employed, Treasury could not exempt Plaintiff Silver from the requirement to calculate his GILTI inclusion and report it as gross income. Because Plaintiffs' compliance costs

are caused by the statute, they cannot be redressed by this challenge to the regulations.

### b. Artful pleading cannot circumvent the Anti-Injunction Act, which continues to bar this suit.

Even if Plaintiff Silver or Plaintiff Limited could establish standing, the AIA continues to preclude jurisdiction. The AIA provides: "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." I.R.C. § 7421(a). Plaintiffs' original complaint targeted the GILTI regulations. Plaintiffs' amended complaint still targets the GILTI regulations. The GILTI regulations are bound up in the implementation and administration of the GILTI tax. Thus, a suit targeting the GILTI regulations is a suit targeting the GILTI tax, which is barred by the AIA and DJA, regardless of the specific relief sought. Plaintiffs' blatant attempt to plead around jurisdictional statutes should be rejected.

The *South Carolina* exception cannot save Plaintiffs' suit. The exception applies only if application of the AIA would preclude all judicial review. As explained below, Plaintiff Silver cannot bring his claims in a refund suit because he made an election—to his benefit—that temporarily defers his GILTI tax. A plaintiff cannot intentionally remove himself from the review process Congress intended then cry *South Carolina*. However pled, Plaintiffs' challenges are barred by the AIA.

### i. The AIA bars all suits to restrain tax assessment, which this suit continues to be.

Plaintiffs' original complaint sought "a judgment remanding the [GILTI] regulations to the Treasury and the IRS, and *deferring enforcement* of the Final Regulations against the Plaintiffs and other small businesses until Treasury and the IRS fully comply with their statutory obligations." D.E. 1 ¶ 3 (emphasis added). This Court correctly held that the original complaint was barred by the AIA. D.E. 25 at 9. In their amended complaint, Plaintiffs removed the request for deferred enforcement of the regulations, now seeking only "remand" of the GILTI regulations "to the Defendants for full compliance with the RFA, PRA, and Section 212." D.E. 33 at 19. Implicit in this prayer for relief is a request for a declaratory judgment that Treasury failed to comply with the RFA, PRA, and/or Section 212 in promulgating the current regulations, else the remand would have no basis.

The DJA bars suits seeking declaratory relief to the same extent the AIA bars suits seeking injunctive relief.[6] *See Cohen v. United States*, 650 F.3d 717, 727 (D.C.

---

[6] The AIA bars suits having "the purpose of restraining the assessment or collection of any tax," I.R.C. § 7421(a), while the DJA prevents declaratory judgments in actions "with respect to Federal taxes," 28 U.S.C. § 2201(a). Despite the differences in the two statutes' language, the D.C. Circuit has held that they must be read coterminously, with the narrow language of the AIA constraining the broad language of the DJA. *See Cohen*, 650 F.3d at 727–31. Given the Supreme Court's focus on the text of the AIA in *CIC Services*, however, the D.C. Circuit may reconsider its context-based interpretation of the DJA. *Cf. id.* at 728; *see also Cohen v. United States*, 578 F.3d 1, 18 (D.C. Cir. 2009) (Kavanaugh, J. dissenting) (noting "[b]y their terms, of course, the [AIA and DJA] are not coterminous"). We raise this issue now to preserve it for appeal but acknowledge that it is foreclosed by binding precedent in this Court.

14

Cir. 2011). Thus, Plaintiffs' amendment makes no difference to the Court's analysis. If the suit would be barred under the AIA if Plaintiffs sought an injunction, it is barred to the same extent under the DJA where Plaintiffs seek a declaration. *Cf. Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1071 (D.C. Cir. 2015) ("The Anti-Injunction Act is more than a pleading exercise."); *Educo v. Alexander*, 557 F.2d 617, 620 (7th Cir. 1977) ("This attempt on the part of Educo to define the relief it seeks in terms permitted by the Anti-Injunction Act ignores the ultimate deleterious effect such relief would have on the Government's taxing ability.").

The AIA "strips courts of jurisdiction over suits having 'the purpose of restraining the assessment or collection of any tax.'" *Optimal Wireless LLC v. Internal Revenue Serv.*, 77 F.4th 1069, 1071 (D.C. Cir. 2023) (quoting I.R.C. § 7421(a)). A suit's purpose is "the end or aim to which it is directed." *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209, 217 (2021). Courts look to "the face of the taxpayer's complaint," specifically "the thing sought to be enjoined," to determine whether the object of the requested relief is a tax. *Id.* at 216–17.

Here, whether Plaintiffs seek to remand the GILTI regulations or defer their enforcement, the *target* of their challenge remains the GILTI regulations. *Cf. Snyder v. Marks*, 109 U.S. 189, 190 (1883) (the Court looked to the "sole object" of the suit in determining the AIA barred the suit and not to the declaratory relief requested, which would be "futile for any purpose of this suit…unless followed by an

15

injunction"). "The Anti-Injunction Act kicks in when the target of a requested injunction is a tax obligation." *CIC Servs., LLC*, 593 U.S. at 218.

While not themselves a tax, the GILTI regulations are bound up in the implementation and administration of the GILTI tax. The GILTI regulations assist taxpayers in determining the self-reporting of amounts subject to GILTI, which are included in the taxpayer's gross income and thus impact the taxpayer's tax liability. The IRS "shall assess all taxes determined by the taxpayer on a return." I.R.C. § 6201(a)(1). Thus, self-reporting per se culminates in assessment of tax. While the regulations may not have been necessary to Silver's personal calculations, *see* n.3, *supra*, many other taxpayers would face serious impediments to accurately calculating and paying GILTI inclusions without the regulations. *Alexander v. Ams. United*, 416 U.S. 752, 760 (1974) ("[A] suit to enjoin the assessment or collection of anyone's taxes triggers the literal terms of section 7421(a)."). Not to mention the regulations preemptively close foreseeable loopholes, acting under the statute's delegation to the agency to issue anti-avoidance regulations. *See* I.R.C. § 951A(d)(4).

Even were the Court to permit Plaintiffs' artful pleading and accept that Plaintiffs no longer seek to restrain the GILTI tax, the AIA and DJA would still bar this suit. A plaintiff may control a cause of action, but the authority to fashion a remedy lies with the court. In Count II, Plaintiffs plead a cause of action under the APA. D.E. 33 ¶ 65–67. In the prayer for relief, Plaintiffs do not seek set-aside relief

under the APA.[7] D.E. 33 at 19. But under D.C. Circuit precedent, vacatur is the presumptive remedy where an agency action is deemed invalid. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1050–51 (D.C. Cir. 2021). The agency may overcome this presumption only if it can show that the disruption of vacatur would outweigh the seriousness of the action's deficiencies. *See Nat'l Wildlife Fed'n v. Lohr*, 2024 WL 4443687, at *2 (D.D.C. Oct. 8, 2024). The complaint's prayer for relief does not factor into the analysis. Thus, even if Plaintiffs' "subjective motive" were no longer to restrain the GILTI tax, the "objective aim" of any APA challenge would still be to set aside the agency action. *Cf. CIC Servs., LLC*, 593 U.S. at 217.

### ii.  No exception to the AIA applies.

Prior to Plaintiffs' amendment, the express scope of the D.C. Circuit's remand was narrow: for this Court to consider whether a limited exception to the AIA— where application of the AIA would effectively bar all judicial review—applies to Plaintiffs' claims. *See* D.E. 28-1 at 2 (citing *South Carolina v. Regan*, 465 U.S. 367 (1984)). The answer to that question is no.

In *South Carolina v. Regan*, the Supreme Court allowed a constitutional challenge to a tax statute to proceed, notwithstanding the AIA, because South Carolina could not challenge the statute through a refund suit and "the Act's

---

[7] But note Plaintiffs do seek any "such other relief as the Court finds fair and equitable," D.E. 33 at 20, which may include relief that would restrain tax assessment or collection.

purpose and the circumstances of its enactment indicate that Congress did not

intend the Act to apply to actions brought by aggrieved parties for whom it has not

provided an alternative remedy." 465 U.S. 367, 378 (1984). Nevertheless, "because

of the strong policy animating the Anti-Injunction Act, and the sympathetic, almost

unique facts in *South Carolina*, courts have construed the *South Carolina* exception

very narrowly." *RYO Mach., LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 472 (6th

Cir. 2012) (quoting *Jud. Watch v. Rossotti*, 317 F.3d 401, 408 n.3 (4th Cir. 2003))

(cleaned up). To avail itself of the *South Carolina* exception, a plaintiff must show

not merely that it lacks "access to a legal remedy for the precise harm that it has

allegedly suffered," but rather that it lacks "any access at all to judicial review."

*Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004) (quoting *Jud. Watch*,

317 F.3d at 408). In other words, a plaintiff must show that it has "no alternative

legal avenue" for raising its challenge, *Nat'l Taxpayers Union, Inc. v. United States*,

68 F.3d 1428, 1436 (D.C. Cir. 1995), and would otherwise be left without a forum for

that challenge to be "judicially reviewed at all," *Confederated Tribes & Bands of

Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810,

815 n.2 (9th Cir. 2016).

  Plaintiffs could challenge the GILTI regulations—including any deficiencies

in compliance with the RFA or PRA—in a refund suit. The entire purpose of the AIA

is to channel all tax litigation in the federal district courts into refund suits brought

under § 7422. *Cohen*, 650 F.3d at 724; *Snyder*, 109 U.S. at 193. Congress has waived

sovereign immunity for tax challenges brought against the United States, but only

to the extent they are "for the recovery" of taxes or penalties already paid. *See* I.R.C.
§ 7422(a); 28 U.S.C. § 1346(a)(1). To bring a refund suit, a taxpayer generally must
full pay the disputed sum, *Flora v. United States*, 362 U.S. 145, 176–77 (1960), and
file an administrative claim for refund with the Service, *United States v. Clintwood
Elkhorn Mining Co.*, 553 U.S. 1, 7 (2008). Once these jurisdictional prerequisites
are satisfied (and six months have passed, unless the Service has denied the claim
sooner) a taxpayer can litigate the merits of his claim in a federal court.

Plaintiffs complain that they cannot raise their regulatory challenges within
a refund suit because neither Plaintiff has ever owed the GILTI tax. But Plaintiffs
fail to note that the cause of that circumstance is Plaintiff Silver's *voluntary election*
to defer taxation on his GILTI income. Just as with subpart F income inclusions
before the TCJA, domestic corporations with an income inclusion under § 951A can
take a credit for deemed paid foreign taxes under § 960. Individual U.S.
shareholders can take advantage of the deemed paid foreign taxes by making an
election under § 962, through which the individual is taxed on the GILTI inclusion
at corporate rates (and thereby has access to the deemed paid credits). I.R.C.
§ 951A(f)(1)(A). When the U.S. shareholder subsequently receives a distribution of
those GILTI earnings from the CFC, they are taxed on the amount of the
distribution that exceeds the amount of U.S. tax previously paid—that is, the U.S.
shareholder makes up the difference in tax when the earnings are distributed.

As Plaintiff Silver explains, he opted to defer the tax on his GILTI inclusion
by electing under § 962 to be taxed at the rate applicable to a domestic corporation

rather than an individual, thereby allowing him to take the deemed paid credits under § 960. *See* Monte Silver, *GILTI Regulations Are a Big Win for Small Businesses*, Jerusalem Post, July 24, 2020, 2020 WLNR 21922493, https://perma.cc/53EN-8CKU.[8] This election is effectively a deferral, rather than a permanent exclusion, because the entire amount of Plaintiff Silver's GILTI inclusion will be subject to tax when distributed.

The § 962 election must be made yearly. For any year, Plaintiff Silver could decline to make the election, recognize his GILTI income, pay his GILTI tax, and— six months after filing an administrative claim for refund—challenge the GILTI regulations in a § 7422 refund suit. That this avenue is open to him means the *South Carolina* exception is not. *Cf. Maze v. Internal Revenue Serv.*, 862 F.3d 1087, 1093 (D.C. Cir. 2017) (holding taxpayers had an adequate remedy where they could take a series of steps that would allow them to file a refund suit).

### c. Plaintiffs have failed to state a claim under the RFA, the PRA, or the APA.

Even if Plaintiffs could establish jurisdiction, the Court should dismiss this action in full for failure to state a claim. "When reviewing the sufficiency of a complaint, a court must first take note of the elements a plaintiff must plead to state the claim to relief, and then determine whether the plaintiff has pleaded those

---

[8] When considering a motion to dismiss for lack of jurisdiction, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Perrigo Rsch. & Dev. Co.*, 290 F. Supp. 3d at 60 (alteration in original). The AIA is jurisdictional. *Optimal Wireless, LLC*, 77 F.4th at 1072 (D.C. Cir. 2023).

elements with adequate factual support to state a claim to relief that is plausible on its face." *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (cleaned up). Plaintiffs have failed to plead sufficient facts to establish the elements of any federal cause of action.

To state a claim under the RFA, a plaintiff must plausibly allege it is a directly regulated small entity. *See* 5 U.S.C. § 611(a)(1). Even accepting all facts as true, neither Plaintiff qualifies. Moreover, an agency can comply with the RFA by making a § 605(b) certification, which Plaintiffs concede the GILTI regulations contain. Plaintiffs allege no facts to plausibly support their conclusory assertion that the § 605(b) certification violates an unidentified statutory requirement. As to Plaintiffs' PRA claim, it is foreclosed by statute and precedent, which means a PRA-via-APA claim is likewise barred by § 701(a)(1). Regardless, Plaintiffs do not challenge any specific "collection of information" to which PRA requirements plausibly apply.

Because Plaintiffs have failed to state a claim under the RFA, PRA, APA, or otherwise, their complaint should be dismissed in full under Rule 12(b)(6).

### i. Plaintiffs have failed to state a claim under the RFA.

First, only a "small entity" can pursue relief under the RFA. *See* 5 U.S.C. § 611(a)(1); *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62, 72–73 (D.D.C. 2007). The RFA adopts the small business definitions from Section 3 of the Small Business Act ("SBA"). *See* 5 U.S.C. § 601(3). The SBA, in turn, defines "small business concern" as relating to an entity that "is independently owned and operated and which is not dominant in its field of operation." *See* 15 U.S.C.

§ 632(a)(1). SBA regulations further establish that a business entity must (1) be organized for profit; (2) have a place of business located in the United States; and (3) operate primarily within the United States or make a significant contribution to the U.S. economy through payment of taxes or use of American products, materials, or labor.[9] *See* 13 C.F.R. § 121.105.

Plaintiff Silver, an individual, plainly does not qualify as a small business entity. *See* D.E. 14-1 at 29; *see also* 569 F. Supp. 3d 5, 13 (D.D.C. 2021). Plaintiff Silver is not a business entity at all, small or otherwise. He is not independently owned or operated, nor is he organized for profit. He is a natural person. Thus, at minimum, Plaintiff Silver must be dismissed from this action for failure to state a claim.[10]

The complaint includes conclusory allegations regarding Plaintiff Limited's status as a small business entity for purposes of the RFA. The complaint alleges Plaintiff Limited is organized for profit and maintains a place of business in

---

[9] We note that *Silver I* declined to look to the supplemental definition from the SBA regulation, instead relying only on the definition in 15 U.S.C. § 632(a)(1). *See* 569 F. Supp. 3d 5, 12–13 (D.D.C. 2021). We respectfully maintain the regulation provides the appropriate standard but submit that either definition will produce the same outcome on this motion.

[10] And once Plaintiff Silver is dismissed for failure to state a claim, the remainder of the action should be dismissed for lack of jurisdiction. As explained above, Plaintiff Limited lacks Article III standing because the GILTI regulations impose no compliance costs on it separate from § 951A; unlike Plaintiff Silver, Plaintiff Limited has no regulatory requirement to submit Form 8992 or Form 5471, Schedule I-1. Thus, while Plaintiff Silver may have Article III standing and Plaintiff Limited may have statutory standing (or, at least, may qualify as a "small entity"), neither has both.

California. D.E. 33 ¶ 5. And it alleges Plaintiff Limited contributes significantly to the U.S. economy by payment of taxes, use of (unspecified) American-based goods, services, and labor, and ownership interests in several (unspecified) U.S. commercial real estate projects. At the pleadings stage, we accept these factual allegations as true.[11] *Cf. Sickle*, 884 F.3d at 370. Thus, solely at the pleadings stage, we assume Plaintiff Limited could qualify as a small entity under the RFA.

But to state a claim under the RFA, the small entity must be directly regulated by the challenged rules. *See Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 176–77 (D.C. Cir. 2007); *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001). The GILTI tax (and associated regulations) applies to U.S. shareholders, which Plaintiff Limited is not. If the GILTI tax is unpaid, it is assessed against the shareholder, not the CFC. Plaintiff Limited may participate in Plaintiff Silver's GILTI calculation, which requires information from the CFC level. But that *indirect* regulation does not suffice for Plaintiff Limited to qualify as a *directly* regulated party and state a claim under the RFA. *See, e.g.*, *Cement Kiln*, 255 F.3d at 868–69 (where regulations imposed costs on companies that combusted hazardous waste, companies that generated hazardous waste did not have a meritorious RFA claim; costs that combustors passed onto generators made generators, at most, "indirectly affected by the regulation of other entities").

---

[11] To be clear, as explained in previous briefing, the allegations are likely false. *See* D.E. 9-1 at 16–18 (ECF pagination); D.E. 11 at 10–12 (same).

Finally, even putting all of that aside, this complaint would *still* fail to state a claim under Rule 12(b)(6). As the complaint acknowledges, the RFA does not require any further analysis if the agency certifies that a rule will not have a significant economic impact on a substantial number of small entities. *See* D.E. 33 ¶ 18 (quoting 5 U.S.C. § 605(b)). According to the complaint—and as memorialized in the Federal Register—the agency made a § 605(b) certification in both the notice of proposed rulemaking and the final regulations. *See* D.E. 33 ¶ 48; 54. Thus, per the complaint, the agency complied with the RFA. Nevertheless, Count I concludes the agency "violated the RFA by failing to publish and make available for public comment an IRFA and a FRFA," because the § 605(b) certifications "failed to meet the statutory requirements of § 605(b) and is thus invalid."

As set out above, a motion to dismiss under Rule 12(b)(6) "challenges the adequacy of a complaint on its face." *Krishnan v. Foxx*, 177 F. Supp. 3d 496, 502 (D.D.C. 2016). To be sufficient, a complaint must "give a defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (cleaned up). Plaintiffs contend the agency's certifications "failed to meet the statutory requirements of § 605(b)." But the complaint does not identify the alleged "statutory requirements," nor does it include any facts to put the Defendants on notice of how the agency's certifications fell short. Accepting every factual allegation in the complaint as true, the agency issued the required § 605(b) certification and complied with the RFA.

24

Thus, Plaintiffs have failed to state a claim and Count I must be dismissed under Rule 12(b)(6).[12]

### ii.  Plaintiffs have failed to state a claim under the PRA.

Plaintiffs represent that this "lawsuit does not state a cause of action for violation of the PRA." D.E. 33 ¶ 12 n.2. Yet the first sentence of the complaint states "[t]his action arises under . . . the Paperwork Reduction Act (PRA)," *id.* ¶ 1, and the PRA is referenced in Count I, *id.* ¶ 63, Count II, *id.* ¶ 67, and the prayer for relief, *id.* at 19. For the avoidance of doubt, the Court should dismiss all aspects of Plaintiffs' claims premised on the PRA.

The PRA creates procedural requirements for agencies, but creates no substantive rights for regulated individuals or entities. *See, e.g.*, *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 34 F. Supp. 3d 160, 170 (D.D.C. 2014). "[T]he PRA may be raised as a *defense* to an agency action, but *does not create* a private cause of action." *Id.* (emphasis in original).

What is more, as with the RFA, Plaintiffs' complaint contains no factual allegations to support the conclusion that the agency failed to comply with the PRA.

---

[12] Plaintiffs' invocation of "Section 212" and its conditional requirement to issue an explanatory guide does not change this analysis. As explained, where the agency has complied with the RFA via a § 605(b) certification, no IRFA or RFRA is required. When an IRFA and RFRA is not required, no guide need be published under Section 212. *Cf.* D.E. 30-1 ¶ 55 (referencing Title II, Section 212 (Small Business Regulatory Enforcement Fairness Act of 1996) of Public L. 104-121 (Contract with America Advancement Act of 1996), codified as a Note to 5 U.S.C.A. § 601). As Plaintiffs acknowledge, the agency issued § 605(b) certifications with both the proposed and final GILTI rules, thus no Section 212 guide was required.

In fact, both the notice of proposed rulemaking and final regulations contain extensive PRA statements. *See* Ex. 2 at 51086–51087; Ex. 3 at 29331–29333. The final regulation identifies each collection of information created by the regulations and either identifies an OMB control number or indicates that the PRA submission will be made in short order, with a chart reflecting the status of each submission. Ex. 3 at 29331–29333. Treasury and the IRS regularly and consistently make all submissions required by the PRA. Which is why, for example, current Form 8992 bears OMB control number 1545-0123. *See* www.irs.gov/Form8992. Plaintiffs' conclusory allegation that the agency violated the PRA is insufficient to state a claim, even were a cause of action available.

### iii.   Plaintiffs have failed to state a claim under the APA.

Evidently recognizing that the PRA does not create a private cause of action, Plaintiffs invoke the APA in Count II, alleging that Defendants violated the APA "by (i) failing to observe the procedures required by law in promulgating regulations, (ii) engaging in actions which are arbitrary, capricious and an abuse of discretion, and (iii) acting in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." D.E. 33 ¶ 66. These broad allegations— untethered from the facts alleged—appear to be cabined by the next paragraph, which identifies "the PRA and Section 212" as the procedures with which the agency failed to comply. *Id.* ¶ 67.

As explained above, *see* note 13, *supra*, there is no Section 212 obligation separate from the RFA. Thus, the extent of Plaintiffs' APA challenge appears to be the conclusory assertion that the agency failed to comply with the PRA, and thereby

failed to observe procedures required by law.[13] In other words, Plaintiffs seek to use the APA to make a PRA argument indirectly where the statute and precedents foreclose it directly. Unfortunately for Plaintiffs, the APA anticipates and rejects this maneuver.

A party cannot invoke the APA's review provisions where judicial review is explicitly or implicitly precluded by another statute. *See* 5. U.S.C. 701(a)(1); *Block v. Comty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). As explained above, the PRA can only be raised as a defense to agency action, not as a basis to challenge it. *See Alegent Health-Immanuel Med. Ctr.*, 34 F. Supp. 3d at 170 ("[Plaintiff] is not attempting here to use the PRA as a shield against the penalty that the Secretary has imposed on it, but a sword to persuade the Court to find the Secretary in violation of the PRA. Unfortunately for the plaintiff, there is no basis in the statute or relevant case law for such a use.").

Finally, even were an APA cause of action available, Plaintiffs' allegations would not state a claim. The "final agency action" targeted by this action is the publication of the GILTI regulations. The GILTI regulations do not themselves implicate the PRA—a published regulation is not a "collection of information" for purposes of the statute. *See* 44 U.S.C. § 3502(3)(A). The regulations create (or expand) reporting requirements, which are then implemented by specific IRS forms or schedules. It is those forms and schedules that constitute a collection of

---

[13] If Plaintiffs intended to raise an arbitrary-and-capricious or exceeds-authority challenge, this complaint fails to put the Defendants on notice of its basis.

information and require compliance with the PRA. Plaintiffs do not purport to challenge any forms or schedules, or anything else that could qualify as a collection of information.

## V.    Conclusion.

Plaintiffs cannot establish subject-matter jurisdiction and fail to state a claim. The Court should dismiss.


Dated: April 21, 2025                    */s/ Moira E. Goodwin*
                                         MOIRA E. GOODWIN (DC Bar No 1780293)
                                         LAURA M. CONNER (VA Bar No 40388)
                                         Trial Attorneys, Tax Division
                                         JOSEPH A. SERGI (DC Bar No 480837)
                                         Senior Litigation Counsel
                                         U.S. Department of Justice
                                         P.O. Box 227
                                         Washington, D.C. 20044
                                         202-514-2986 (phone)
                                         202-514-6866 (fax)
                                         moira.e.goodwin@usdoj.gov
                                         laura.m.conner@usdoj.gov
                                         joseph.a.sergi@usdoj.gov