**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MONTE SILVER, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 20-1544 (CKK) |
| INTERNAL REVENUE SERVICE, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**
(October 15, 2025)

The Defendants in this action, which challenges regulations implementing the taxation of Global Intangible Low-Taxed Income ("GILTI") under the 2017 Tax Cuts and Jobs Act ("TCJA"), have filed a [36] Motion to Dismiss the Plaintiffs' [33] Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim. Defs.' Mot., ECF No. 36. The Plaintiffs—an individual United States citizen and his Israeli law firm—oppose the Defendants' Motion. Pls.' Opp'n, ECF No. 38.

Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT IN PART** and **DENY IN PART** the Defendants' renewed [36] Motion to Dismiss, dismissing the claims of the individual plaintiff for failure to state a claim but allowing one of the law firm's claims to proceed.

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- the Plaintiffs' Amended Complaint ("Am. Compl"), ECF No. 33;
- the Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. 36;
- the Plaintiffs' Opposition ("Pls.' Opp'n"), ECF No. 38; and
- the Defendants' Reply ("Defs.' Reply"), ECF No. 40.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

1

# I. BACKGROUND

## A. Statutory and Regulatory Framework

### 1. The Regulatory Flexibility Act

The Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601 *et seq.*, requires federal agencies to follow certain procedures when developing regulations that may impose disproportionate burdens on small businesses, small nonprofits, and governments of small jurisdictions (collectively, "small entities").

Among the Act's requirements are provisions mandating that agencies prepare and publish both an initial and a final regulatory flexibility analysis for any new regulations or interpretative rules "involving the internal revenue laws of the United States." *See* 5 U.S.C. §§ 603–604. A final regulatory flexibility analysis under the Act must, among other things, describe "the steps the agency has taken to minimize" the regulation's "significant economic impact on small entities" and state the "factual, policy, and legal reasons" for the agency's choice among alternative policies that may have had different impacts. *Id.* § 604(a)(6).

The Act provides an important exception to its requirements for regulatory flexibility analyses. These requirements do not apply if the head of the agency proposing the new rule "certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." *Id.* § 605(b). This certification, sometimes called a Section 605(b) certification, must be published in the Federal Register alongside a "statement providing the factual basis for" the agency's conclusion about the scope of the rule's impact. *Id.*

The Regulatory Flexibility Act provides for judicial review of agencies' compliance with its provisions. Specifically, it provides that a "small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency compliance with," as relevant here, the sections of the Act relating to final regulatory flexibility analyses and Section 605(b)

certifications that a proposed rule will not have a "significant economic impact on a substantial number of small entities." *See id.* § 611(a)(1) (citing *id.* §§ 604, 605(b)). The Act provides that federal courts have jurisdiction to review claims under these provisions to the same extent that federal courts would have jurisdiction to review the underlying rule for compliance with the Administrative Procedure Act ("APA"). *Id.*

### 2.     The Global Intangible Low-Taxed Income Tax

The Plaintiffs' claims in this case focus on the regulations implementing the Global Intangible Low-Taxed Income ("GILTI") tax, which is a set of rules for the taxation of foreign corporations controlled by U.S. shareholders ("controlled foreign corporations" or "CFCs"). *See* 26 U.S.C. § 951A (2017).[2] The GILTI tax was added to the Internal Revenue Code as part of a set of changes in the 2017 Tax Cuts and Jobs Act ("TCJA") affecting the taxation of income from foreign sources. *See* TCJA, Pub. L. No. 115-97, §§ 14101–14502, 131 Stat. 2054, 2189–235.

The GILTI tax regime is complex, but in general terms, its provisions require a U.S. shareholder of a "controlled foreign corporation" ("CFC") to include the shareholder's pro-rata share of parts of the CFC's income in the shareholder's own income for tax purposes. *See* 26 U.S.C. § 951A(a). This approach marks a change from prior law, under which U.S. shareholders of foreign corporations often paid tax on corporate income only when they received dividends or other distributions of income from their corporations. *See Moore v. United States*, 36 F.4th 930, 933 (9th Cir. 2022), *aff'd,* 602 U.S. 572 (2024). The GILTI tax regime applies only to U.S. shareholders; it does not impose direct obligations on foreign corporations. *See* 26 U.S.C. § 951A.

---

[2] While this action was pending, Congress enacted amendments to 28 U.S.C. § 951A as part of the reconciliation bill commonly known as the "One Big Beautiful Bill Act." *See* Pub. L. No. 119-21, § 70323, 139 Stat. 27, 205–06 (2025). These amendments will become effective on January 1, 2026. *See id.* All citations to Section 951A in this Memorandum Opinion refer to the prior version of the statute, which remains in effect until the end of 2025.

3

To implement the GILTI tax regime, the Department of the Treasury proposed regulations in October 2018,[3] which it later promulgated in final form in June 2019.[4] The final regulations provide guidance to help taxpayers determine how the GILTI tax regime affects their taxable income, offer illustrative examples of tax calculations, and fill in a variety of details about how the statute's rules and definitions work in practice and interact with other parts of the Internal Revenue Code.[5] Like the underlying statute, the GILTI regulations do not impose any direct obligations on foreign corporations; instead, the relevant obligations apply only to U.S. shareholders of those corporations.[6]

The Secretary of the Treasury certified that the GILTI regulations would not have a significant economic impact on a substantial number of "small entities," exempting them from the requirement of a full regulatory flexibility analysis under the Regulatory Flexibility Act. *See* 83 Fed. Reg. 51,072, 51,087–88 (notice of proposed rulemaking); 84 Fed. Reg. 29,288, 29,333–34 (final rule). In making this certification, the Secretary relied in part on the conclusion that any burdens imposed by the regulations fell primarily on U.S. *shareholders* of foreign corporations, rather than on the corporations themselves, and those shareholders are generally not "small entities" within the meaning of the Regulatory Flexibility Act. *See* 83 Fed. Reg. 51,072, 51,087–88; 84 Fed. Reg. 29,288, 29,333–34.

---

[3] *See* Guidance Related to Section 951A (Global Intangible Low-Taxed Income), 83 Fed. Reg. 51,072 (Oct. 10, 2018) (to be codified at 26 C.F.R. pt. 1) (notice of proposed rulemaking).

[4] *See* Guidance Related to Section 951A (Global Intangible Low-Taxed Income) and Certain Guidance Related to Foreign Tax Credits, 84 Fed. Reg. 29,288 (June 21, 2019) (codified at 26 C.F.R. pt. 1) (final rule).

[5] *See generally id.*; *see also* Defs.' Mot. at 3 (summarizing the final regulations).

[6] *See generally* Guidance Related to Section 951A (Global Intangible Low-Taxed Income) and Certain Guidance Related to Foreign Tax Credits, 84 Fed. Reg. 29,288 (June 21, 2019) (codified at 26 C.F.R. pt. 1) (final rule).

### B. Facts and Proceedings

Monte Silver is a U.S. citizen and the sole shareholder and officer of his Israeli law firm, Monte Silver, Ltd. *See* Am. Compl., ECF No. 33, ¶ 4. According to the Plaintiffs' Amended Complaint, Monte Silver, Ltd. maintains "a place of business location in both Israel and California" and engages in "activities which contribute significantly to the U.S. economy," including paying U.S. taxes, using "American-based goods, services, and labor," and owning "several large U.S. commercial real estate projects." *Id.* ¶¶ 4–6. The law firm has annual receipts of less than $1,000,000. *Id.* ¶ 7.

In this case, Silver and his law firm (collectively, the "Plaintiffs," and individually, "Plaintiff Silver" and "Plaintiff Limited") allege that the Internal Revenue Service ("IRS"), the Department of the Treasury, the Commissioner of the IRS, and the Secretary of the Treasury (collectively, the "Defendants") failed to comply with the Regulatory Flexibility Act when promulgating regulations implementing the GILTI tax regime. *See* Am. Compl. ¶¶ 4–6, 60–67. The Plaintiffs allege that the Defendants' failure to comply with the Regulatory Flexibility Act has contributed to "extremely complex and costly compliance efforts each year." *See id.* ¶ 51. Specifically, the Plaintiffs allege that Plaintiff Monte Silver, Ltd. has incurred and continues to incur substantial costs each year to prepare the information that is necessary for its sole shareholder, Plaintiff Monte Silver, to calculate his U.S. income tax liability under the GILTI statute and regulations. *Id.* ¶¶ 38–44, 51, 57–58.

In their original Complaint, which was filed in June 2020, the Plaintiffs sought a judgment "remanding the regulations to the Treasury and the IRS, and deferring enforcement of the Final Regulations against the Plaintiffs and other small businesses until the Treasury and IRS fully comply with their statutory obligations." Compl., ECF No. 1, ¶ 3. In response, the Defendants filed a Motion to Dismiss, arguing that dismissal was required because the Plaintiffs had failed to

5

establish: (1) subject-matter jurisdiction under the Anti-Injunction Act, (2) Article III standing, and (3) statutory standing under the Regulatory Flexibility Act. *See* Defs.' First Mot. to Dismiss, ECF No. 9, at 5. This Court accepted the Defendants' first argument and dismissed the suit at the pleading stage for lack of subject-matter jurisdiction under the Anti-Injunction Act. 26 U.S.C. § 7421(a).

In granting the Defendants' Motion to Dismiss, this Court addressed arguments related to the Plaintiffs' Article III standing and subject-matter jurisdiction under the Anti-Injunction Act.

*First*, this Court concluded that the Plaintiffs had established Article III standing because they alleged that they had been "forced to spend funds, time[,] and effort to comply with GILTI" on an annual basis. Mem. Op., ECF No. 25, at 7 (quoting Silver Decl., ECF No. 10-9, ¶ 12). The Court concluded that this injury could be redressed by a favorable decision in this case because, if Treasury had issued additional guidance for small businesses—as the Plaintiffs allege they were required to do under the Regulatory Flexibility Act—Plaintiffs might spend less funds, time, and effort to comply in the future. Mem. Op., ECF No. 25, at 7.

*Second*, this Court concluded that subject-matter jurisdiction was lacking under the Anti-Injunction Act because the relief sought would interfere with "the assessment or collection of tax." In reaching this determination, the Court noted that if, on the face of the taxpayer's complaint, an action seeks to set aside a rule but not enjoin the collection of a tax related to the rule, then the action is not barred by the Anti-Injunction Act. Mem. Op., ECF No. 25, at 8 (citing *CIC Servs., LLC v. I.R.S.*, 141 S. Ct. 1582, 1590 (2021)). However, because the Plaintiffs specifically sought deferral of the enforcement of the rule in their original Complaint, this Court held that it could not exercise subject-matter jurisdiction over the Plaintiffs' claim. Mem. Op., ECF No. 25, at 9.

Prior to this Court's order of dismissal, the Plaintiffs argued that the Anti-Injunction Act did not apply in this case because of the exception set forth in the Supreme Court's decision in *South Carolina v. Regan*, 465 U.S. 367 (1984). In that case, the Supreme Court held that the Anti-Injunction Act does not bar "actions brought by aggrieved parties for whom [Congress] has not provided an alternative remedy." *South Carolina*, 465 U.S. at 378. The Defendants responded that the exception did not apply in this case and that the Anti-Injunction Act therefore barred this suit.

The Plaintiffs appealed this Court's order dismissing the case. *See* Notice of Appeal, ECF No. 26. On appeal, the Plaintiffs renewed their *South Carolina* argument against the application of the Anti-Injunction Act. The D.C. Circuit noted that this Court had not directly addressed this argument, and it concluded that the argument "may require factual development." *Silver v. I.R.S.*, No. 22-5341, unpublished slip op. at 2 (D.C. Cir. Apr. 19, 2024) (available at ECF No. 28-1). The court therefore remanded the case for "further proceedings consistent with [its] judgment, which also may encompass additional issues beyond those presented in this appeal." *Id.*

On remand, the Plaintiffs sought leave to amend their complaint over the Defendants' objection, and this Court granted leave to amend. *See* Mem. Op. & Order, ECF No. 32. In their Amended Complaint, the Plaintiffs added allegations regarding their annual costs of compliance with the GILTI regulations, amended their prayer for relief to remove any request for deferral of those regulations, and add allegations clarifying that they have never owed any GILTI tax. *See generally* Am. Compl., ECF No. 33.

The Defendants then moved to dismiss the Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim, renewing many of the arguments in their original motion to dismiss. *See* Defs.' Mot., ECF No. 36. This motion is now ripe for decision.

## II. LEGAL STANDARD

Under Rule 12(b)(1), the party invoking federal jurisdiction bears the burden of establishing that the court has subject-matter jurisdiction. *Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984) ("It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists."). A court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1). *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). "Where necessary to resolve a jurisdictional challenge under Rule 12(b)(1), 'the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

A motion to dismiss under Rule 12(b)(6) tests whether a complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

## III. ANALYSIS

The Defendants argue in their Motion to Dismiss that the Plaintiffs lack Article III standing, Defs.' Mot. at 7–12, that the Anti-Injunction Act ("AIA") continues to bar the Plaintiffs' amended claims, *id.* at 13–20, and that the Amended Complaint fails to state a claim under the Regulatory Flexibility Act ("RFA"), Paperwork Reduction Act ("PRA"), or the Administrative Procedure Act ("APA"), *id.* at 21–28.

In their reply, the Defendants withdraw their Anti-Injunction Act defense, conceding that the Act does not bar the claims in the Plaintiffs' Amended Complaint. Defs.' Reply, ECF No. 40, at 1 n.1.

Meanwhile, in their opposition, the Plaintiffs concede that they "do not state a cause of action under the [Paperwork Reduction Act]." Pls.' Opp'n, ECF No. 38, at 24. Accordingly, the Defendants' Motion to Dismiss is unopposed with respect to the Plaintiffs' Paperwork Reduction Act claim and their related claim under the Administrative Procedure Act, and the Defendants' Motion shall be **GRANTED** as to those claims. The Court shall therefore **DISMISS** Count II of the Amended Complaint without prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (noting that "dismissal *with prejudice* is warranted only when . . . 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency'" (quoting *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985))).

With these conceded issues resolved, the Court focuses its analysis on the two remaining disputed issues: whether the Plaintiffs have adequately alleged Article III standing and whether Count I of their Amended Complaint states a claim under the Regulatory Flexibility Act. For the reasons that follow, the Court concludes that the Plaintiffs' Amended Complaint adequately alleges Article III standing, but it fails to state a claim under the Regulatory Flexibility Act.

Accordingly, the Court shall **GRANT** the Defendants' Motion and dismiss Count I the Plaintiffs' Amended Complaint without prejudice.

### A. The Amended Complaint adequately alleges Article III standing.

The Defendants first argue that this Court should dismiss the Plaintiffs' claims for lack of subject-matter jurisdiction under Rule 12(b)(1) because the Plaintiffs lack Article III standing. Defs.' Mot., ECF No. 36, at 7–13. However, this Court previously concluded that the Plaintiffs had adequately alleged Article III standing in their original Complaint, and neither the revisions in the Plaintiffs' Amended Complaint nor the arguments in the Defendants' renewed Motion to Dismiss alter that conclusion. *See* Mem. Op., ECF No. 25, at 5–7.

The party invoking federal jurisdiction has the burden of establishing Article III standing by showing that a plaintiff has suffered an injury-in-fact that is fairly traceable to a defendant's conduct and redressable by a favorable decision. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). At the motion-to-dismiss stage, "plaintiffs are required only to 'state a *plausible* claim' that each of the standing elements is present." *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (quoting *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that "each element" of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation"). The Plaintiffs' Amended Complaint satisfies each of these requirements.

*First*, the Plaintiffs' Amended Complaint, like their original Complaint, plausibly alleges that the Defendants' noncompliance with the Regulatory Flexibility Act is causing the Plaintiffs to incur significant costs to understand and help Plaintiff Silver comply with the GILTI tax regime. *See* Am. Compl. ¶¶ 38–44, 51, 57–58. Specifically, the Plaintiffs allege that Plaintiff Limited holds some of the information that Plaintiff Silver needs to compile to comply with his tax obligations, and both Plaintiffs incur costs to understand Plaintiff Silver's obligations and compile

10

the necessary information.  *See id.*  These alleged costs are an injury-in-fact that is fairly traceable to the Defendants' conduct.  *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (holding that plaintiffs had established an injury-in-fact based on their assertion that a statute would require "significant and costly compliance measures").

*Second*, as alleged, the Plaintiffs' costs are redressable by a favorable decision from this Court.  A decision in the Plaintiffs' favor could help mitigate the Plaintiffs' compliance costs in the future.  For example, a decision requiring the Defendants to revisit their decision about whether to publish a full regulatory flexibility analysis could lead the Defendants to publish additional guidance for shareholders of small foreign corporations like Monte Silver, Ltd.  *See* Am. Compl. ¶ 58.  The Defendants could also elect to revise the regulations themselves to make them more understandable to owners and managers of small businesses.  *See id.*  Additional guidance or changes to the GILTI regulations would help reduce the effort that is necessary for the Plaintiffs to understand and comply with Plaintiff Monte Silver's GILTI tax obligations.  Because the Regulatory Flexibility Act creates "procedural rights" designed to protect small businesses' concrete interests, the plausibility of redress in these forms is all that is required:  The Plaintiffs have standing to assert their procedural rights even if they cannot "establish with any certainty" that their compliance costs would be less if the Defendants were to rectify the alleged violation of the Regulatory Flexibility Act.  *See Lujan*, 504 U.S. at 573 n.7.

Because the Plaintiffs' Amended Complaint alleges an injury-in-fact that is fairly traceable to the Defendants' challenged conduct and redressable by a favorable decision, the Plaintiffs have adequately alleged Article III standing.  Accordingly, the Court shall not dismiss the Plaintiffs' Regulatory Flexibility Act claims for lack of subject-matter jurisdiction.

11

**B. The Amended Complaint states a claim under the Regulatory Flexibility Act by Plaintiff Limited, but not by Plaintiff Silver.**

The Defendants next argue that, even accepting the Plaintiffs' allegations as true, the Plaintiffs have failed to state claims under the Regulatory Flexibility Act and their Complaint must be dismissed under Rule 12(b)(6). Specifically, the Defendants argue that neither Plaintiff Silver nor Plaintiff Limited is a "small entity" that is directly affected by the GILTI regulations, meaning that neither Plaintiff is entitled to judicial review of the Defendants' compliance with the Regulatory Flexibility Act in connection with those regulations. *See* Defs.' Mot. at 21; 5 U.S.C. § 611(a)(1). This Court agrees with the Defendants' arguments as to Plaintiff Silver, but not as to Plaintiff Limited. Accordingly, the Court shall **DISMISS** Plaintiff Silver's Regulatory Flexibility Act claim but allow Plaintiff Limited's parallel claim to proceed.

*First*, the Court agrees with the Defendants that Plaintiff Silver—a natural person—is not a "small entity" that is entitled to bring an action for judicial review under the Regulatory Flexibility Act. *See* Defs.' Mot. at 21; 5 U.S.C. § 611(a)(1). The Act defines a "small entity" to include a "small business," a "small organization," or a "small governmental jurisdiction," but not a natural person. 5 U.S.C. § 601(6); *see also id.* § 601(3)–(5) (further defining "small business," "small organization," and "small governmental jurisdiction"). The Plaintiffs offer no argument to the contrary. *See* Pls.' Opp'n, ECF No. 38, at 18–24. Accordingly, the Court shall dismiss Plaintiff Silver's claim under the Regulatory Flexibility Act. *Accord Silver v. I.R.S.* (*Silver I*), 531 F. Supp. 3d 346, 365 (D.D.C.) (APM), *opinion modified on denial of reconsideration*, 569 F. Supp. 3d 5 (D.D.C. 2021), *and aff'd*, No. 21-5116, 2022 WL 17420308 (D.C. Cir. Dec. 6, 2022).

*Second*, the Court disagrees with the Defendants that Plaintiff Limited cannot state a claim under the Regulatory Flexibility Act because Plaintiff Limited is not "directly regulated by" the challenged GILTI regulations. *See* Defs.' Mot. at 23; *cf. Aeronautical Repair Station Ass'n, Inc.*

*v. F.A.A.*, 494 F.3d 161, 177 (D.C. Cir. 2007) (holding that the Regulatory Flexibility Act requires consideration of effects on entities "directly affected" and "regulated by" covered regulations).

The Defendants are correct that precedent limits the sweep of the Regulatory Flexibility Act's requirements in cases involving indirect effects on small businesses. The U.S. Court of Appeals for the D.C. Circuit "has consistently rejected" the argument that the Regulatory Flexibility Act requires agencies to consider regulations' impact on "small businesses indirectly affected by the regulation of other entities." *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) (collecting cases). Instead, the D.C. Circuit has held that the Regulatory Flexibility Act requires agencies to consider only regulatory burdens on small entities that are "subject to" the regulations and among the group of entities "to which the [regulations] will apply." *Id.* (quoting *Mid-Tex Elec. Coop. v. FERC,* 773 F.2d 327, 342 (D.C. Cir. 1985)). This limitation reflects the recognition that Congress "did not intend [for the Regulatory Flexibility Act] to require that every agency consider every indirect effect that any regulation might have on small businesses in any stratum of the national economy." *Id.* (quoting *Mid-Tex*, 773 F.2d at 343).

Here, Plaintiff Limited is neither "subject to" the GILTI regulations nor among the group to which those regulations "will apply." *See Cement Kiln*, 255 F.3d at 869. The GITLI regulations, like the statute that they implement, impose obligations only on the *shareholders* of controlled foreign corporations like Plaintiff Limited, not on the corporations themselves. *See supra* Section I.A.2. Although a foreign corporation like Plaintiff Limited may assist its shareholders in complying with the GILTI regulations, there is no direct requirement that it do so, nor is there any penalty for the corporation if its U.S. shareholders do not comply with their own tax obligations. *See id.* Accordingly, Plaintiff Limited is not "directly affected" or "regulated by" the GILTI regulations. *Cf. Aeronautical Repair Station*, 494 F.3d at 177 (concluding that small contractors

13

and subcontractors of regulated air carriers were "directly affected" and "regulated by" a requirement that air carriers perform drug and alcohol testing of the contractors' and subcontractors' employees where the regulation specified that contractors "will be held responsible" for compliance with the testing requirement).

However, contrary to the Defendants' argument, the relevant circuit precedents constrain the scope of the *substantive* analysis that agencies must perform under the Regulatory Flexibility Act, not the reach of the Act's judicial review provisions. *Cf.* Defs.' Mot. at 23. The precedents that the Defendants cite impose limits on which "small entities" an agency must consider when conducting a regulatory flexibility analysis or certifying that a regulation will not have a "significant impact on a substantial number of small entities." *See, e.g.*, *Aeronautical Repair Station Ass'n*, 494 F.3d at 176; *Cement Kiln*, 255 F.3d at 869. However, as Judge Amit P. Mehta concluded in the Plaintiffs' prior related case in this Court, the relevant inquiry when determining whether an entity is entitled to seek judicial review under the Regulatory Flexibility Act is not whether the entity is directly regulated, but rather whether it is "a small entity that [was] adversely affected or aggrieved by final agency action." *See* 569 F. Supp. 3d 5, 12 (D.D.C. 2021) (APM) (alteration in original) (quoting 5 U.S.C. § 611(a)(1)).

Plaintiff Limited is entitled to judicial review under the Regulatory Flexibility Act because the Plaintiffs' Amended Complaint adequately alleges that Plaintiff Limited is a "small entity" that has been "adversely affected or aggrieved by" the GILTI regulations. *See* 5 U.S.C. § 611(a)(1). Although the parties dispute which precise definition of "small entity" the Court should apply in this context, the Defendants do not dispute that Plaintiff Limited is a "small entity" under any of the proffered definitions. *See* Pls.' Opp'n, ECF No. 38, at 18–22; Defs.' Reply, ECF No. 40, at 6 n.5. Accordingly, the Court need not and does not resolve which of the two definitions applies.

*See* Pls.' Opp'n at 19–22. For present purposes, the relevant question is simply whether the Plaintiffs have adequately alleged that Plaintiff Limited is "adversely affected or aggrieved by" the regulations at issue. *See* 5 U.S.C. § 611(a)(1). For essentially the same reasons explained above in the Court's standing analysis, the Court concludes the Plaintiffs have satisfied this requirement. *See supra* Section III.A. Specifically, the Amended Complaint alleges that Plaintiff Limited has incurred and will continue to incur costs to help Plaintiff Silver, its sole shareholder and officer, comply with his GILTI tax obligations. *See* Am. Compl. ¶¶ 38–44, 51, 57–58. Because the Amended Complaint shows that Plaintiff Limited is a "small entity" that is "adversely affected or aggrieved by" the regulations at issue, Plaintiff Limited is entitled to seek judicial review under the Regulatory Flexibility Act. *See* 5 U.S.C. § 611(a)(1).

Finally, the Amended Complaint states a plausible Regulatory Flexibility Act claim by Plaintiff Limited. The Plaintiffs allege that the Defendants failed to comply with the Act's certification requirements when adopting the GILTI regulations because the Defendants failed to provide "any record supporting the certification" under Section 605(b) that the regulations would not have a "significant economic impact on a substantial number of small entities." *See* Am. Compl. ¶¶ 48, 50, 54, 56; *see also* 5 U.S.C. § 605(b). The Plaintiffs also allege that if the Defendants had adequately "researched and analyzed the empirical data," they would not have certified that the regulations would not have a significant impact on small entities. Am. Compl. ¶ 58. These allegations, taken as true, state a plausible claim that the Defendants failed to comply with the Regulatory Flexibility Act's requirement that an agency must either complete a regulatory flexibility analysis or publish a Section 605(b) certification that is accompanied by "a statement providing the factual basis for such certification." *See* 5 U.S.C. §§ 603–605. Contrary to the

15

Defendants' arguments, these allegations provide the Defendants "fair notice of what the [. . .] claim is and the grounds upon which it rests." *See* Defs.' Mot., ECF No. 36, at 24 (quoting *Krishnan v. Foxx*, 177 F. Supp. 3d 496, 502 (D.D.C. 2016) (RMC). Accordingly, the Court declines to dismiss Plaintiff Limited's Regulatory Flexibility Act claim under Rule 12(b)(6).

In sum, Plaintiff Silver has not stated a claim under the Regulatory Flexibility Act, but Plaintiff Limited has done so. Accordingly, the Court shall **GRANT IN PART** and **DENY IN PART** the Defendants' Motion. The Court shall **DISMISS** Plaintiff Silver's Regulatory Flexibility Act claim in Count I of the Plaintiffs' Amended Complaint for failure to state a claim, but the Court shall not dismiss Plaintiff Limited's parallel Regulatory Flexibility Act claim in Count I. The dismissal of Plaintiff Silver's claim shall be without prejudice. *See Firestone*, 76 F.3d at 1209.

### IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT IN PART** and **DENY IN PART** the Defendants' [36] Motion to Dismiss. Each of Plaintiff Silver's claims in the [33] Amended Complaint shall be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. Plaintiff Limited's claim in Count II of the [33] Amended Complaint, which alleges a violation of the Administrative Procedure Act, shall also be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. However, the Court shall not dismiss Plaintiff Limited's claim in Count I of the [33] Amended Complaint, which alleges a violation of the Regulatory Flexibility Act.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** October 15, 2025

/s/ Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
United States District Judge